UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Ballard et al.**

    v.                                      MDL Docket No. 02-1335-PB
                                                Civil No. 04-CV-1336-PB

**Tyco International, Ltd. et al.**


MEMORANDUM AND ORDER

      The plaintiffs in this action are 33 family trusts and four individuals.  Plaintiffs acquired stock in Tyco International, Ltd. in exchange for their shares of stock in AMP, Inc. when the two companies merged on April 4, 1999.  They have sued Tyco, various former officers and directors of the company, including former director Michael A. Ashcroft, and PricewaterhouseCoopers, LLP ("PwC"), Tyco's independent accountant and auditor.  In their eight-count complaint, plaintiffs assert three claims for relief under the Securities and Exchange Act of 1934 ("Exchange Act")(Counts I-III) and three additional claims for relief under the Securities Act of 1933 ("Securities Act")(Counts IV-VI).

Plaintiffs also bring claims for common law fraud and common law negligent misrepresentation (Counts VII-VIII).

Defendant Ashcroft has moved to dismiss the claims against him (Doc. No. 387).[1]  Ashcroft argues that he was not properly served with the Summons and Complaint.[2]  See Fed. R. Civ. P. 4, 12(b)(5).  Plaintiffs counter by claiming that they completed service on Ashcroft by regular mail and that such service is sufficient because it is authorized under Fed. R. Civ. P. 4(f) and the Hague Convention.[3]  For the reasons set forth below, I conclude that Ashcroft was not properly served.  Nevertheless, I

---

[1] PwC and Tyco filed separate motions to dismiss.  On April 22, 2005, I granted PwC's motion (Doc. 308) and dismissed the claims against it.  On July 11, 2005, I denied Tyco's motion to dismiss (Doc. No. 213).

[2] Ashcroft also argues in his motion to dismiss that plaintiffs' claims against him must be dismissed pursuant to Fed R. Civ. P 12(b)(6) because they have not been pleaded with the particularity required by Rule 9(b), and because the few allegations against him do not create a strong inference of scienter.  Ashcroft may renew these arguments in a subsequent motion to dismiss if plaintiffs succeed in serving him.

[3] The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *opened for signature* November 15, 1965; *entered into force for the United States* February 10, 1969; *for the United Kingdom* February 10, 1969; 20 U.S.T. 1362; 658 U.N.T.S. 163; 1969 WL 97765; full text *reprinted in* The United States Code Service (U.S.C.S.) on International Agreements at 265-310.

deny Ashcroft's motion to dismiss and grant plaintiffs 90 days from the date of this order to serve the Summons and Complaint in compliance with Fed. R. Civ. P. 4(f).

## I. BACKGROUND

Michael A. Ashcroft is a citizen of the United Kingdom and Belize, and a former member of Tyco's board of directors. Ashcroft Decl. ¶¶ 1, 2.  He is also the chairman, chief executive officer, and majority shareholder of Carlisle Holdings Ltd., a Belizean company.  Id. ¶ 3.  A subsidiary of Carlisle Holdings, Carlisle Group, is headquartered at 7 Cowley Street, London, United Kingdom.  Id. ¶ 4.  Ashcroft has never resided at 7 Cowley Street, nor has he ever been the owner or leaseholder of that property.  Id. ¶ 9.

On May 25, 2004, plaintiffs made two attempts to serve Ashcroft.  In the first, David Morgan, a process server acting on plaintiffs' behalf, delivered a copy of the Summons and Complaint to Carlisle Group's office at 7 Cowley Street.  Morgan Aff. ¶ 2. Vicky L. Dumble, a receptionist and secretary at Carlisle Group, informed Morgan that neither Ashcroft nor his personal assistant,

Janine Smithers, were present at the time.[4]  Dumble Decl. ¶¶ 3, 6.  Morgan then handed a copy of the Summons and Complaint to Dumble.  Morgan Aff. ¶ 2.  He did not ask Dumble to sign for the documents, but did ask for her name and position.  Dumble Decl. ¶ 7.

On the same day he attempted to serve Ashcroft in person at the Carlisle Group's office, Morgan also mailed a copy of the documents to Ashcroft at the 7 Cowley Street address, by first class prepaid post.  Morgan Aff. ¶ 3.  Dumble maintains that she never received these documents in the mail.  Dumble Reply Decl. ¶ 6.  Ashcroft similarly maintains that he never received by mail a copy of the Summons and Complaint at either 7 Cowley Street or at any residential address.  Ashcroft Reply Decl. ¶¶ 5, 6.

## II. ANALYSIS

### A. The Hague Convention

The sole question presented here is whether Ashcroft was properly served with the Summons and Complaint.  The answer to

---

[4] Ashcroft maintains that he was in Belize on May 25, 2004, and did not return to the Carlisle Group's offices at 7 Cowley Street until June 8, 2004.  Ashcroft Decl. ¶ 8.

this question is governed by Rule 4(f) of the Federal Rules of Civil Procedure and the Hague Convention.  Rule 4(f) ordinarily prescribes the procedures for service of process.  However, where, as in this case, the defendant is a foreign citizen residing in the United Kingdom, it is the Hague Convention rather than Rule 4 which provides the framework with which to evaluate the sufficiency of service.

The Hague Convention is a multinational, self-executing treaty concerned with the service of process on foreign defendants.  The Convention has been ratified by approximately twenty-three countries, including the United States and the United Kingdom.  Beverly L. Jacklin, <u>Service of Process by Mail in International Civil Action as Permissible Under Hague Convention</u>, 112 A.L.R. Fed. 241 (2004).  "The treaty seeks not only to simplify and expedite international service of process, but more importantly, to ensure that service is effected timely and adequately."  <u>Nuovo Pignone, SpA v. Storman Asia M/V</u>, 310 F.3d 374, 383 (5th Cir. 2002).  As a ratified treaty, service abroad effected pursuant to the Hague Convention supercedes the requirements of Rule 4.  <u>See</u> <u>McClenon v. Nissan Motor Corp.</u>, 726 F. Supp. 822, 823-26 (N.D. Fla. 1989); <u>Itel Container Int'l Corp.</u>

v. Atlanttrafik Express Serv., Ltd., 686 F. Supp. 438, 444 n.9 (S.D.N.Y. 1988); Cooper v. Makita, U.S.A., Inc., 117 F.R.D. 16, 16-18 (D. Me. 1987).

The Hague Convention provides a mechanism through which a plaintiff can effect service that will give appropriate notice to the party being sued and will not be objectionable to the nation in which that defendant is served. Id.  The Convention "regularized and liberalized service of process in international civil suits." Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).  It authorizes several different ways to effectuate service of process upon a foreign defendant. Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 470 (D.N.J. 1998).  The primary method requires each member country to designate a Central Authority to receive documents from another member country, and allows the receiving country to impose certain requirements with respect to those documents. See Hague Convention, art 2; art. 5.  Alternatively, Articles 8 and 9 allow for service through diplomatic and consular agents, respectively. See id., art. 8; art. 9.  Article 11 empowers the signatory countries to agree to any other method of service not specifically provided for by the Hague Convention.  See id., art.

11. Article 19 permits service by any means envisioned by the internal laws of the country in which service is made. See id., art. 19.

In this case, plaintiffs attempted to serve Ashcroft according to the provisions of Article 10(a). Article 10 states:

> Provided the State of destination does not object, the present Convention *shall not interfere with*–
> (a) the freedom to *send* judicial documents, by postal channels, directly to persons abroad,
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through judicial officers, officials or other competent persons of the State of destination.

(Emphasis added). Article 21 sets forth the formal procedure by which objections to service under Article 10(a) are to be made. See id., art. 21. Neither the United States nor the United Kingdom objected to Article 10(a).[5] EOI Corp. v. Medical Mktg.

---

[5] The United Kingdom specifically declined to adopt Articles 10(b) and (c), holding instead that "documents for service through official channels will be accepted in the United Kingdom only by the central or additional authorities and only from judicial, consular, or diplomatic officers of other Contracting States." Hague Convention, Ancillary Laws and Directives, *reprinted in* U.S.C.S. on International Agreements at 301.

Ltd., 172 F.R.D. 133, 136-37 (D.N.J. 1997).

**B.   Split of Authority**

American courts sharply disagree about whether the phrase "the freedom to *send* judicial documents" in Article 10(a) encompasses within its meaning the freedom to serve the summons and complaint commencing a lawsuit.  In recent years, two distinct lines of interpretation have arisen.  Brockmeyer, 383 F.3d at 801.  Neither the First Circuit nor the United States Supreme Court have addressed this issue.[6]

1.   The *Bankston* Approach

The Fifth and Eighth Circuits, as well as a number of district courts, have held that Article 10(a) does not authorize service of process by mail.  See, e.g., Nuovo, 310 F.3d at 385; Bankston v. Toyota Motor Corp., 889 F.2d 172 (8th Cir. 1989); Raffa v. Nissan Motor Co., 141 F.R.D. 45 (E.D. Pa. 1991); Hanover, Inc. v. Omet, 688 F. Supp. 1377 (W.D. Mo. 1988).  In

---

[6] Within the First Circuit, two district courts have followed the Bankston approach (Part B, 1. below), see Cooper, 117 F.R.D. at 17; Golub v. Isuzu Motors, 924 F. Supp. 324, 327-28 (D. Mass. 1996), while two others have followed the Ackermann approach (Part B, 2. below).  See Borschow Hosp. & Med. Supplies Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472, 479 (D.P.R. 1992); Melia v. Les Grandes Chais de France, 135 F.R.D. 28, 38-39 (D.R.I. 1991).

support of their interpretation, these courts point out that the use of the word "service" in Article 10(b) and 10(c), as well as in other sections, is evidence that the drafters of the Hague Convention intended to distinguish between transmitting judicial documents to a defendant after a lawsuit has been commenced and "serving" process on the defendant in order to initiate a lawsuit. See Bankston, 889 F.2d at 173-74. This line of cases thus concludes that "Article 10(a) merely provides a method for sending subsequent documents after service of process" has been has been accomplished by some other means. Id. at 174.

   2.   The *Ackermann* Approach

The Second and Ninth Circuits, and a number of other district courts, have held that Article 10(a) permits service of a summons by mail where such service is otherwise authorized. See, e.g., Brockmeyer, 383 F.3d at 802-04; Ackermann v. Levine, 788 F.2d 830, 838 (2d Cir. 1986); EOI Corp., 172 F.R.D. at 142; R. Griggs Group v. Filanto Spa, 920 F. Supp. 1100 (D. Nev. 1996); Zisman v. Sieger, 106 F.R.D. 194 (N.D. Ill. 1985); Chrysler Corp. v. General Motors Corp., 589 F. Supp. 1182 (D.D.C. 1984). Relying significantly on the history and purpose of the Hague Convention, these courts interpret the word "send" in Article

-9-

10(a) to include the service of process to commence a lawsuit. See Ackermann, 788 F.2d at 838.  Following Ackermann, these courts attribute Article 10(a)'s use of the word "send," rather than the otherwise consistently used "service," to careless drafting.  See id. at 839 (citing 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4-10 at 132 (1984)).

These courts were persuaded by commentaries on the history of negotiations leading to the Hague Convention and by a "Handbook" published by the Permanent Bureau of the Hague Convention.  Brockmeyer, 383 F.3d at 802-03.  The Handbook states that to interpret Article 10(a) not to permit service by mail would "contradict what seems to have been the implicit understanding of the delegates at the 1977 Special Committee meeting, and indeed of the legal literature on the Convention and its predecessor treaties."  Id. (quoting *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* 44 (1992)).

Courts adopting the Ackermann approach were also influenced by the view of the United States government, as expressed by the

-10-

State Department.  In a March 14, 1991 letter to the Administrative Office of the United States Courts,[7] the Deputy Legal Advisor of the State Department wrote that

> the decision of the Court of Appeals in Bankston is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country.

Id. at 803.  The State Department's letter also emphasized that, "while courts in the United States have final authority to interpret international treaties for the purposes of their application as law of the United States, they give great weight to treaty interpretations made by the Executive Branch."  Id.; see also United States v. Lombera-Camorlinga, 206 F.3d 882, 887 (9th Cir. 2000)(en banc).

**C.   Discussion**

I find the reasoning of the Second and Ninth Circuits persuasive.  Thus, I conclude that the reference in Article 10(a) of the Hague Convention to a participating state's "freedom to

---

[7]  Letter from Alan J. Kreczko, U.S. Dep't of State Deputy Legal Advisor, to the Admin. Office of the U.S. Courts (March 14, 1991), quoted in U.S. Dep't of State Op. Regarding the Bankston Case, 30 I.L.M. 260 (1991).

-11-

send judicial documents" by mail includes documents such as summonses that are used to initiate a lawsuit.

It does not necessarily follow, however, that Ashcroft's challenge to plaintiffs' attempt to serve him by mail fails simply because Article 10(a) does not bar such service. As the Ninth Circuit pointed out in Brockmeyer, although the Convention does not prohibit service of process by mail, neither does it affirmatively authorize such service. Id. Rather, affirmative authorization of service of process by mail, and any requirements as to how that service must be accomplished, must come from the law of the forum in which the suit is filed. Id. at 804. In the United States, Rule 4(f) governs service of process upon individuals in a foreign country.

Plaintiffs contend that they properly served Ashcroft by sending him a copy of the Summons and Complaint to the 7 Cowley Street address, by first class prepaid post--regular mail. Rule 4(f)(2)(C)(ii) authorizes service abroad by mail for which a signed receipt is required, when such mail is addressed and mailed by the clerk of the federal district court in which the suit is filed. See Brockmeyer, 383 F.3d at 804-05. Here, there is no evidence that plaintiffs complied with the requirements of

Rule 4(f)(C)(ii). Notice was not sent by the clerk of the district court, nor did plaintiffs use a form of mail requiring a signed receipt. Consequently, plaintiffs' attempt to serve Ashcroft by mail was ineffective.[8]

**D.   Remedy**

Plaintiffs urge that even if I determine that service of process was invalid, the claims against Ashcroft should not be dismissed and they should be permitted to re-serve the Summons and Complaint. In support of this request, plaintiffs note that the 120 day deadline for service of process under Fed. R. Civ. P. 4(m) does not apply to service in a foreign country. See Flock v. Scripto-Tokai Corp., 2001 WL 34111630 at *5 (S.D. Tex. 2001)(noting that "[t]he courts have consistently recognized that the 120-day limit does not apply to service in foreign countries of individual or corporate defendants.") Ashcroft concedes that plaintiffs' reading of Rule 4(m) is generally correct, but

---

[8] Rule 4(f) authorizes several other means of service, but plaintiffs advance no argument that they complied with these alternative means. See Fed. R. Civ. P. 4(f)(2)(A)(authorizing service by means used in the receiving country for service in an action in its courts of general jurisdiction); Fed. R. Civ. P. 4(f)(2)(C)(i)(authorizing personal service); Fed. R. Civ. P. 4(f)(3) (authorizing a federal district court to direct any form of service not prohibited by international agreement).

nevertheless urges that the claims against him should be dismissed because plaintiffs have taken too long to comply with their obligations.  See Savage & Assoc., P.C. v. Banda 26, S.A. (In re Teligent, Inc.), 2004 WL 724945 at *5 (Bankr. S.D.N.Y. Mar. 30, 2004), appeal denied sub nom., 2004 WL 1921851 (S.D.N.Y. Aug. 30, 2004)(court may dismiss a case for failure to serve foreign defendant within reasonable time despite foreign service exception to 120 day limit,).  I disagree.  There is no evidence that plaintiffs acted in bad faith, that Ashcroft was prejudiced by the delay, or that he will suffer any hardship in responding to the allegations in the Complaint if service is ultimately effectuated.  See In re Southold Dev. Corp., 148 B.R. 726, 730 (E.D.N.Y. 1992)(noting that prior to adoption of 120-day limit, courts applied a "flexible due diligence standard," under which courts refused to dismiss cases for insufficient service of process unless delay caused defendants hardship or prejudice); Cargill Ferrous Int'l v. M/V Elikon, 154 F.R.D. 193, 195-96 (N.D. Ill. 1994)(refusing to dismiss complaint for ineffective service denied where defendant did not demonstrate that it was prejudiced by the delay).  In fact, Ashcroft's detailed motion to dismiss responding to the substantive allegations in the Complaint

-14-

confirms that he has long had actual notice of the claims against him and bolsters my conclusion that he has not been prejudiced by the improper service.  I therefore deny his motion to dismiss.

### III. <u>CONCLUSION</u>

For the reasons set forth above, I deny Ashcroft's motion to dismiss (Doc. No. 387).  Plaintiffs shall have 90 days from the date of this Order to re-serve the Summons and Complaint in accordance with the Hague Convention and Fed. R. Civ. P. 4(f).

SO ORDERED.

/s/Paul Barbadoro<br>
Paul Barbadoro<br>
United States District Judge

August 4, 2005

cc:  Counsel of Record