**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 1-6-09

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
                                *
IN RE:                          *
                                *  02-MD-1335-PB
TYCO INTERNATIONAL, LTD.        *  10-6-08
                                *  10:00 A.M.
MULTIDISTRICT SECURITIES        *
LITIGATION                      *
                                *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:


FOR TYCO:            ELIZABETH F. EDWARDS, ESQ.
                     MARSHALL BEIL, ESQ.
                     MCGUIRE WOODS


FOR MR. KOZLOWSKI:   ROBERT SCHWARTZ, ESQ.
                     JYOTIN HAMID, ESQ.
                     WOLF POPPER, LLP


COURT REPORTER:      SUSAN M. BATEMAN, CSR, CRR
                     OFFICIAL COURT REPORTER
                     UNITED STATES DISTRICT COURT
                     55 PLEASANT STREET
                     CONCORD, NH 03301
                     (603)225-1453

1                    P R O C E E D I N G S

2            THE COURT:  GOOD MORNING.  I HAVE A COURT

3    REPORTER HERE AND MY LAW CLERKS.

4            MR. BEIL:  GOOD MORNING, YOUR HONOR.

5            MR. SCHWARTZ:  GOOD MORNING, YOUR HONOR.

6            THE COURT:  THIS TRO SEEMS TO HAVE BEEN

7    PROMPTED BY A DECISION BY THE NEW YORK DISTRICT

8    ATTORNEY TO HAVE THE TRO ENTERED IN STATE COURT

9    DISSOLVED AND A DECISION BY MR. KOZLOWSKI AND HIS

10   EX-WIFE TO SETTLE THEIR PENDING DIVORCE IN A WAY WHICH

11   LEAVES TYCO INSECURE CONCERNING ITS ABILITY TO RECOVER

12   MONIES IT CLAIMS IT'S OWED BY KOZLOWSKI.

13           BEFORE WE GET INTO THE MERITS OF THIS THING,

14   IS THERE A PRACTICAL SOLUTION TO THIS PROBLEM?  CAN WE

15   COOPERATIVELY ADDRESS TYCO'S CONCERNS IN A WAY THAT

16   ALLOWS THE DIVORCE AT LEAST TO BE FINALIZED AND LEAVES

17   US IN A SITUATION WHERE TYCO'S FEARS ARE ADDRESSED BUT

18   THE KOZLOWSKIS ARE ABLE TO END THEIR MARRIAGE AND MOVE

19   ON?

20           MR. SCHWARTZ:  YOUR HONOR, THIS IS ROBERT

21   SCHWARTZ.  I'M CERTAINLY OPEN TO ANY IDEAS ON THAT

22   SUBJECT, BUT JUST TO -- ALTHOUGH WE'RE NOT COUNSEL OF

23   RECORD FOR MR. KOZLOWSKI IN THE DIVORCE PROCEEDINGS,

24   WE UNDERSTAND AND HAVE BEEN SO ADVISED THAT THERE IS A

25   FINAL JUDGMENT OF DIVORCE IN FLORIDA AND THE

1  KOZLOWSKIS ARE, IN FACT, NOW DIVORCED, AND THERE'S AN

2  ORDER --

3          THE COURT:  OKAY.  I ASSUME SHE WANTS SOME

4  MONEY, THOUGH, AND IF SHE HASN'T GOTTEN IT ALREADY, I

5  ASSUME SHE DOESN'T -- SHE AND HER HUSBAND WOULD WANT

6  THE PROCEEDS TO BE ABLE TO BE TRANSFERRED, RIGHT?

7          MR. SCHWARTZ:  WELL, I'M SURE THAT'S RIGHT.

8  THEY CERTAINLY HAVE A PROPERTY DIVISION THAT'S PART OF

9  THAT JUDGMENT, ALL OF WHICH I AM TOLD IS THE SUBJECT

10 OF A CONFIDENTIALITY ORDER FROM THE FLORIDA COURT,

11 WHICH I BELIEVE IS FAIRLY STANDARD IN DIVORCE

12 PROCEEDINGS IN FLORIDA.

13         THE COURT:  YEAH, BUT LET'S BE REALISTIC

14 ABOUT THIS.  I HAVE THE POWER TO STOP MR. KOZLOWSKI

15 FROM TRANSFERRING ANY ASSETS HE HAS TO HIS EX-WIFE,

16 AND IF WE NEED TO GET INTO THE QUESTION OF WHETHER I

17 SHOULD EXERCISE THAT POWER OR NOT, I WILL, BUT IT

18 WOULD SEEM TO ME THAT HE AND SHE WOULD WANT ME NOT TO

19 EXERCISE THAT POWER, AND IF THERE'S SOME WAY THAT YOU

20 CAN, THROUGH AGREEMENT, PUT YOURSELF IN A POSITION

21 WHERE YOU AND TYCO ARE SATISFIED, I'M CERTAINLY

22 WILLING TO GIVE SUBSTANTIAL DEFERENCE TO ANY AGREEMENT

23 LIKE THAT.

24         I MEAN IT'S NOT AS IF YOU CAN JUST WALK AWAY

25 HERE.  I'VE GOT QUITE A BIT OF POWER TO RESTRAIN MR.

1 KOZLOWSKI, ASSUMING HE HASN'T ALREADY DONE WHATEVER IT

2 IS HE WOULD DO PURSUANT TO THE DIVORCE SETTLEMENT.

3        MR. SCHWARTZ:  YOUR HONOR, WE OBVIOUSLY DON'T

4 BELIEVE ANY SUCH RESTRAINTS SHOULD BE IMPOSED, AND IN

5 FACT, WE DO THINK THAT TYCO, IN PARTICULAR, IS ALREADY

6 UNUSUALLY WELL SECURED FOR A PREJUDGMENT CIVIL

7 LITIGANT SEEKING NOTHING BUT MONEY DAMAGES HERE.

8        THEY HAVE ALREADY RECEIVED AND HOLD OVER

9 $150 MILLION OF RESTITUTION THAT WAS ORDERED BY THE

10 NEW YORK STATE COURTS IN CONNECTION WITH THE CRIMINAL

11 PROCEEDINGS.

12        THE COURT:  I DON'T EVEN WANT TO ARGUE THE

13 MERITS YET.  IF YOU WANT TO GET INTO THAT, WE WILL,

14 BUT I GUESS YOU'RE BASICALLY SAYING YOU DON'T WANT TO

15 TRY TO WORK SOMETHING OUT.

16        MR. SCHWARTZ:  WE'RE OPEN TO THAT, YOUR

17 HONOR, BUT I DON'T QUITE KNOW WHAT IT WOULD BE OTHER

18 THAN RESTRAINING --

19        THE COURT:  WELL, LET'S START -- IF I WERE

20 TYCO, I WOULD BE SAYING, LOOK, LET'S REACH AN

21 AGREEMENT WHERE FIRST YOU GET PERMISSION TO MAKE ME

22 FULLY AWARE OF THE TERMS OF THE DIVORCE AGREEMENT.

23 SECOND, YOU AGREE THAT YOU NOT MAKE ANY FURTHER

24 TRANSFERS FROM THIS MOMENT FORWARD PURSUANT TO THE

25 DIVORCE AGREEMENT WITHOUT KNOWLEDGE AND AN OPPORTUNITY

```
1  FOR US TO COME TO COURT IN FRONT OF JUDGE BARBADORO TO
2  GET A RESTRAINING ORDER, AND WE, IN TURN, WILL AGREE
3  TO ALLOW CERTAIN MONIES THAT WE MIGHT OTHERWISE HAVE A
4  CLAIM AGAINST TO GO TO HER SO THAT SHE COULD GET SOME
5  MONEY RIGHT AWAY, AND WE'LL AGREE TO LEAVE THINGS IN
6  PLACE UNTIL WE -- FOR THE REST OF IT UNTIL WE GET
7  THINGS RESOLVED.  IF YOU WANT PRACTICAL, THAT'S
8  PRACTICAL.  DO YOU WANT TO DO THAT?
9           MR. SCHWARTZ:  YOUR HONOR, I CAN CERTAINLY
10 EXPLORE WITH THE CLIENT, AND I WOULD HAVE TO EXPLORE
11 WITH COUNSEL FOR MRS. KOZLOWSKI.
12          THE COURT:  YEAH.  I MEAN SOME MONEY IS
13 PROBABLY BETTER THAN NO MONEY, ISN'T IT?
14          MR. SCHWARTZ:  WELL, AGAIN, YOUR HONOR, WE
15 THINK THEY ALREADY HAVE SUBSTANTIAL FUNDS SO --
16          THE COURT:  I'M NOT IN THE MERITS YET, OKAY?
17          MR. SCHWARTZ:  I'M JUST TRYING TO BE
18 PRACTICAL, YOUR HONOR.
19          THE COURT:  YEAH, AND WHAT I'M SAYING IS THAT
20 YOU RUN A RISK THAT YOU GET TO THE END OF THIS HEARING
21 AND THERE'S AN ORDER PREVENTING ANY TRANSFER OF ANY
22 MONEY, AND IT WOULD SEEM TO ME THAT IF -- I DON'T KNOW
23 IF TYCO HAS ANY INTEREST IN THIS, EITHER.  THAT TYCO
24 WOULD HAVE SOME INTEREST IN DOING THIS IN A WAY THAT
25 ACCOMMODATES -- DOES THE FORMER MRS. KOZLOWSKI STILL
```

1  USE KOZLOWSKI?  I DON'T WANT TO --

2          MR. SCHWARTZ:  I DON'T KNOW, YOUR HONOR.

3          THE COURT:  WELL, LET'S YOU CALL HER

4  KOZLOWSKI NOW BECAUSE WE DON'T KNOW.  THAT MRS.

5  KOZLOWSKI WOULD WANT TO HAVE SOME MONEY FROM THIS

6  THAT'S BEEN TIED UP UP TILL NOW, AND TYCO WOULD HAVE

7  AN INTEREST IN LETTING HER HAVE SOME IF THEY COULD

8  HAVE AN AGREEMENT THAT THE BALANCE OF IT COULD JUST BE

9  HELD IN AN APPROPRIATELY SECURE INTEREST BEARING

10 ACCOUNT UNTIL THIS THING IS RESOLVED.  I MEAN THAT

11 JUST SEEMS TO ME TO BE PRACTICAL.

12         LET ME ASK TYCO.  DO YOU HAVE ANY INTEREST IN

13 DOING SOMETHING LIKE, OR DO YOU WANT TO JUST PRESS

14 AHEAD AND HOPE THAT I GIVE YOU EVERYTHING YOU ASK FOR?

15         MS. EDWARDS:  NO, YOUR HONOR.  WE WOULD BE

16 MUCH INTERESTED IN REACHING SOME AGREEMENT LIKE YOU

17 HAVE LAID OUT.

18         THE COURT:  WELL, DO YOU WANT SOME TIME TO

19 TALK ABOUT IT?  I MEAN I COULD ENTER AN ORDER SAYING

20 I'LL LEAVE THINGS IN PLACE -- I'LL ENTER AN ORDER

21 ENJOINING ANY FURTHER TRANSFERS FOR 24 HOURS IF THE

22 PARTIES ARE WILLING TO TRY TO REACH SOME KIND OF

23 ACCOMMODATION IN THE MEANTIME THAT WOULD RESULT IN A

24 MORE LASTING AGREEMENT CONCERNING THE DISPOSITION OF

25 ASSETS.

1          IF YOU DON'T WANT TO DO THAT, THAT'S FINE

2  WITH ME.  WE'LL JUST GO ON, AND I'LL HEAR YOU ON YOUR

3  PROFFERS AND MAKE AN ORDER AND WE'LL GO THE STANDARD

4  TRO ROUTE, AND IF I GIVE A TRO, SET UP A TIME FOR A

5  PRELIMINARY INJUNCTION, ADDRESS THE ISSUE OF

6  DISCOVERY, BUT IT SEEMS LIKE PRACTICALLY MOTIVATED

7  PEOPLE WOULD SEE THE BENEFIT OF TRYING TO WORK

8  SOMETHING OUT.

9          SO IT'S UP TO YOU.  IF ANYBODY ISN'T

10  INTERESTED IN THAT KIND OF APPROACH, THAT'S FINE.

11  WE'LL JUST GO RIGHT ON AND DEAL WITH IT IN THE

12  STANDARD WAY.

13          MR. SCHWARTZ:  YOUR HONOR, WE'RE CERTAINLY

14  INTERESTED IN THAT.  AS YOUR HONOR APPRECIATES, MR.

15  KOZLOWSKI IS INCARCERATED.  WE WOULDN'T BE ABLE TO

16  HAVE VERY MUCH OF A DIALOGUE IN THAT SHORT A PERIOD OF

17  TIME.

18          I THINK WE SHOULD GO FORWARD WITHOUT IN ANY

19  WAY ABANDONING TRYING TO FIND A PRACTICAL SOLUTION,

20  BUT I JUST DON'T THINK WE'RE GOING TO BE ABLE TO BE IN

21  A DIFFERENT POSITION 24 HOURS FROM NOW JUST GIVEN THE

22  PRACTICALITIES OF TRYING TO COMMUNICATE WITH OUR

23  CLIENT.

24          THE COURT:  OKAY.  THAT'S FAIR.  I

25  UNDERSTAND.  ALL RIGHT.  LET ME ASK TYCO.  I'VE GOT TO

1  SAY -- MAYBE BECAUSE I'M A CAUTIOUS GUY -- I'M ALWAYS

2  SKEPTICAL WHEN I GET FRIDAY AFTERNOON TROS WITH

3  EMERGENCY, EMERGENCY WHEN ALL OF THIS SEEMS TO HAVE

4  BEEN READILY PREDICTABLE TO TYCO.  WHY DID YOU WAIT

5  UNTIL THE ELEVENTH HOUR AND 59TH MINUTE TO COME IN

6  HERE AND TRY TO GET A TRO?

7        MR. BEIL:  YOUR HONOR, THIS IS MARSHALL BEIL,

8  ONE OF ELIZABETH EDWARDS'S PARTNERS.  I APOLOGIZE THAT

9  IT WAS FRIDAY AFTERNOON.  THAT WAS SOME HAPPENSTANCE

10 BY TIMING.

11       WE ARE NOT PARTIES TO THE -- OR TYCO IS NOT A

12 PARTY TO THE NEW YORK CIVIL FORFEITURE.  WE FOUND OUT

13 ABOUT THAT --

14       THE COURT:  WAIT A MINUTE.  THAT'S SHOCKING

15 TO ME.  YOU'RE THE VICTIM WHO IS ENTITLED TO

16 $95 MILLION IN RESTITUTION, AND YOU HAD NO IDEA THAT

17 THE RESTITUTION WAS GOING TO BE PAID TO YOU AND THE

18 INJUNCTION LIFTED?

19       MR. BEIL:  NO, YOUR HONOR.  THE AGREEMENT AND

20 THE PAPERS THAT WERE BEFORE THE COURT IN NEW YORK WERE

21 THAT TYCO WOULD BE PAID IT'S $97 MILLION AND THE

22 RESTRAINT WOULD STAY IN PLACE AT LEAST UNTIL AFTER

23 THAT WAS PAID, AND ONCE THAT WAS PAID TYCO WAS NO

24 LONGER A PARTY TO THAT ACTION.  SO THE STIPULATION

25 THAT WAS ENTERED INTO IN NEW YORK BETWEEN THE D.A. AND

1  MR. KOZLOWSKI'S COUNSEL DID NOT INVOLVE TYCO.  WE

2  FOUND OUT ABOUT THE --

3          THE COURT:  DON'T THEY HAVE A VICTIM'S RIGHTS

4  LAW IN NEW YORK?

5          MR. BEIL:  NOT IN THIS CONNECTION BECAUSE

6  WE --

7          THE COURT:  SO JUST -- $95 MILLION JUST

8  SHOWED UP IN YOUR BANK ACCOUNTS, AND YOU WERE JUST

9  REALLY SURPRISED BY THAT, HUH?

10          MR. BEIL:  WELL, IT SHOWED UP SOME TIME AGO,

11  YOUR HONOR.  THERE WERE RESTITUTION ORDERS TO TYCO.

12  THERE WERE ALSO FINES THAT HAD TO BE PAID TO THE

13  STATE, WHICH WERE NOT -- WHICH TYCO WAS NOT A PARTY

14  TO.

15          THE COURT:  WELL, WHEN DID YOU GET THE

16  $95 MILLION?

17          MR. BEIL:  I BELIEVE IT WAS --

18          MS. EDWARDS:  2007.

19          MR. BEIL:  -- IN 2007, YOUR HONOR.

20          MR. SCHWARTZ:  YOUR HONOR, IT WAS IN JANUARY

21  OF 2007.

22          THE COURT:  AND WHEN DID THIS TRO GET

23  DISSOLVED IN NEW YORK?

24          MR. BEIL:  IT WAS ENTERED BY THE CLERK ON

25  SEPTEMBER 22ND.  IT HAD BEEN SIGNED A FEW DAYS EARLIER

1 BY THE JUDGE.

2         THE COURT:  AND SO WHY WAS THE TRO IN PLACE

3 IF NEW YORK HAD GOTTEN EVERY DIME THAT IT WAS ENTITLED

4 TO FROM THEM?

5         MR. BEIL:  IT'S NOT CLEAR TO ME WHEN NEW YORK

6 WAS PAID THE FINES THAT WERE ALSO IMPOSED ON MR.

7 KOZLOWSKI AND MR. SWARTZ.

8         MR. SCHWARTZ:  YOUR HONOR, I DON'T WANT TO

9 INTERRUPT MR. BEIL, BUT I CAN ANSWER THAT QUESTION IF

10 YOUR HONOR WANTS ME TO DO THAT NOW.

11         THE COURT:  YES.

12         MR. SCHWARTZ:  THE STATE STATUTE THAT THE

13 D.A. PURSUED IN THE CIVIL FORFEITURE PROCEEDING

14 FREEZING MR. KOZLOWSKI'S ASSETS WAS LIFTED AFTER HE

15 PAID IN FULL THE RESTITUTION -- THE $98 MILLION --

16 WHICH WAS TRANSFERRED TO TYCO IN JANUARY OF '07, AND

17 WHEN THE $70 MILLION IN A CRIMINAL FINE THAT WAS ALSO

18 IMPOSED AS PART OF THE SENTENCE WAS FULLY ESCROWED --

19 THE LAST PORTION OF THAT $70 MILLION FINE WAS ESCROWED

20 EARLIER IN SEPTEMBER OF '08, AND THE STATUTE WHICH THE

21 D.A. HAD INVOKED, WHICH IS NOT AVAILABLE FOR

22 PREJUDGMENT CIVIL LITIGANTS, THEY LIFTED THAT

23 FORFEITURE ACTION AND DISMISSED THE FORFEITURE

24 PROCEEDING AS SOON AS THEY HAD SECURED ALL OF THE

25 FINANCIAL COMPONENTS OF THE CRIMINAL SENTENCE, AS THEY

1  HAD DONE A YEAR EARLIER IN THE CASE OF MARK SWARTZ,

2  WHO WAS ABLE TO LIQUIDATE ASSETS AND PAY HIS FULL

3  RESTITUTION AND CRIMINAL FINE I BELIEVE ABOUT A YEAR

4  EARLIER THAN MR. KOZLOWSKI WAS ABLE TO COMPLETE THAT

5  PROCESS.

6          THE COURT:  WELL I MEAN IT'S A LITTLE

7  FRUSTRATING.  APPARENTLY -- YOU GIVE A LOGICAL

8  EXPLANATION FOR THE SITUATION.  SO APPARENTLY TYCO WAS

9  UNDER A MISTAKEN IMPRESSION THAT IT COULD BE

10 SUFFICIENTLY SECURED BY THE TRO ENTERED BY THE -- AT

11 THE REQUEST OF THE DISTRICT ATTORNEY, BUT THE DISTRICT

12 ATTORNEY, I DON'T THINK UNREASONABLY, BELIEVED THAT,

13 LOOK, TYCO WAS TAKEN OUT WHEN IT WAS PAID IN '07, AND

14 WE DIDN'T HAVE TO GIVE IT ANY NOTICE BECAUSE TYCO --

15 THE REMAINING TRO WAS TO BENEFIT US, NOT TO BENEFIT

16 THE VICTIM.  THAT'S WHAT YOU'RE SAYING, RIGHT,

17 COUNSEL?

18          MR. BEIL:  YES, SIR, AND AS SOON AS WE FOUND

19 OUT THAT THE ORDER HAD BEEN ENTERED, WE PREPARED THESE

20 PAPERS AND CAME TO YOUR HONOR AS QUICKLY AS WE COULD.

21          THE COURT:  WELL, NO OFFENSE, BUT YOU SHOULD

22 HAVE DONE THIS MANY, MANY MONTHS AGO BECAUSE YOU HAD

23 NO REASONABLE EXPECTATION THAT YOU COULD CONTINUE TO

24 BE PROTECTED BY THE NEW YORK DISTRICT ATTORNEY'S TRO

25 BECAUSE YOU WERE NO LONGER A BENEFICIARY OF THAT TRO

1   ONCE THE FULL PAYMENT HAD BEEN MADE, AND YOU SHOULD

2   HAVE COME HERE MONTHS AGO BEFORE THINGS WERE IN THIS

3   VERY DIRE SITUATION.

4           IT IS ALSO NO SECRET THAT THE KOZLOWSKIS WERE

5   GETTING DIVORCED.  I THINK I READ ABOUT THAT A YEAR OR

6   SO AGO.  SO THE SITUATION WE FIND OURSELVES IN SEEMS

7   TO ME TO HAVE BEEN VERY PREDICTABLE TO TYCO.

8           MR. BEIL:  THE ANNOUNCEMENT OF A POTENTIAL

9   SETTLEMENT, SUBJECT TO APPROVAL OF THE COURT, WAS ONLY

10  IN JULY OF THIS YEAR, AND THE RESTRAINT WAS STILL IN

11  PLACE AND THERE WAS SOME INDICATION IN THE PRESS, AT

12  LEAST, THAT THE SETTLEMENT AGREEMENT AND THE DIVORCE

13  HAD TO GO THROUGH THE NEW YORK COURT, WHICH I DON'T

14  THINK ACTUALLY DID HAPPEN.  THE DIVORCE WAS ONLY

15  GRANTED -- THE FINAL -- IN MID-AUGUST AND THE

16  RESTRAINT WAS STILL IN PLACE AT THAT POINT IN NEW

17  YORK.

18          SO ALL OF THESE THINGS WERE IN PLACE, AND

19  PERHAPS WE SHOULD HAVE MOVED BEFORE ANY OF THESE

20  RESTRAINTS WERE LIFTED, AND I APOLOGIZE FOR NOT HAVING

21  DONE THAT, BUT WE MOVED AS QUICKLY AS WE COULD ONCE WE

22  FOUND OUT THAT THE RESTRAINTS HAD BEEN LIFTED TO ASK

23  YOUR HONOR FOR A RESTRAINT GOING FORWARD.

24          THE COURT:  IS THERE ANY REASON TO BELIEVE

25  THAT THESE TRANSFERS HAVEN'T ALREADY OCCURRED, AND

1  THEREFORE, THE ISSUANCE OF A TRO WOULD BE MOOT?

2          MR. BEIL:  WE JUST DON'T KNOW, YOUR HONOR.

3  THAT'S ONE OF THE REASONS WE'VE ASKED FOR EXPEDITED

4  DISCOVERY IS WE DON'T KNOW WHAT THE TERMS WERE AND HOW

5  MUCH MONEY HAS BEEN TRANSFERRED, AND WE ALSO DON'T

6  KNOW WHAT MR. KOZLOWSKI'S FURTHER INTENT MAY BE WITH

7  REGARD TO THE REST OF HIS SUBSTANTIAL ASSETS.

8          THE COURT:  OKAY.

9          MR. SCHWARTZ:  YOUR HONOR, EXCEPT FOR THE

10 CONFIDENTIALITY ORDER FROM THE FLORIDA COURT, I COULD

11 ENLIGHTEN YOUR HONOR.  I GUESS I'M PREPARED TO DO THAT

12 EX PARTE IN THE SAME WAY THAT OF THIS WAS A DOCUMENT

13 DISPUTE OVER A PRIVILEGE, WE COULD MAKE A PRESENTATION

14 TO YOU.  OTHERWISE, I THINK WE'RE OBLIGED TO GET THE

15 CONSENT OF THE COURT ON NOTICE TO MRS. KOZLOWSKI, BUT

16 I DON'T BELIEVE THE MATTER IS MOOT.  THERE ARE REAL

17 PROPERTY THAT -- IN FLORIDA PROTECTED BY THE FLORIDA

18 HOMESTEAD ACT THAT WILL BE AFFECTED BY THE DIVORCE

19 PROCEEDINGS -- THE DIVORCE JUDGMENT.  THAT HAS NOT

20 TAKEN PLACE.

21         THERE IS, I'M TOLD, SOME BACK PROPERTY TAXES

22 THAT ARE DUE TO THE TAXING AUTHORITIES IN FLORIDA, AND

23 THAT'S THE TYPE OF EXPENSE THAT IS LIKELY TO BE PAID

24 IN THE VERY NEAR TERM AS A RESULT OF THE DIVORCE,

25 WHICH OBVIOUSLY FREED UP CERTAIN ASSETS THAT WERE

1  BEING CONTESTED BETWEEN MR. AND MRS. KOZLOWSKI.

2         SO ALTHOUGH I CAN'T SPEAK TO WHAT TRANSFERS

3  HAVE ALREADY TAKEN PLACE OR TO THE SUBSTANTIVE TERMS

4  OF THE DIVORCE SETTLEMENT BECAUSE OF THAT

5  CONFIDENTIALITY ORDER, I THINK I'M AT LIBERTY TO TELL

6  YOUR HONOR THAT THE WHOLE THING IS NOT MOOT IN THE WAY

7  YOUR HONOR RAISES IT.

8         THE COURT:  OKAY.  I APPRECIATE THAT.  ALL

9  RIGHT.  WELL, TYCO HAS FILED A MEMORANDUM AND

10 AFFIDAVITS PROVIDING REASONABLY DETAILED SUPPORT FOR

11 ITS POSITIONS REGARDING THE IRREPARABILITY OF THE

12 HARM, THE LIKELIHOOD OF SUCCESS ON THE MERITS AND THE

13 OTHER REQUIREMENTS THAT MUST BE PRESENT FOR THE

14 ISSUANCE OF A TEMPORARY RESTRAINING ORDER.

15        DOES TYCO WANT TO SAY ANYTHING IN ADDITION TO

16 WHAT'S IN ITS PAPERS, OR SHOULD I TURN TO MR.

17 KOZLOWSKI'S COUNSEL AND THEN GIVE TYCO AN OPPORTUNITY

18 TO RESPOND?

19        MR. BEIL:  UNLESS YOU HAVE ANY QUESTIONS,

20 YOUR HONOR, AT THIS POINT WE'LL REST ON OUR PAPERS.

21        THE COURT:  ALL RIGHT.  I'LL HEAR FROM MR.

22 KOZLOWSKI'S COUNSEL.

23        MR. SCHWARTZ:  THANK YOU, YOUR HONOR.  THIS

24 IS MR. SCHWARTZ AGAIN.  OBVIOUSLY WE DON'T BELIEVE

25 THAT TYCO IS ENTITLED TO ANY PRELIMINARY RELIEF AT

1    THIS TIME, RESTRAINING HIS COMPLIANCE WITH THE FLORIDA

2    COURT'S JUDGMENT OF DIVORCE OR OTHERWISE FREEZING HIS

3    ASSETS OR SECURING ANY DISCOVERY AT THIS TIME WITH

4    REGARDS TO HIS ASSETS OR FINANCIAL INFORMATION.

5            TYCO IS NOTHING MORE THAN A PREJUDGMENT CIVIL

6    LITIGANT BEFORE YOUR HONOR ALLEGING A SERIES OF CLAIMS

7    THAT SEEKS NOTHING OTHER THAN MONEY DAMAGES.  THE LAW

8    IS WELL SETTLED THAT CLAIMS FOR MONEY DAMAGES, EVEN

9    WHEN THEY'RE INVOKING EQUITABLE -- DOES NOT CONSTITUTE

10   IRREPARABLE HARM, AND THE POSSIBILITY THAT AT SOME

11   FUTURE DATE IF A JUDGMENT IS EVER SECURED THAT THE

12   DEFENDANT MIGHT NOT BE ABLE TO PAY THOSE OBLIGATIONS

13   UNDER THE JUDGMENT HAS NEVER BEEN DEEMED TO BE

14   SUFFICIENT TO CONSTITUTE IRREPARABLE HARM IN AND OF

15   ITSELF.

16           THE COURT:  WELL, THAT'S WHERE YOU'VE LOST ME

17   ON THIS.  MY UNDERSTANDING OF THE LAW SUGGESTS TO ME

18   THAT WHEN THERE IS EVIDENCE THAT ASSETS THAT WOULD BE

19   NEEDED TO SATISFY A JUDGMENT, AND PARTICULARLY WHEN

20   THERE ARE CLAIMS FOR IMPOSITION OF A CONSTRUCTIVE

21   TRUST, EVIDENCE THAT ONE OF THE LITIGANTS IN

22   ATTEMPTING TO THWART THE POWER OF THE COURT TO AFFECT

23   THE JUDGMENT IS EMINENTLY ENGAGED IN A TRANSFER OF

24   ASSETS TO A THIRD PARTY IS PRECISELY THE KIND OF

25   SITUATION WHERE IRREPARABLE HARM CAN BE FOUND SO I

1  GUESS WE HAVE A RADICALLY DIFFERENT UNDERSTANDING OF

2  THE LAW IN THIS AREA.  WHY DON'T YOU EXPLAIN TO ME

3  WHERE I'VE GOTTEN OFF TRACK.

4          MR. SCHWARTZ:  YOUR HONOR, I THINK THE PLACE

5  I WOULD START IS WITH THE SUPREME COURT DECISION IN

6  GRUPO MEXICANO VERSUS ALLIANCE BOND FUND, WHICH IS

7  527 U.S. 308, A 1999 DECISION.  THERE THE SUPREME

8  COURT VACATED A FREEZE ORDER VERY SIMILAR TO THE ONE

9  THAT TYCO SEEKS HERE.

10          THE SUPREME COURT SAID THAT DISTRICT COURTS

11  DO NOT HAVE AUTHORITY TO PRELIMINARILY ENJOIN OR

12  FREEZE A DEFENDANT'S ASSETS PENDING THE ADJUDICATION

13  OF THE PLAINTIFF'S CLAIM FOR MONEY DAMAGES, REFERRED

14  TO SUCH RESTRAINTS -- PREJUDGMENT RESTRAINTS IN CIVIL

15  CASES AS EFFECTIVELY A LEGAL NUCLEAR WEAPON WHICH THE

16  COURT SITTING IN EQUITY HAS HISTORICALLY --

17          THE COURT:  WAS THERE EVIDENCE IN THAT CASE

18  THAT THERE WAS AN EMINENT FRAUDULENT TRANSFER THAT WAS

19  BEING PLANNED?

20          MR. SCHWARTZ:  NO, YOUR HONOR.  I DON'T

21  BELIEVE THERE WAS.

22          THE COURT:  DOES THAT MAKE A DIFFERENCE, IN

23  YOUR VIEW?

24          MR. SCHWARTZ:  IT DOES NOT BECAUSE IN THIS

25  CASE THERE'S NO EVIDENCE --

1           THE COURT:  WELL, STRIKE THAT.  I MEAN I

2    UNDERSTAND YOUR POINT THAT THERE'S NO EVIDENCE, BUT

3    I'M SAYING, ASSUMING THAT THERE IS EVIDENCE THAT THERE

4    IS A FRAUDULENT TRANSFER BEING ANTICIPATED, YOU'RE

5    SAYING THAT STILL THE COURT HAS TO SIT BACK AND ALLOW

6    THE FRAUDULENT TRANSFER TO OCCUR.  IT HAS NO AUTHORITY

7    TO PREVENT THE FRAUDULENT TRANSFER OF ASSETS THAT WILL

8    BE USED TO SATISFY AN EQUITABLE JUDGMENT THAT THE

9    COURT IS BEING ASKED TO ENTER?

10           MR. SCHWARTZ:  THERE ARE RARE CASES, YOUR

11   HONOR, WHERE THE CIVIL CLAIMANTS HAD A LIEN OR A

12   SECURITY INTEREST IN A PARTICULAR ASSET WHICH THE

13   DEFENDANT WAS IN THE PROCESS OF DISPOSING OF WHERE THE

14   COURTS HAVE REACHED -- PROVIDED PRELIMINARY RELIEF,

15   BUT NOT IN A CLAIM, SUCH AS WE HAVE HERE, FOR MONEY

16   DAMAGES WHERE THERE'S NO PARTICULAR ASSET THAT TYCO IS

17   SAYING MR. KOZLOWSKI HAS A WORK OF ART OR AN APARTMENT

18   THAT HE'S ABOUT TO LIQUIDATE OR RESTRAIN.

19           THE COURT:  WELL, OF COURSE IF WE'RE TALKING

20   ABOUT SPECIFIC PROPERTIES, HE WOULD SIMPLY GET AN

21   ATTACHMENT ON THOSE PROPERTIES WHICH COURTS ROUTINELY

22   GIVE ON AN EX PARTE BASIS TO SECURE THE ABILITY TO PAY

23   A JUDGMENT, RIGHT?

24           MR. SCHWARTZ:  THAT'S RIGHT, YOUR HONOR, OR

25   ANOTHER SECURITY INTEREST THAT COULD BE ENFORCEABLE.

1           THE COURT:  IF THEY KNEW WHERE HIS BANK

2  ACCOUNTS WERE, THEY COULD GET AN ATTACHMENT VERY, VERY

3  EASILY AND ROUTINELY.  THAT HAPPENS EVERY DAY IN

4  COURTS ACROSS THE UNITED STATES.

5           MR. SCHWARTZ:  WHERE THEY HAVE A CONTRACTUAL

6  SECURITY INTEREST, YOUR HONOR, BUT NOT WHERE --

7           THE COURT:  MAYBE NEW HAMPSHIRE IS UNIQUE IN

8  THE WORLD, BUT IF I SUE YOU FOR $10 MILLION AND I CAN

9  GET AN ATTACHMENT TO SAY THAT YOU'RE ABOUT TO WASTE

10  YOUR ASSETS, I COULD GET AN ATTACHMENT OF YOUR BANK

11  ACCOUNT VERY EASILY.

12           MR. SCHWARTZ:  PERHAPS IN NEW HAMPSHIRE, YOUR

13  HONOR, BUT I'M NOT FAMILIAR WITH ANY SUCH PROPOSITION,

14  ABSENT A SECURITY INTEREST.  IF THERE WAS A LIEN OR A

15  SECURITY INTEREST THAT TYCO HAD AS A RESULT OF SOME

16  CONTRACTUAL RELATIONSHIP, YES, BUT THEY HAVE NO SUCH

17  CLAIM HERE.  THEY'RE JUST SUING FOR MONEY DAMAGES THAT

18  THEY ALLEGE --

19           THE COURT:  WELL, THEY'RE NOT SUING FOR MONEY

20  DAMAGES ONLY.  THEY'RE SUING FOR IMPOSITION OF A

21  CONSTRUCTIVE TRUST.  THAT'S AN EQUITABLE REMEDY, ISN'T

22  IT?  THAT'S NOT A REMEDY FOR MONEY DAMAGES, IS IT?

23           MR. SCHWARTZ:  NOT A SECURITY INTEREST, YOUR

24  HONOR.

25           THE COURT:  WELL, IT'S NOT A MONEY DAMAGES

1  CLAIM.  CONSTRUCTIVE TRUST IS AN EQUITABLE REMEDY,

2  ISN'T IT?

3         MR. SCHWARTZ:  IT IS AN EQUITABLE REMEDY,

4  YOUR HONOR.

5         THE COURT:  SO WHEN THAT REMEDY IS ENFORCED,

6  IT'S NOT A MONEY DAMAGES ORDER.

7         MR. SCHWARTZ:  IT'S REDUNDANT WITH THE CLAIM

8  FOR MONEY DAMAGES HERE.

9         THE COURT:  THAT THEY MAY ALSO HAVE A CLAIM

10  FOR MONEY DAMAGES DOESN'T MEAN THAT THEY DON'T HAVE A

11  CLAIM FOR EQUITABLE RELIEF.  I MEAN THAT'S A LITTLE

12  BIT MISLEADING, COUNSEL.

13         MR. SCHWARTZ:  I DON'T BELIEVE I'M

14  MISLEADING, YOUR HONOR.  I'M TRYING TO BE AS CLEAR AS

15  I CAN.

16         THE COURT:  OKAY.  LET ME READ THE CASE

17  YOU'VE CITED.

18         MR. SCHWARTZ:  ALL RIGHT.

19         THE COURT:  JUST WAIT A MINUTE.

20         (COURT REVIEWS CASE)

21         THE COURT:  COUNSEL, LET ME ASK YOU A COUPLE

22  OF QUESTIONS.  IF YOU STEAL MY TRACTOR AND I KNOW

23  YOU'RE ABOUT TO SELL IT TO SOMEBODY ELSE, CAN I GET A

24  TEMPORARY RESTRAINING ORDER ENJOINING YOU FROM SELLING

25  THAT TRACTOR TO SOMEBODY ELSE?

1          MR. BEIL:  YOUR HONOR, MARSHALL BEIL.  THE

2  ANSWER IS YES.

3          THE COURT:  I'M ASKING KOZLOWSKI'S COUNSEL.

4          MR. BEIL:  ALL RIGHT, YOUR HONOR.

5          MR. SCHWARTZ:  YOUR HONOR, THERE ARE SOME

6  CASES WHERE THERE'S A SPECIFIC PIECE OF PROPERTY, LIKE

7  A TRACTOR, WHERE THERE HAS BEEN SUCH RELIEF.  I THINK

8  THERE ARE OTHER CASES THAT HAVE GONE THE OTHER WAY.

9          THE COURT:  YOU MEAN THE COURT HAS TO STAND

10  BY AND LET A THIEF SELL HIS STOLEN GOODS BECAUSE YOU

11  HAVE TO GET A JUDGMENT AGAINST HIM FIRST AND LEVY ON

12  THE ASSET TO GET RETURN OF THE PROPERTY?  THAT'S YOUR

13  THEORY OF THE WAY THE LAW WORKS?

14          MR. SCHWARTZ:  WELL, YOUR HONOR, IN THIS CASE

15  I DON'T NEED TO REACH THAT POINT.

16          THE COURT:  DON'T REFLECT, PLEASE.  I'M

17  ASKING YOU HYPOTHETICAL QUESTIONS.  OBVIOUSLY THAT

18  CASE IS NOT THIS ONE.  I UNDERSTAND THAT.  PLEASE

19  ANSWER MY HYPOTHETICAL QUESTION.

20          MR. SCHWARTZ:  I'LL ANSWER YOUR HYPOTHETICAL,

21  YOUR HONOR.  IF ALL A PLAINTIFF DOES IS COME INTO

22  COURT AND ALLEGE THAT HE'S BEEN DEFRAUDED OR WAS A

23  VICTIM OF A THEFT --

24          THE COURT:  MY NEIGHBOR HAS STOLEN MY

25  TRACTOR.  HE NOW IS OFFERING IT FOR SALE ON EBAY.

1  PLEASE GIVE ME AN INJUNCTION.  I'VE GOT AN ACTION FOR

2  A CONVERSION AGAINST HIM.  I'VE GOT AN EQUITABLE

3  ACTION FOR THE RETURN OF MY PROPERTY.  I WANT A TRO TO

4  PREVENT HIM FROM SELLING MY TRACTOR.  CAN I DO THAT?

5          MR. SCHWARTZ:  THERE ARE CASES THAT WOULD

6  PERMIT THAT, AND THERE ARE CASES THAT SAY NO.

7          THE COURT:  WHY WOULD THEY SAY NO?

8          MR. SCHWARTZ:  IT'S LIKELIHOOD OF SUCCESS,

9  YOUR HONOR.

10          THE COURT:  WELL, LIKELIHOOD OF SUCCESS --

11 ULTIMATELY, YOU CAN'T GET THE TRACTOR BACK?  YOU'RE

12 SAYING THAT THE LAW DOES NOT ALLOW A PERSON WHO HAS

13 BEEN A VICTIM OF A THEFT TO GET HIS PROPERTY BACK?

14          MR. SCHWARTZ:  IT DEPENDS -- PRELIMINARILY

15 BEFORE A JUDGMENT?

16          THE COURT:  NO.  YOU SAID LIKELIHOOD OF

17 SUCCESS.  SO I'M SAYING, OKAY, WHAT YOU'RE SAYING IS

18 THAT IF HE CAN'T ESTABLISH LIKELIHOOD OF SUCCESS IN

19 GETTING IT BACK EVEN AT THE END OF THE CASE, THE COURT

20 LACKS THE POWER TO ORDER THE RETURN OF THE TRACTOR.

21          MR. SCHWARTZ:  IF THE COURT FOUND THERE WAS A

22 HIGH LIKELIHOOD OF SUCCESS AND THAT IT WOULD CAUSE

23 IRREPARABLE HARM TO THE PLAINTIFF TO LOSE THE TRACTOR,

24 YES, THERE ARE CASES THAT WOULD GRANT A PRELIMINARY

25 INJUNCTION IN THOSE CIRCUMSTANCES.

1          THE COURT:  AND IF SOMEBODY TOOK MY SATCHEL

2    OF $100,000 AND RAN IT IN AND DEPOSITED IN HIS BANK

3    ACCOUNT, I COULDN'T GET AN INJUNCTION -- A RESTRAINING

4    ORDER PREVENTING HIM FROM TRANSFERRING THAT MONEY TO

5    ANOTHER PLACE WHILE I TRY TO GET IT BACK?

6          MR. SCHWARTZ:  YEAH.  THE LAW IS VERY CLEAR,

7    YOUR HONOR, WITH REGARD TO CLAIMS FOR MONEY DAMAGES

8    ALONE --

9          THE COURT:  STOP TALKING MONEY DAMAGES, OKAY?

10   I'M NOT ASKING ABOUT MONEY DAMAGES.  I'M ASKING ABOUT

11   EQUITABLE REMEDIES.  YOU KNOW THERE'S A DIFFERENCE

12   BETWEEN MONEY DAMAGE CLAIMS AND EQUITABLE RELIEF,

13   RIGHT?

14         MR. SCHWARTZ:  YES, YOUR HONOR.

15         THE COURT:  YOU KNOW THE LAW RECOGNIZES THAT

16   DISTINCTION SO STOP TALKING MONEY DAMAGES.  EVERYTHING

17   I'M ASKING YOU IS ABOUT EQUITABLE RELIEF.

18         MR. SCHWARTZ:  ALL RIGHT, YOUR HONOR.  IF THE

19   EQUITABLE RELIEF IS SIMPLY TO RESTRAIN THE DEFENDANT'S

20   DISPOSITION OF CASH HE HAS THAT THE PLAINTIFF SAYS IS

21   HIS, THE CASE LAW IS PRETTY CLEAR THAT THAT IS NOT

22   RECOVERABLE ON A PRELIMINARY BASIS.

23         THE COURT:  YOU AGREE THAT GRUPO MEXICANO IS

24   NOT THAT CASE, RIGHT?

25         MR. SCHWARTZ:  GRUPO MEXICANO SUPPORTS THAT

1  PROPOSITION.  IT'S NOT THE CASE YOU'VE JUST SET FORTH,

2  YOUR HONOR.

3          THE COURT:  IT'S NOT A CASE IN WHICH THE

4  PARTY WAS SEEKING THE RECOVERY OF PROPERTY OR THE

5  IMPOSITION OF A CONSTRUCTIVE TRUST OR A RECISION.

6          MR. SCHWARTZ:  IT WAS SEEKING EQUITABLE

7  RELIEF, YOUR HONOR.  I DON'T THINK THEY INVOKED THE

8  WORDS CONSTRUCTIVE TRUST, BUT THEY CERTAINLY WERE

9  SEEKING EQUITABLE RELIEF TO PROTECT THEIR --

10          THE COURT:  BECAUSE THEY SAID THEY WERE OWED

11  MONEY AND THEY WERE LIKE ANY OTHER PERSON WHO HAD A

12  CLAIM THAT HAD NOT YET BEEN REDUCED TO JUDGMENT.  THAT

13  WAS WHAT THAT CASE WAS ABOUT.  GIVE ME A CASE WHERE

14  SOMEBODY IS BASICALLY TRYING TO GET THEIR PROPERTY

15  BACK AND THE COURT -- IN AN ACTION FOR EQUITY AND THE

16  COURT HAS -- WHICH ULTIMATELY THE RELIEF REQUESTED IS

17  A PERMANENT INJUNCTION SAYING, GIVE HIM HIS MONEY

18  BACK -- SHOW ME A CASE WHERE THE COURT IS BEING ASKED

19  TO DO THAT AND HAS THE AUTHORITY TO DO THAT,

20  ULTIMATELY CAN'T DO IT PRELIMINARILY OR ON A TRO

21  BASIS.

22          MR. SCHWARTZ:  I CAN'T AS I SIT HERE NOW, BUT

23  I BELIEVE THERE ARE QUITE A FEW CASES, YOUR HONOR,

24  WHERE PLAINTIFFS ALLEGING THAT THEY'VE HAD MONEY

25  STOLEN FROM THEM AND ARE SEEKING TO RECOVER THAT MONEY

1   HAVE BEEN DENIED PRELIMINARY INJUNCTIVE RELIEF.

2         THE COURT:  I'M CERTAIN THERE ARE CASES WHERE

3   DENIAL IS FOR A VARIETY OF REASONS, LIKE YOU CAN'T

4   PROVE IT, BUT DENIED ON THE GROUNDS -- GIVE ME A CASE

5   WHICH SAYS THAT YOU DO NOT -- THE COURT DOES NOT HAVE

6   THE POWER TO PREVENT SOMEONE WHO STOLE YOUR MONEY FROM

7   TRANSFERRING IT AND GIVING IT TO SOMEONE ELSE UNTIL

8   THE CASE IS -- UNTIL FINAL JUDGMENT IS ENTERED BECAUSE

9   THAT'S THE PROPOSITION THAT YOU'RE REALLY ARGUING

10  HERE, AND I JUST WANT A CASE THAT SUPPORTS THAT

11  PROPOSITION.

12         MR. SCHWARTZ:  YOUR HONOR, AS I SIT HERE NOW,

13  I CAN'T CITE YOU A CASE.  OF COURSE THAT'S NOT OUR

14  SITUATION SINCE, AS TYCO ACKNOWLEDGES, THEY'VE ALREADY

15  RECEIVED FULL RESTITUTION FOR ALL THE FUNDS THAT THEY

16  ALLEGE WERE --

17         THE COURT:  OH, OKAY.  I MISREAD THEIR BRIEF.

18  TYCO, YOU AGREE THAT YOU'VE RECEIVED FULL RESTITUTION

19  FOR ALL MONIES THAT KOZLOWSKI WRONGLY TOOK?

20         MR. BEIL:  MOST DEFINITELY NOT, YOUR HONOR.

21         THE COURT:  YEAH, I DIDN'T THINK SO.

22         MR. BEIL:  AND I COULD CITE YOU SEVERAL CASES

23  THAT RULE AGAINST WHAT MR. SCHWARTZ HAS BEEN ARGUING.

24         THE COURT:  WELL, GIVE ME A CASE THAT

25  SUPPORTS THE PROPOSITION THAT WHERE A LITIGANT IS

1  SEEKING EQUITABLE RELIEF IN THE FORM OF THE IMPOSITION

2  OF A CONSTRUCTIVE TRUST TO PREVENT THE DISSIPATION OF

3  THE PLAINTIFF'S ASSETS THAT WERE WRONGFULLY ACQUIRED

4  BY THE DEFENDANT -- THAT IN THAT CASE TO FURTHER THAT

5  REMEDY THE COURT HAS THE POWER TO ENTER TEMPORARY OR

6  PRELIMINARY RELIEF PREVENTING THE ASSET FROM BEING

7  DISSIPATED.  I THINK THAT'S REALLY WHAT YOU SAY THIS

8  CASE IS ABOUT, ISN'T IT?

9          MR. BEIL:  YES, YOUR HONOR.

10          THE COURT:  DO YOU HAVE A CASE THAT SUPPORTS

11  THAT SPECIFIC PROPOSITION?

12          MR. BEIL:  YES, YOUR HONOR.  THERE ARE AT

13  LEAST TWO, AND THEY'RE CITED IN OUR BRIEF.  THE FIRST

14  CASE IS U.S. EX REL. RAHMAN VERSUS ONCOLOGY.  IT'S A

15  FOURTH CIRCUIT CASE IN WHICH THE FOURTH CIRCUIT LOOKED

16  AT GRUPO MEXICANO AND ALSO LOOKED AT AN EARLIER

17  SUPREME COURT CASE CALLED DECKERT VERSUS INTERNATIONAL

18  UNDER THE SECURITIES LAWS AND HELD -- VERY CLEARLY

19  HELD THAT GRUPO MEXICANO APPLIES ONLY IN A TRADITIONAL

20  CASE FOR MONEY DAMAGES ONLY, AND THAT WHEN A

21  COMPLAINANT ASKS FOR EQUITABLE RELIEF, MAY ALSO ASK

22  FOR MONEY DAMAGES, THAT THE TRADITIONAL RULES OF

23  EQUITY APPLY.

24          THE COURT:  WHAT'S THE CITE?

25          MR. BEIL:  THE CITE IS 198 F.3D 489, AND THIS

1  ANALYSIS STARTS AT 494, AND THE HOLDING IS AT 496, AND

2  THERE'S A FOLLOW-UP CASE FROM THE DISTRICT OF

3  MASSACHUSETTS THAT CITES RAHMAN AND RELIES ON IT.

4          THE COURT:  OKAY.  LET'S START WITH RAHMAN.

5  I'LL GET A COPY OF IT AND READ THAT.

6          MR. SCHWARTZ:  YOUR HONOR, I THINK BOTH OF

7  THOSE CASES ARE INSTANCES WHERE THERE WAS SPECIFIC

8  PROPERTY ALLEGED, A MACHINERY CASE, FOR EXAMPLE.

9          THE COURT:  NOT CASH?

10         MR. SCHWARTZ:  CERTAINLY THE MASSACHUSETTS

11 CASE, FAIRVIEW MACHINERY, I BELIEVE THAT WAS THE SALE

12 OF MACHINERY IN WHICH THE PLAINTIFF ALLEGED HAD

13 BEEN -- WAS HIS OR THAT HE HAD AN EQUITY INTEREST IN.

14         MR. BEIL:  THE FOURTH CIRCUIT CASE WAS NOT.

15 IT WAS A FRAUD CASE IN WHICH THEY WERE SEEKING TO

16 RESTRAIN THE MONIES THAT HAD BEEN FRAUDULENTLY TAKEN

17 AND THE PROCEEDS.  IT WAS A CLASSIC CASE VERY SIMILAR

18 TO THE KINDS OF ISSUES RAISED HERE ON CONSTRUCTIVE

19 TRUST.

20         THE COURT:  SEE, I'VE GOT TO TELL YOU, I'M

21 OPEN TO BEING PERSUADED THAT MY UNDERSTANDING OF THE

22 LAW IS INCORRECT HERE, BUT I HAVE ON MANY OCCASIONS

23 AUTHORIZED ATTACHMENTS OF PROPERTY THAT WAS

24 FRAUDULENTLY TRANSFERRED TO PREVENT ITS FURTHER

25 TRANSFER, AND EVEN WHEN THE PROPERTY HAS CHANGED

1  FORM -- IN OTHER WORDS, IT'S GONE FROM, HE STOLE MY

2  CASH TO HE PUT THE CASH INTO A HOUSE AND HE'S NOW

3  GOING TO SELL THAT HOUSE TO HIS WIFE, AND IF IT GOES

4  TO HIS WIFE, MY FRAUDULENT TRANSFER ACTION IS GOING TO

5  BE DEFEATED.  I MAY BE MISTAKEN IN THAT.  NO ONE HAS

6  EVER PRESENTED THAT ARGUMENT IN THAT CONTEXT TO ME.  I

7  CERTAINLY ACCEPT THE VIEW THAT A CLASSIC ACTION FOR

8  MONEY DAMAGES IN WHICH SOMEBODY IS SIMPLY A

9  PREJUDGMENT CREDITOR, THAT YOU CAN'T ORDINARILY GET AN

10 INJUNCTION ENJOINING THE PERSON FROM DISSIPATING

11 ASSETS, BUT BOY, IT'S HARD TO SEE HOW A COURT CAN'T

12 JUST BE LAUGHED AT WHEN FRAUDULENT TRANSFER ACTIONS

13 ARE BROUGHT IF THE COURT CAN'T ACT TO PREVENT THE

14 DEFENDANT FROM DISSIPATING THE ASSETS.  IT'S KIND OF A

15 STRANGE CIRCUMSTANCE THERE.

16         MR. BEIL:  WHAT THE FOURTH CIRCUIT HELD IN

17 ITS DECISION -- IT TALKS ABOUT AN INJUNCTION TO PUT A

18 CONSTRUCTIVE TRUST ON MONIES OBTAINED BY FRAUD AND

19 ASSETS PURCHASED WITH THE PROCEEDS OF THE FRAUD.

20 CONSTRUCTIVE TRUST REMAINS A REMEDY EVEN THOUGH IT MAY

21 ULTIMATELY REACH A FUND OF MONEY AND IT IMPOSED THE

22 INJUNCTION ON THIS COMPANY'S ASSETS EITHER DIRECTLY OR

23 INDIRECTLY AS A RESULT OF THE FRAUD.

24         WHAT THE RAHMAN CASE SAYS, AND WHAT JUDGE

25 PONSOR SAYS IN FAIRVIEW AND OTHER CASES, IS THAT THE

1   TRADITIONAL EQUITABLE REMEDIES THAT A COURT HAD BEFORE

2   GRUPO MEXICANO REMAINED IN PLACE AFTER GRUPO MEXICANO,

3   AND THAT THAT CASE INVOLVED ONLY A CASE FOR MONEY

4   DAMAGES ONLY WHERE NO ONE WAS SEEKING EQUITABLE RELIEF

5   SO THAT THE FULL PANOPLY OF REMEDIES, YOUR HONOR, HAS

6   ALWAYS REMAINED IN PLACE.

7           THE COURT:  WELL, I THINK IN GRUPO -- I AGREE

8   WITH KOZLOWSKI'S COUNSEL.  I DO THINK THAT THEY WERE

9   SEEKING A FORM OF EQUITABLE RELIEF, BUT THAT WASN'T

10  WHAT THEY WERE ULTIMATELY SEEKING.  WHAT THEY WERE

11  ULTIMATELY SEEKING WAS MONEY DAMAGES, AND THEY WERE

12  SEEKING EQUITABLE -- INVOKING EQUITABLE AUTHORITY TO

13  PROTECT THEIR RIGHT TO RECOVER MONEY DAMAGES SO I

14  DON'T THINK IT WAS -- THAT THERE WAS NO EQUITY

15  INVOLVED IN WHAT THEY WERE SEEKING THERE, BUT IT WAS

16  ULTIMATELY AN ACTION FOR MONEY DAMAGES.  AT LEAST IN A

17  VERY QUICK READING OF THE CASE, THAT'S WHAT I TAKE

18  FROM IT.  GIVE ME A MINUTE, AND LET ME READ THE RAHMAN

19  CASE.

20          (COURT READS CASE)

21          THE COURT:  MR. SCHWARTZ, YOU REPRESENT

22  KOZLOWSKI, RIGHT?  THAT'S YOUR NAME, SCHWARTZ?  ARE

23  YOU THERE, COUNSEL?

24          MR. SCHWARTZ:  YES, YOUR HONOR.  I'M HERE,

25  AND I DO REPRESENT MR. KOZLOWSKI.

1          THE COURT:  AND YOUR NAME IS SCHWARTZ, RIGHT?

2  I COULDN'T REMEMBER YOUR NAME.

3          MR. SCHWARTZ:  YES, YOUR HONOR.

4          THE COURT:  IN THE GRUPO MEXICANO CASE YOU

5  SHOULD NOTE THAT THE COURT THERE TALKS ABOUT A

6  QUOTE -- HAS A QUOTE IN IT THAT -- REFERRING TO I

7  BELIEVE THE DE BEERS CASE THAT ALSO RAHMAN CITES --

8  THAT A PRELIMINARY INJUNCTION IS ALWAYS APPROPRIATE TO

9  GRANT INTERMEDIATE RELIEF OF THE SAME CHARACTER AS

10  THAT WHICH MAY BE GRANTED FINALLY, AND SO WHERE YOU

11  ARE -- IF YOU'VE GOT AN ACTION FOR A FRAUDULENT

12  TRANSFER AND YOU'RE SEEKING THE RETURN OF THE PROPERTY

13  THAT WAS FRAUDULENTLY TRANSFERRED, THE ULTIMATE ORDER

14  THAT YOU'RE ENTERING IS IN EQUITY AND YOU HAVE THE

15  POWER TO ORDER THE RETURN OF THE FRAUDULENT TRANSFER

16  AND YOU HAVE THE POWER TO -- ON AN INTERMEDIATE

17  BASIS -- PRESERVE THE ASSET WHICH HAS ALLEGEDLY BEEN

18  FRAUDULENTLY TRANSFERRED FROM BEING DISSIPATED.

19          WHEN THERE'S AN ACTION FOR A CONSTRUCTIVE

20  TRUST, THE IMPOSITION OF THE CONSTRUCTIVE TRUST IS AS

21  TO CERTAIN PROPERTY, AND YOU HAVE THE POWER TO

22  PRESERVE THAT PROPERTY PENDING A FINAL ORDER OF THE

23  COURT.

24          WHAT THE COURT SEEMED TO BE MOST DISTURBED

25  ABOUT IN THE GRUPO MEXICANO CASE IS THAT THE EQUITABLE

1  RELIEF BEING SOUGHT WAS NOT -- WAS IN A SENSE

2  COLLATERAL TO THE CENTRAL RELIEF IN THE CASE.  IT WAS

3  A MEANS OF SECURING RECOVERY OF THE MONEY DAMAGES, BUT

4  THE CLAIMS THEMSELVES AT ISSUE THERE WERE NOT TO

5  PROTECT THE PARTICULAR ASSET FROM DISSIPATION, WHICH

6  IS WHAT YOU'RE REALLY DOING IN A CASE OF A

7  CONSTRUCTIVE TRUST OR IN A FRAUDULENT TRANSFER, ISN'T

8  IT?

9          MR. SCHWARTZ:  I UNDERSTAND THE POINT, YOUR

10  HONOR, YES.

11          THE COURT:  AND THE RAHMAN CASE IS A CASE

12  THAT DEALT NOT JUST WITH A TRACTOR.  IT DEALT WITH

13  CASH, AND THAT'S THE CONCLUSION I THINK THAT THE

14  FOURTH CIRCUIT REACHED AND THAT I WAS HINTING AT WAS

15  THE KIND OF COMMON SENSE CONCERN THAT I WAS TRYING TO

16  RAISE, AND THAT'S THE BASIS ON WHICH RAHMAN

17  DISTINGUISHED GRUPO MEXICANO, AND YOU HAVE HAD THE

18  BENEFIT OF TYCO'S BRIEFS OVER THE WEEKEND SO I'M SURE

19  YOU'VE READ THE RAHMAN CASE.

20          MR. SCHWARTZ:  YES, YOUR HONOR.

21          THE COURT:  WHY AM I MISINTERPRETING IT?

22          MR. SCHWARTZ:  I DON'T THINK YOU'RE

23  MISINTERPRETING RAHMAN, YOUR HONOR, BUT THE DIFFERENCE

24  BETWEEN THE SITUATION BEFORE YOUR HONOR AND RAHMAN IS

25  THAT IN THIS INSTANCE THE $98 MILLION THAT TYCO

1   ALREADY HAS DOES REPRESENT THE FULL MEASURE OF THE

2   ALLEGED FRAUDULENT TAKINGS THAT WERE SUBJECT OF THE

3   CRIMINAL CASE WHERE --

4          THE COURT:  WELL, LET'S SET ASIDE THE SHORT

5   SWING SALES PROFITS.  MAYBE YOU'VE GOT A POINT AS TO

6   THAT, AND I HAVEN'T BEEN OVER THIS IN DETAIL IN A LONG

7   TIME, BUT IF YOU TAKE THE KEL LOAN PROGRAM FRAUD AND

8   THE RELOCATION PROGRAM FRAUD AND THE FRAUDULENT BONUS

9   PAYMENTS THAT HE CAUSED TO BE PAID TO HIMSELF, I'M

10  THINKING THAT WAS IN THE HUNDREDS OF MILLIONS OF

11  DOLLARS -- AT LEAST THAT'S WHAT TYCO HAS ALLEGED --

12  NOT THE $98 MILLION THAT THEY GOT IN THE CRIMINAL

13  CASE.

14         MR. SCHWARTZ:  YOUR HONOR, THE LOANS, WITH I

15  THINK ONE EXCEPTION, WERE REPAID BEFORE MR. KOZLOWSKI

16  LEFT THE COMPANY.  OKAY.  THE ONLY BONUSES THAT I'M

17  AWARE OF THAT TYCO ALLEGES WERE FRAUDULENT ARE THE

18  ONES THAT WERE -- THE FOUR BONUSES THAT WERE THE

19  SUBJECT OF THE CRIMINAL PROSECUTIONS, AND THEY DO MAKE

20  OTHER ALLEGATIONS.  IN THEIR PAPERS TO YOUR HONOR ON

21  FRIDAY THEY MAKE REFERENCE TO A FIFTH AVENUE APARTMENT

22  AND SOME ARTWORK.  WHAT THEY FAIL TO TELL YOUR HONOR

23  IS THAT WHEN MR. KOZLOWSKI LEFT THE COMPANY IN 2002,

24  THAT APARTMENT, WHICH WAS ALWAYS CARRIED ON THE BOOKS

25  OF THE COMPANY, WAS RETAINED BY THE COMPANY, ALL OF

1  THE ARTWORK WAS RETAINED BY THE COMPANY.  WE DON'T

2  KNOW WHETHER THE COMPANY STILL HAS THAT ARTWORK OR

3  WHETHER THEY'VE LIQUIDATED IT, BUT IT ALREADY HAS THE

4  VALUE -- THE ACTUAL ITEMS AND THE VALUE THOSE ITEMS

5  REPRESENT.

6         THEY TALK ABOUT COMPENSATION PAID TO OTHERS.

7  THEY DON'T IDENTIFY WHO THOSE PEOPLE MIGHT BE, BUT

8  CERTAINLY THE TWO LARGEST PEOPLE ON THAT LIST WOULD

9  HAVE TO BE MARK SWARTZ AND FRANK WALSH, BOTH OF WHOM

10 HAVE ALSO PAID FULL RESTITUTION PURSUANT TO THEIR OWN

11 CRIMINAL --

12         THE COURT:  ALL RIGHT.  LET ME JUST BACK UP

13 HERE.  THIS COULD BE IMPORTANT TO ME.  YOUR POSITION

14 IS THAT ANY MONIES THAT MR. KOZLOWSKI RECEIVED UNDER

15 ANY OF THE BONUS PROGRAMS THAT ARE ALLEGED IN THE

16 BOISE REPORT OR ANY OF THE LOAN PROGRAMS ALLEGED IN

17 THE BOISE REPORT WERE ALL FULLY REPAID BY MR.

18 KOZLOWSKI TO TYCO SO THAT THOSE ARE NOT MONIES THAT

19 TYCO CAN CLAIM THAT IT'S SEEKING TO RECOVER TODAY.

20 THAT'S BASICALLY WHAT YOU'RE SAYING, RIGHT?

21         MR. SCHWARTZ:  BASICALLY, YES, YOUR HONOR.

22 THERE'S ONE EXCEPTION THAT I'M AWARE OF, AND THAT'S

23 FOR A SINGLE LOAN THAT I THINK THERE'S AN OPEN

24 QUESTION AS TO WHETHER THAT'S BEEN REPAID, BUT IT'S

25 NOT A MATERIAL AMOUNT IN THE SCHEME OF WHAT TYCO IS

1  TALKING ABOUT, AND ALSO I WOULD JUST ADD WITH REGARDS

2  TO HOW WELL-SECURED TYCO ALREADY IS, IT ISN'T JUST THE

3  COURT ORDERED RESTITUTION THAT THEY HAVE RECEIVED FROM

4  MR. KOZLOWSKI -- MR. KOZLOWSKI, SWARTZ AND WALSH.

5  THEY ALSO HAVE ENGAGED IN WHAT WE WOULD CALL

6  AGGRESSIVE SELF-HELP TO THE TUNE OF SEVERAL HUNDRED

7  MILLIONS OF DOLLARS OF COMPENSATION THAT WAS

8  AUTHORIZED AND APPROVED BY THE BOARD, EARNED BY MR.

9  KOZLOWSKI AND DEFERRED BY MR. KOZLOWSKI PURSUANT TO

10  THE CONTRACTS HE HAD WITH THE COMPANY, ALL OF WHICH

11  TYCO HAS REFUSED TO PAY FOR THE LAST SIX YEARS, AND

12  THAT IS THE SUBJECT OF OUR COUNTERCLAIMS.

13       THE COURT:  I'M MORE INTERESTED IN OTHER

14  THINGS RIGHT NOW.  WHAT IS THE SPECIFIC LOSSES THAT

15  THE $98 MILLION ORDERED IN THE CRIMINAL ACTION -- WHAT

16  WERE THE SPECIFIC LOSSES THAT WERE BEING COVERED BY

17  THE $98 MILLION?

18       MR. SCHWARTZ:  THEY WERE THE FOUR BONUSES,

19  YOUR HONOR.  I'M NOT SURE I CAN IDENTIFY THEM ALL BY

20  NAME, BUT THERE WAS TYCOM -- MR. HAMID, WHO IS HERE

21  WITH ME, HE HAS THE LIST.

22       THE COURT:  OKAY.

23       MR. HAMID:  THERE'S THE TYCOM BONUS, THE ADT

24  BONUS, THE TELECOM BONUS AND THEN ALSO A 1999 LOAN

25  FORGIVENESS ON THE KEL -- THE KEY EMPLOYEE LOAN

1  PROGRAM.

2        THE COURT:  ALL RIGHT.  LET ME STOP AND ASK

3  TYCO.  YOU AGREE AS TO THOSE MONIES YOU'VE RECEIVED,

4  YOU'VE ALREADY RECEIVED PAYMENT AS RESTITUTION IN THE

5  CRIMINAL ACTION, RIGHT?

6        MS. EDWARDS:  YES, YOUR HONOR, FOR THOSE

7  SPECIFIC ITEMS.

8        THE COURT:  OKAY.  SO THOSE ARE OFF THE TABLE

9  IN TERMS OF THIS THEORY THAT I'M JUST TRYING TO GET

10  MONEY BACK THAT WAS WRONGFULLY TAKEN FROM ME.

11        MR. SCHWARTZ ALSO ALLEGES THAT IN ADDITION TO

12  THAT -- YOUR ALLEGATIONS ABOUT OTHER LOAN PROGRAMS --

13  THAT ALL THOSE LOANS WERE FULLY REPAID BY MR.

14  KOZLOWSKI AND SO YOU'RE NOT ENTITLED TO ANY RECOVERY

15  OF MONEY FOR THAT SO THIS INJUNCTION ISN'T TO PROTECT

16  YOUR RIGHT TO RECOVER YOUR OWN MONEY FOR THOSE THINGS.

17        SO YOU TAKE OUT THE BONUS PROGRAMS AND THE

18  LOAN PROGRAMS.  WHAT'S LEFT THAT IS -- I KNOW YOU HAVE

19  MANY CLAIMS THAT YOU'VE BEEN INJURED BY KOZLOWSKI, BUT

20  WHAT IS THE -- WHAT ARE YOUR CLAIMS THAT HE HAS OUR

21  MONEY THAT WE GAVE HIM THAT WE NEED TO PROTECT FROM

22  DISSIPATION AND THAT'S WHY WE NEED AN INJUNCTION?

23        MR. BEIL:  YOUR HONOR, THERE ARE SEVERAL.

24  THE FIRST IS A RETURN OF $325 MILLION IN W-2

25  COMPENSATION PAID TO MR. KOZLOWSKI BETWEEN '95 AND

1   2002.  UNDER THE FAITHLESS SERVANT OR DISLOYAL AGENT

2   DOCTRINE WHEN AN AGENT OR A SERVANT VIOLATES HIS DUTY

3   OF TRUST, DUTY OF LOYALTY, FIDUCIARY DUTY TO HIS

4   PRINCIPAL, TO HIS EMPLOYER, ALL OF THE COMPENSATION

5   PAID TO HIM DURING THAT PERIOD OF TIME CAN BE RETURNED

6   UNDER A CONSTRUCTIVE TRUST --

7           THE COURT:  STOP FOR A SECOND.  WHEN YOU SAY

8   THE $325 MILLION IN W-2 COMPENSATION, YOU'RE SAYING

9   THIS IS IN ADDITION TO THE OTHER -- THE BONUSES THAT

10  WE'VE TALKED ABOUT?

11          MR. BEIL:  YES, SIR.

12          THE COURT:  ALL RIGHT.  SO THIS IS JUST

13  ORDINARY COMPENSATION TO MR. KOZLOWSKI DURING THAT

14  PERIOD?

15          MR. BEIL:  I'M NOT SURE I WOULD USE THE WORD

16  ORDINARY, BUT IT IS CERTAINLY COMPENSATION HE WAS PAID

17  AND WAS REPORTED TO THE FEDERAL GOVERNMENT AND THE

18  STATE GOVERNMENT.  THERE WAS ALSO ANOTHER $120 MILLION

19  IN UNAUTHORIZED BONUSES THAT HE AWARDED TO SENIOR

20  EXECUTIVES OTHER THAN HIMSELF.

21          THE COURT:  WELL, THAT'S NOT THE RETURN OF

22  MONEY THAT HE HAS THAT HE TOOK.  THAT'S THAT YOU WANT

23  HIM TO COVER YOU FOR BAD THINGS THAT HE DID WHERE HE

24  GAVE MONEY TO OTHER PEOPLE.

25          MR. BEIL:  WELL, YEAH, BUT I THINK WE ALSO

1  HAVE AN UNJUST ENRICHMENT THEORY ALONG THOSE LINES, AS

2  WELL, AND THEN THERE WERE CONTRIBUTIONS TO OTHERS THAT

3  WERE MADE BY TYCO IN HIS NAME SO THAT THOSE ARE

4  STATEMENTS THAT, IN FACT, EVEN THOUGH THE MONEY DIDN'T

5  GO TO HIM, IT WENT TO OTHERS ON HIS DIRECTION FOR

6  WHICH HE WAS UNJUSTLY ENRICHED FOR WHICH WE SEEK THE

7  RETURN OF MONIES, AS WELL, BUT THE $325 MILLION IN

8  COMPENSATION THAT HE HAS TO RETURN IS MORE THAN

9  ADEQUATE TO SUPPORT THE KIND OF INJUNCTION WE'RE

10  SEEKING HERE.

11          THE COURT:  ALL RIGHT.  I'M TRYING TO DRAW A

12  DISTINCTION BETWEEN MONIES THAT BASICALLY THAT TYCO IS

13  CLAIMING THAT KOZLOWSKI TOOK FROM THE COMPANY AND HAS

14  AND OTHER KINDS OF CLAIMS FOR DAMAGES THAT THE COMPANY

15  MAY HAVE AGAINST MR. KOZLOWSKI, AND I'M ASKING MYSELF,

16  DO I HAVE THE POWER, ASSUMING THE OTHER REQUIREMENTS

17  FOR A TRO ARE PRESENT, TO ENJOIN MR. KOZLOWSKI FROM

18  TRANSFERRING THOSE MONIES THAT WERE WRONGFULLY TAKEN

19  BY HIM FROM THE COMPANY.  THAT'S WHAT I'M LOOKING AT,

20  AND THE THEORY THAT TYCO HAS ABDICATED IS THE W-2

21  INCOME AND CERTAIN OTHER BONUSES -- THEY'VE GOT OTHER

22  ARGUMENTS ABOUT MONIES PAID TO THIRD PARTIES, BUT I

23  DON'T THINK THAT'S REALLY USEFUL TO FOCUS ON THEM SO

24  WHAT DO YOU WANT TO SAY IN RESPONSE TO THAT, MR.

25  SCHWARTZ?

1          MR. SCHWARTZ:  LET ME SPEAK TO THAT THEN,

2   YOUR HONOR.  FIRST OF ALL, MOST OF WHAT MR. BEIL

3   REFERS TO AS $325 MILLION IN W-2 COMPENSATION WAS

4   DEFERRED COMPENSATION WHICH TYCO, IN FACT, STILL HAS.

5   IT'S THE SUBJECT OF THE COUNTERCLAIM.  SO IT'S NOT

6   RIGHT TO THINK THAT $325 MILLION ACTUALLY CHANGED

7   HANDS AND IS NOW IN THE CONTROL --

8          THE COURT:  LET ME STOP YOU.  IS THAT TRUE?

9          MR. BEIL:  I DON'T BELIEVE SO, YOUR HONOR,

10   THOUGH I CAN'T SAY THAT I --

11          THE COURT:  THAT'S KIND OF IMPORTANT TO THE

12   ANALYSIS, RIGHT, IF YOU'RE SAYING, HE STOLE OUR MONEY

13   IN THIS AMOUNT AND WE NEED TO SECURE IT FROM BEING

14   DISSIPATED, BUT WE HAVEN'T GIVEN IT TO HIM YET, THAT'S

15   NOT A VERY GOOD ARGUMENT.

16          MS. EDWARDS:  NO, YOUR HONOR.  THAT'S IN

17   ADDITION.  THE DEFERRED COMPENSATION IS NOT COUNTED IN

18   THE CALCULOUS OF THE NUMBERS THAT MR. BEIL WAS TALKING

19   ABOUT.

20          THE COURT:  ALL RIGHT.

21          MR. SCHWARTZ:  THAT'S WRONG, YOUR HONOR.

22          THE COURT:  OKAY.  YOU GUYS DISAGREE ABOUT

23   THAT, THEN.  LET'S PUT THAT IN THE COLUMN OF WE

24   DISAGREE.  MR. SCHWARTZ SAYS SOME SUBSTANTIAL PORTION

25   OF THAT $325 MILLION IN W-2 INCOME IS INCOME ON WHICH

1  HE HAD TO DECLARE IT FOR TAX PURPOSES BUT WAS NOT

2  ACTUALLY RECEIVED BY HIM IS, IN FACT, STILL BEING, HE

3  SAYS, WRONGLY WITHHELD BY TYCO, AND TYCO SAYS, NO, IN

4  FACT THE $325 MILLION IS MONEY THAT ALREADY WENT INTO

5  HIS POCKET.

6        MR. SCHWARTZ:  THERE ARE OTHER REASONS WHY

7  THE ARGUMENT FAILS, BUT THAT WOULD BE A STARTING POINT

8  ON A FACTUAL LEVEL, YOUR HONOR.

9        THE COURT:  ALL RIGHT.  HOW DO WE ESTABLISH

10  WHICH OF YOU IS RIGHT ON THAT?

11        MS. EDWARDS:  WELL, YOUR HONOR, WE MAY BE

12  WRONG ON THE TOTAL AMOUNT, BUT AT LEAST A SUBSTANTIAL

13  PORTION OF THE W-2 COMPENSATION, IT'S OUR

14  UNDERSTANDING, WAS ACTUALLY PAID TO MR. KOZLOWSKI, IF

15  NOT ALL OF THE $325 MILLION.

16        THE COURT:  I THINK TYCO WOULD HAVE RECORDS

17  THAT WOULD SHOW WHAT WAS PAID TO THEIR CEO AND WHAT

18  WASN'T, RIGHT?

19        MS. EDWARDS:  WE DO, YOUR HONOR.  I JUST

20  DON'T HAVE THEM.

21        THE COURT:  ALL RIGHT.  YOU COULD GET THEM IF

22  WE NEEDED TO AND FILE THEM WITH ME AND SAY, OF THAT

23  $325 MILLION HE ACTUALLY RECEIVED $250 MILLION, AND

24  HERE'S THE RECORDS TO SHOW IT.

25        MR. BEIL:  YES, WE CAN, YOUR HONOR, AND I

1  BELIEVE IT'S GOING TO BE A SMALL NUMBER THAT WAS

2  DEFERRED.

3          THE COURT:  ALL RIGHT.

4          MR. SCHWARTZ:  WE'LL AWAIT THOSE RECORDS,

5  YOUR HONOR, BECAUSE WE DO DISAGREE ON THAT.

6          THE COURT:  ALL RIGHT.  NOW, LET'S ASSUME

7  THAT THEY'RE RIGHT AS A MATTER OF FACT.  DO YOU HAVE

8  OTHER ARGUMENTS AS TO WHY THAT $325 MILLION SHOULD --

9  LET ME TRY TO GET DOWN TO YOUR ARGUMENTS.

10         YOUR FIRST ARGUMENT IS GRUPO MEXICANO -- THIS

11  CASE IS CONTROLLED BY THAT.  IT DOESN'T MATTER WHETHER

12  HE WRONGFULLY GOT THE MONEY.  IT DOESN'T MATTER

13  WHETHER THEY'RE BRINGING AN ACTION FOR A CONSTRUCTIVE

14  TRUST.  YOU JUST DO NOT HAVE THE POWER TO DO THIS,

15  RIGHT?  THAT'S YOUR FIRST ARGUMENT.

16         YOUR SECOND ARGUMENT IS, TO THE EXTENT THAT

17  THEY HAVE A CLAIM THAT HE'S WRONGFULLY ACQUIRED

18  $300 MILLION OF OUR ASSETS AND IN FACT HE DID GET

19  $300 MILLION OF OUR -- OR EXCUSE ME.  TO THE EXTENT

20  THEY CLAIM THAT, THEY'RE JUST WRONG, AS A MATTER OF

21  FACT.  HE DIDN'T GET $300 MILLION, AND AS TO ALL THE

22  OTHER MONEY THEY SAY WE TOOK FROM TYCO, HE'S EITHER

23  PAID THAT BACK IN THE FORM OF RESTITUTION OR PAID IT

24  BACK WHEN HE MADE PAYMENTS OF LOANS.

25         THEN YOUR THIRD ARGUMENT IS, IN ANY EVENT,

1   TYCO HAS MORE THAN ADEQUATE SECURITY BECAUSE IT'S

2   WITHHOLDING DEFERRED COMPENSATION THAT WE'RE ENTITLED

3   TO THAT MORE THAN MAKES UP FOR THE DIFFERENCE.

4           SO ON TOP OF THAT NOW YOU HAVE ANOTHER

5   ARGUMENT.  WHAT IS THAT?

6           MR. SCHWARTZ:  YOUR HONOR, WITH REGARDS TO

7   THIS FAITHLESS SERVANT DOCTRINE THAT MR. BEIL JUST

8   REFERENCED WHICH ESSENTIALLY -- IT'S A DOCTRINE UNDER

9   NEW YORK LAW WHICH IN CERTAIN CIRCUMSTANCES PERMITS

10  THE EMPLOYER OR THE PRINCIPAL TO BASICALLY CLAW BACK

11  ALL OF THE COMPENSATION THAT WAS PAID TO AN AGENT

12  WHERE THAT AGENT ACTED IN A WAY THAT WAS DISLOYAL AND

13  HARMFUL AND WHERE IT PERMEATED THE RELATIONSHIP.  THAT

14  NEW YORK DOCTRINE IS NOT APPLICABLE IN THIS CASE AS A

15  MATTER OF CHOICE OF LAW.

16          AS YOUR HONOR WILL RECALL, TYCO HAS IN THE

17  PAST SUCCESSFULLY ARGUED BOTH IN YOUR HONOR'S COURT,

18  BUT ALSO IN OTHER COURTS WHERE THIS MATTER HAS BEEN

19  LITIGATED, THAT THE LAW OF BERMUDA, THE JURISDICTION

20  WHERE TYCO IS INCORPORATED, GOVERNS THE ALLEGED BREACH

21  OF FIDUCIARY DUTY CLAIMS, WHICH IS WHAT GIVES RISE TO

22  THE FAITHLESS SERVANT DOCTRINE.

23          THE COURT:  YOU'RE NOT TELLING ME I HAVE TO

24  GO BACK AND APPLY FOSS V. HARBOTTLE AGAIN, DO I?

25          MR. SCHWARTZ:  WELL, YOUR HONOR, THE SAME

1  PRINCIPLE UNDER FOSS WOULD BE APPLICABLE HERE AND

2  WOULD AGAIN POINT TO BERMUDA LAW, AND I CAN TELL YOU

3  FROM OUR OWN CONSULTATIONS WITH BERMUDA LAW EXPERTS,

4  THERE IS NO SUCH THING AS THE FAITHLESS SERVANT

5  DOCTRINE RECOGNIZED UNDER BERMUDA LAW, AND UNDER U.K.

6  LAW -- WHICH YOUR HONOR MAY RECALL BERMUDA LAW

7  TYPICALLY LOOKS TO IN THE ABSENCE OF ITS OWN

8  PRECEDENCE -- THERE ARE PRECEDENCE TO THE CONTRARY.

9          SO THIS RATHER OBSCURE DOCTRINE THAT THEY'RE

10 INVOKING WHICH DOES EXIST IN NEW YORK LAW HAS NO

11 APPLICATION IN THE CASE BEFORE YOUR HONOR INVOLVING

12 MR. KOZLOWSKI.

13         THERE ARE OTHER REASONS THAT WE DON'T

14 BELIEVE, EVEN IF NEW YORK LAW WERE TO APPLY, THAT THE

15 FAITHLESS SERVANT DOCTRINE WOULD JUSTIFY BASICALLY

16 CLAWING BACK 100 PERCENT OF THE COMPENSATION THAT MR.

17 KOZLOWSKI RECEIVED FOR HIS VERY SUCCESSFUL STEWARDSHIP

18 OF TYCO DURING THE TIME THAT HE WAS THE CEO.

19         AS TYCO, ITSELF, HAS ARGUED IN THE PAST, THE

20 ALLEGED LOOTING INCIDENTS WERE ISOLATE IN THE OVERALL

21 CONTEXT OF WHAT TYCO WAS DOING.  THEY MADE THAT

22 ARGUMENT WHEN THEY WERE DEFENDING SUCH CLAIMS BROUGHT

23 AGAINST TYCO AND MR. KOZLOWSKI IN THE CLASS ACTIONS,

24 AND WHILE WE DON'T THINK THERE WAS ANY LOOTING, WE

25 CERTAINLY AGREE THAT THE PARTICULAR BONUSES AND LOANS

1  ARE ISOLATED INCIDENTS IN THE OVERALL STEWARDSHIP OF

2  MR. KOZLOWSKI'S SERVICE AS CEO AND CHAIRMAN OF THIS

3  COMPANY WHICH HE GREW FROM A RATHER MODEST COMPANY TO

4  AN ENORMOUSLY SUCCESSFUL INTERNATIONAL CONGLOMERATE,

5  TO THE BENEFIT OF THE SHAREHOLDERS.  SO WE DON'T THINK

6  THAT IT APPLIES FOR ALL OF THOSE REASONS.

7          THE COURT:  WELL, THAT'S AN ARGUMENT ON

8  LIKELIHOOD OF SUCCESS, RIGHT?  YOUR THEORY IS THEY

9  CAN'T SUCCEED ON THE MERITS OF THEIR FAITHLESS SERVANT

10  CLAIM SO THEY'RE NOT ENTITLED TO A RESTRAINING ORDER

11  PREVENTING YOU FROM DISSIPATING MONIES THAT HE

12  ACQUIRED AS AN ALLEGEDLY FAITHLESS SERVANT OR FAITHFUL

13  SERVANT -- WHATEVER THE DOCTRINE IS.  HAVE I GOT THAT

14  DOWN?

15          MR. SCHWARTZ:  YES, BUT THAT'S NOT AN

16  EQUITABLE CLAIM THAT THEY'RE MAKING.  THAT'S A LEGAL

17  CLAIM, AND I WOULD ALSO POINT OUT, YOUR HONOR, THAT

18  WHEN THEY INVOKED THE FAITHLESS SERVANT DOCTRINE,

19  THEY'RE NO LONGER SAYING MR. KOZLOWSKI STOLE THIS

20  MONEY AND NOW WE'RE TRYING TO GET BACK.  THEY'RE

21  SAYING THAT MONEY THAT MR. KOZLOWSKI RECEIVED PURSUANT

22  TO COURT AUTHORIZATION FOR HIS COMPENSATION AND

23  SERVICE AS CEO IS UNDER THIS DOCTRINE SUBJECT TO BEING

24  CLAWED BACK.

25          THE COURT:  FOR EXAMPLE, IF HE RECEIVES

1   COMPENSATION AND ENGAGED IN A SCHEME TO MAKE STOCK

2   PROFITS THAT DAMAGE THE COMPANY, THEY COULD GET THEIR

3   MONEY BACK UNDER THIS FAITHLESS SERVANT DOCTRINE --

4   THE MONEY THEY PAID HIM IN TERMS OF COMPENSATION --

5   AND THAT MONEY IS NOT MONEY THAT THEY'RE SAYING WAS

6   STOLEN.  IT WAS JUST THAT HE DIDN'T ACT THE WAY HE

7   SHOULD HAVE ACTED, AND AS A RESULT HE FORFEITS HIS

8   RIGHT TO THE COMPENSATION?

9           MR. SCHWARTZ:  I THINK THAT'S MY

10  UNDERSTANDING OF THEIR THEORY, YOUR HONOR, BUT IT

11  CERTAINLY DOESN'T FIT WITHIN THE CONFINES OF WHAT YOUR

12  HONOR HAS SET FORTH BEFORE, THAT THIS WAS A THEFT OR A

13  FRAUDULENT TRANSFER THAT THEY'RE NOW SEEKING A

14  CONSTRUCTIVE TRUST TO SECURE THE RETURN OF.

15          THIS WAS MONEY THAT WAS PAID TO

16  MR. KOZLOWSKI -- OR AUTHORIZED TO BE PAID TO MR.

17  KOZLOWSKI, PUTTING ASIDE FOR THE MOMENT HOW MUCH OF IT

18  HAS ACTUALLY BEEN RECEIVED VERSUS DEFERRED, BUT THIS

19  IS WHAT THE BOARD AUTHORIZED HE BE PAID.  HE WAS VERY

20  WELL PAID, AND THERE WERE ALL SORTS OF THINGS THAT MR.

21  KOZLOWSKI SPENT HIS TIME DOING DURING HIS TENURE AS

22  CEO TO ADVANCE THE INTERESTS OF THE COMPANY, AND THEY

23  WANT ALL OF HIS COMPENSATION FOR AT LEAST SEVEN OF

24  THOSE YEARS FORFEITED UNDER THIS INAPPLICABLE NEW YORK

25  DOCTRINE SO I DON'T THINK IT RESULTS IN PRELIMINARY

1  RELIEF IN ANY CIRCUMSTANCE, AND AS I SAID, THERE IS

2  WHAT WE ESTIMATE TO BE SEVERAL HUNDRED MILLIONS OF

3  DOLLARS IN DEFERRED COMPENSATION THAT TYCO CONTINUES

4  TO HOLD IS MR. KOZLOWSKI'S.

5        THE COURT:  I DON'T THINK THAT SERVES AS

6  SECURITY FOR THEM BECAUSE THEIR VIEW IS THAT THEY

7  DON'T OWE IT TO YOU, AND THE REASON THEY DON'T OWE IT

8  TO YOU IS IN PART BECAUSE OF THIS FAITHLESS SERVANT

9  DOCTRINE.  THAT ARGUMENT DOESN'T REALLY CARRY MUCH

10  WEIGHT WITH ME.

11        MR. SCHWARTZ:  EXCEPT THEY CAN'T RECOVER IT

12  TWICE.  IF THEY DON'T OWE IT AND DON'T HAVE TO PAY

13  IT -- THEY'VE GOT THAT MONEY, AND THEY HAVE NO RIGHT

14  TO CLAW IT BACK FROM MR. KOZLOWSKI, MUCH LESS

15  PRELIMINARILY RESTRAIN --

16        THE COURT:  THAT'S A VARIATION ON THE

17  $325 MILLION THEY'RE TALKING ABOUT, JUDGE, NEVER WENT

18  INTO KOZLOWSKI'S POCKET.  I UNDERSTAND THAT ARGUMENT.

19  ALL RIGHT.  HAVE YOU GOT ANYTHING ELSE?

20        MR. SCHWARTZ:  YOUR HONOR, I'M TRYING TO

21  RESPOND TO THE ARGUMENTS THAT WE SAW IN THEIR BRIEFS

22  ON FRIDAY, AND THEY DID MAKE THIS ARGUMENT ABOUT THE

23  APARTMENT AND THE ARTWORK, BUT PERHAPS MR. BEIL WILL

24  ACKNOWLEDGE THAT THEY STILL HAVE OR THEY'VE DISPOSED

25  OF THAT ARTWORK IN THOSE APARTMENTS SO I DON'T KNOW

1   HOW THEY COULD COME TO COURT AND ASK FOR SOME KIND OF

2   PRELIMINARY RESTRAINT ON MR. KOZLOWSKI'S ASSETS AS A

3   RESULT OF THOSE FACTS.

4          THE COURT:  DO YOU WANT TO RESPOND, MR. BEIL?

5          MS. EDWARDS:  WELL, YOUR HONOR -- THIS IS

6   ELIZABETH EDWARDS -- AND WHAT WE HAVE SOUGHT IN THE

7   CASE AGAINST MR. KOZLOWSKI IS A CONSTRUCTIVE TRUST FOR

8   ALL OF THE FUNDS AND BENEFITS HE'S RECEIVED, WHICH IS

9   PARAGRAPH 150 OF THE COMPLAINT AGAINST KOZLOWSKI, AND

10  IF -- YOU KNOW, THERE CLEARLY IS ENOUGH SET FORTH IN

11  THE PAPERS, THE EXACT PARTICULARS OF WHICH WE WOULD BE

12  PREPARED TO PRESENT TO THE COURT ON THE PRELIMINARY

13  INJUNCTION HEARING.

14          I APOLOGIZE IF THE PAPERS AREN'T AS PRECISE,

15  BUT TYCO'S PRINCIPAL COUNSEL AND I WERE TIED UP IN AN

16  OPT-OUT MEDIATION THE END OF THE WEEK WHEN MR. BEIL

17  WAS TRYING TO GET SOMETHING BEFORE THE COURT, AND I

18  THINK WE HAVE CERTAINLY SET FORTH SUFFICIENT -- AND

19  WILL HONE IN WITH PRECISION ON THE EXACT DOLLAR AMOUNT

20  AS WE MOVE FORWARD.

21          MR. BEIL:  AND ON THE FAITHLESS SERVANT

22  DOCTRINE, YOUR HONOR, IT'S ACTUALLY AN OLD COMMON LAW

23  DOCTRINE.  IT'S DESCRIBED IN SOME DETAIL IN THE

24  RESTATEMENT (SECOND) OF AGENCY, QUOTED AT PAGE 10 OF

25  OUR BRIEF FROM 1958, AND IT'S THE BASIC RULE -- IT IS

1   ACTUALLY A CONSTRUCTIVE TRUST CLAIM FOR DISGORGEMENT

2   WHERE A PRINCIPAL CAN SEEK THE DISGORGEMENT OF ALL

3   COMPENSATION PAID TO A FAITHLESS SERVANT OR A DISLOYAL

4   AGENT EVEN FOR PROPERLY PERFORMED SERVICES IF THE

5   AGENT DURING A PERIOD OF TIME WAS -- VIOLATED HIS DUTY

6   OF LOYALTY AND FIDUCIARY DUTIES TO THE AGENT OR THE

7   EMPLOYER.

8           THE COURT:  DO YOU CONCEDE MR. SCHWARTZ'S

9   POINT THAT TO THE EXTENT YOU ARE MERELY SEEKING MONEY

10  DAMAGES AGAINST MR. KOZLOWSKI THAT GRUPO MEXICANO BARS

11  THE ISSUANCE OF A RESTRAINING ORDER OR A PRELIMINARY

12  INJUNCTION TO SECURE YOUR ABILITY TO SATISFY ANY MONEY

13  JUDGMENT THAT YOU OBTAIN?

14          MR. BEIL:  I THINK THAT THAT'S NOT REALLY THE

15  APPROPRIATE QUESTION, YOUR HONOR.  THE QUESTION IS --

16          THE COURT:  WELL, YOU GUYS LIKE -- YOU

17  HAVEN'T DEALT WITH ME VERY MUCH, OKAY?  TELLING ME

18  THAT MY QUESTION IS NOT THE APPROPRIATE QUESTION IS

19  NOT THE APPROPRIATE RESPONSE.

20          WHEN I ASK YOU A QUESTION, YOU ANSWER IT AND

21  THEN TELL ME WHY YOU THINK THE QUESTION IS

22  INAPPROPRIATE.

23          MR. BEIL:  OKAY.  THANK YOU, YOUR HONOR.  I

24  MEANT NO DISRESPECT.

25          IF THIS CLAIM WAS ONLY FOR MONEY DAMAGES,

1   GRUPO MEXICANO WOULD PROBABLY GOVERN HERE, BUT THIS IS

2   NOT A CLAIM JUST FOR MONEY DAMAGES.

3           THE COURT:  AND I UNDERSTAND THAT, AND SO

4   WHAT I'M TRYING TO FOCUS ON IS TO THE EXTENT -- YOU

5   CLEARLY ASSERT CLAIMS FOR BOTH MONEY DAMAGES AND

6   EQUITABLE RELIEF.  DO YOU AGREE?

7           MR. BEIL:  YES.

8           THE COURT:  YOU APPEAR TO AGREE THAT TO THE

9   EXTENT THAT YOUR RIGHT TO INJUNCTIVE RELIEF STEMS

10  SOLELY FROM A DAMAGE CLAIM, THAT I WOULD HAVE NOT HAVE

11  THE AUTHORITY TO GRANT -- THE RIGHT TO A TRO AND A

12  PRELIMINARY INJUNCTION, THE ASSERTED RIGHT, DEPENDS

13  UPON DAMAGES THAT YOU CAN RECOVER RATHER THAN

14  EQUITABLE RELIEF TO WHICH YOU'RE ENTITLED, YOU WOULD

15  AGREE WITH ME THAT THE INJUNCTION CANNOT ISSUE AS TO

16  THOSE MONIES?

17          MR. BEIL:  YES, IN WHICH CASE WE WOULD BE IN

18  A PREJUDGMENT ATTACHMENT KIND OF SITUATION.

19          THE COURT:  EXACTLY, AND SO WHAT I'M TRYING

20  TO DO HERE IS SEGREGATE OUT -- BECAUSE YOU HAVE A LOT

21  OF CLAIMS FOR A LOT OF MONEY THAT YOU'RE ASSERTING

22  AGAINST MR. KOZLOWSKI.  MANY OF THOSE CLAIMS ARE

23  REALLY COGNIZABLE ONLY AS MONEY DAMAGES CLAIMS, BUT

24  YOU HAVE SUBSTANTIAL CLAIMS THAT ARE EQUITABLE IN

25  NATURE, AND AS TO THOSE YOUR POSITION IS THAT GRUPO

1   MEXICANO IS INAPPLICABLE, RIGHT?

2          MR. BEIL:  YES, SIR.

3          THE COURT:  OKAY, AND WHEN WE LOOK AT -- IN

4   SIMPLIFIED FORM WHAT YOUR EQUITABLE CLAIMS ARE

5   ESSENTIALLY IS -- OR YOUR PRINCIPAL EQUITABLE CLAIMS

6   ARE MR. KOZLOWSKI TOOK OUR MONEY AND HE WASN'T

7   ENTITLED TO IT AND WE WANT IT BACK, AND AS A RESULT,

8   WE WANT EQUITABLE RELIEF TO ENSURE THAT WE GET OUR

9   MONEY BACK, RIGHT?

10          MR. BEIL:  WELL, IT'S A CONSTRUCTIVE TRUST

11   CLAIM, WHICH IS CLEARLY AN EQUITABLE CLAIM, YES.

12          THE COURT:  RIGHT, AND WHEN WE GOT INTO WHAT

13   IS THE AMOUNT OF MONEY THAT YOU ARE ALLEGING THAT

14   KOZLOWSKI TOOK FROM YOU THAT HE WAS NOT ENTITLED TO

15   AND THAT IS SUBJECT TO YOUR CONSTRUCTIVE TRUST CLAIM,

16   WE'VE IDENTIFIED A VARIETY OF THINGS.

17          IN YOUR PLEADINGS I THOUGHT YOU WERE FOCUSING

18   ON A LOT OF THINGS THAT WERE SET FORTH IN THE BOISE

19   REPORT, AND IT SEEMS THAT AS TO MANY OF THOSE THINGS

20   EITHER THE MONEY WAS REPAID BY KOZLOWSKI OR YOUR

21   INTERESTS HAVE BEEN SATISFIED BY THE PAYMENT OF THE

22   RESTITUTION ORDER IN THE CRIMINAL CASE.

23          WHAT WE'RE LEFT WITH -- THE PRINCIPAL THING

24   THAT WE'RE LEFT WITH, IT SEEMS TO ME, THAT YOU WOULD

25   SAY FITS WITHIN YOUR CONSTRUCTIVE TRUST CLAIM IS WHAT

1   YOU SAY ARE THE $325 MILLION THAT WAS PAID TO HIM IN

2   COMPENSATION REPORTED ON HIS W-2S, AND YOU'RE SAYING

3   THAT AS TO THAT, YOU'RE ENTITLED TO A CONSTRUCTIVE

4   TRUST, THE RELIEF YOU'RE SEEKING IS EQUITABLE IN

5   NATURE, GRUPO MEXICANO IS INAPPLICABLE AND YOU ARE

6   ENTITLED TO A TEMPORARY RESTRAINING ORDER OR

7   PRELIMINARY INJUNCTION AS TO THOSE AMOUNTS.

8           AM I UNDERSTANDING YOUR CLAIM CORRECTLY AS

9   IT'S BEEN REFINED DURING THE DISCUSSION THIS MORNING?

10          MR. BEIL:  YES, SIR.

11          THE COURT:  OKAY, AND AS TO THAT, MR.

12  KOZLOWSKI IS SAYING, FIRST, GRUPO MEXICANO STILL

13  APPLIES TO THOSE MONIES.  SECOND, THE $325 MILLION --

14  A SUBSTANTIAL PORTION OF IT IS DEFERRED COMPENSATION.

15  IT'S STILL IN TYCO'S HANDS.  TYCO DOESN'T NEED ANY

16  EQUITABLE RELIEF AS TO THOSE; AND THIRD, THE WHOLE

17  THEORY ON WHICH THE CLAIM FOR $325 MILLION IS BASED IS

18  A THEORY THAT DOES NOT EXIST UNDER THE LAW THAT WILL

19  GOVERN THE RESOLUTION OF TYCO'S CLAIMS AGAINST

20  KOZLOWSKI.

21          HAVE I GOT YOUR PRINCIPAL ARGUMENTS RIGHT,

22  MR. SCHWARTZ?

23          MR. SCHWARTZ:  YOU HAVE MANY OF THEM; YES,

24  YOUR HONOR.  WHAT YOU'VE SET FORTH IS CORRECT, AND

25  I'LL STOP THERE.  THERE'S OTHER THINGS WE WOULD SAY

1  BUT --

2         THE COURT:  AM I MISSING ANY OF YOUR MAJOR

3  ARGUMENTS?  BECAUSE I HAVEN'T GIVEN YOU A CHANCE TO

4  FILE A BRIEF YET.

5         MR. SCHWARTZ:  YES, YOUR HONOR, AND I DID

6  ALLUDE TO THIS EARLIER, BUT OBVIOUSLY ANY FORM OF

7  PRELIMINARY RELIEF, ESPECIALLY ONE SOUGHT SIX YEARS

8  INTO THE LITIGATION, REQUIRES A SHOWING OF IRREPARABLE

9  HARM, AND THAT HAS TO BE BASED ON SOMETHING MORE THAN

10  SPECULATION OR CONJECTURE.

11         AS WE READ THEIR PAPERS, THEY HAVE SIMPLY

12  POINTED TO SOME RECENT PRESS REPORTS OF THE KOZLOWSKI

13  DIVORCE AND CONCLUDED OR SPECULATED FROM THAT THAT IT

14  MUST HAVE BEEN A SHAM OR OVERLY GENEROUS BECAUSE THERE

15  WERE NO CHILDREN, BECAUSE THE MARRIAGE WAS FOR I

16  BELIEVE ONLY FIVE OR SEVEN YEARS.  THAT'S NOT EVIDENCE

17  THAT GIVES RISE TO A RECOGNIZED BASIS FOR FINDING

18  THERE'S IRREPARABLE HARM THAT REQUIRES PRELIMINARY

19  RELIEF AT THIS STAGE IN THESE PROCEEDINGS.

20         WE DON'T THINK THERE IS ANY EVIDENCE THAT

21  THEY POINTED TO, AND WE DON'T THINK THAT IN THESE

22  CIRCUMSTANCES THE NORMAL PRACTICE FOR PREJUDGMENT

23  CIVIL PLAINTIFFS OUGHT TO BE PUT ASIDE AND

24  EXTRAORDINARY RELIEF PROVIDED AT THIS POINT.

25         THE COURT:  ALL RIGHT.  WELL, HERE'S THE

1    SITUATION I FIND MYSELF IN, AND I'M OPEN TO YOUR

2    SUGGESTIONS AS TO HOW TO PROCEED.  I AM WELL SATISFIED

3    THAT TYCO FACES A SIGNIFICANT RISK OF IRREPARABLE HARM

4    IF SOME KIND OF INJUNCTIVE RELIEF IS NOT GRANTED HERE.

5              BASED ON THE REPORTS THAT HAVE BEEN

6    PROVIDED TO ME, THERE'S REASON TO BELIEVE THAT THIS IS

7    A FRIENDLY DIVORCE IN WHICH THE PARTIES ARE

8    COOPERATING.  THE PUBLIC COMMENTS ABOUT THE DIVORCE

9    SUGGEST THAT MRS. KOZLOWSKI WILL BE LEFT WITH

10   MILLIONS.  THE DIVORCE TERMS ARE SEALED, ARE

11   UNAVAILABLE TO US AT THE PRESENT TIME AND UNDER THE

12   CIRCUMSTANCES HERE WHERE MR. KOZLOWSKI AND MRS.

13   KOZLOWSKI WELL KNOW THAT HE FACES LONG-STANDING CLAIMS

14   THAT HE IS LIABLE TO TYCO FOR HUNDREDS OF MILLIONS OF

15   DOLLARS IN DAMAGES AND EQUITABLE RELIEF, THERE'S VERY

16   STRONG REASON TO BE CONCERNED THAT THERE WILL IN FACT

17   BE A TRANSFER OF ASSETS THAT OTHERWISE WOULD BE ABLE

18   TO SATISFY ANY EQUITABLE OR LEGAL JUDGMENT THAT'S

19   ENTERED IN THE CASE, AND THAT IS A RECOGNIZED FORM OF

20   IRREPARABLE DAMAGES THAT CAN SUPPORT A CLAIM FOR

21   INJUNCTIVE RELIEF IN AN APPROPRIATE CASE -- SUBJECT TO

22   THE GRUPO MEXICANO PROBLEM THAT I'M GOING TO TALK

23   ABOUT IN A MOMENT.

24             I THINK THAT -- I HAVEN'T HEARD A LOT OF

25   ARGUMENT FROM MR. SCHWARTZ ABOUT BALANCE OF HARDSHIPS

1  AND PUBLIC INTEREST, BUT IT SEEMS TO ME THE BALANCE OF

2  HARDSHIPS AND PUBLIC INTEREST STRONGLY FAVOR GRANTING

3  SOME KIND OF INJUNCTIVE RELIEF HERE.

4          AS TO THE LIKELIHOOD OF SUCCESS ON THE

5  MERITS, I THINK TYCO HAS MADE A GOOD ARGUMENT WITH

6  RESPECT TO LIKELIHOOD OF SUCCESS ON THE MERITS, BUT I

7  AM TROUBLED BY MR. SCHWARTZ'S RESPONSE CONCERNING THE

8  FAITHLESS SERVANT DOCTRINE, AND I AM CONCERNED ABOUT

9  EXACTLY HOW THE GRUPO MEXICANO ARGUMENT APPLIES IN THE

10 FACTS OF THIS CASE, AND I AM CONCERNED THAT I HAVEN'T

11 HAD A CHANCE TO GET FULL BRIEFING ON THIS ISSUE FROM

12 MR. SCHWARTZ, AND I WANT TO RECEIVE BRIEFING ON THIS

13 ISSUE, AS WELL AS TO RECEIVE FURTHER SUPPORT FROM TYCO

14 CONCERNING ITS ASSERTION THAT A SUBSTANTIAL PORTION OF

15 THE $325 MILLION IN W-2 COMPENSATION HAS, IN FACT,

16 ALREADY BEEN PAID TO MR. KOZLOWSKI AND SHOULD BE

17 RECOVERABLE BY TYCO UNDER ONE OF ITS EQUITABLE

18 THEORIES FOR RELIEF.

19         MY CONCERN HERE IS THAT IF I SIMPLY DON'T ACT

20 FOR A WEEK OR SO TO GIVE THE PARTIES A CHANCE TO BRIEF

21 THE ISSUES THAT THE ISSUE WILL BECOME MOOT BECAUSE ANY

22 MONIES THAT MAY BE SUBJECT TO THAT INJUNCTION WILL BE

23 SWIFTLY TRANSFERRED AND THE WHOLE MATTER WILL BE MOOT.

24         MR. SCHWARTZ, I WANT TO GIVE YOU A CHANCE TO

25 BRIEF THESE ISSUES, BUT I DON'T WANT -- BY GIVING YOU

1   A CHANCE TO BRIEF THESE ISSUES -- TO MAKE THE WHOLE

2   MATTER MOOT WHILE YOUR CLIENT SIMPLY GOES AHEAD AND

3   SWIFTLY TRANSFERS ALL OF THE ASSETS OUT AND THEN TELLS

4   ME, SORRY, JUDGE, TOO LATE.  IT'S DONE.

5          MR. SCHWARTZ:  YOUR HONOR, LET ME RENEW THE

6   SUGGESTION I MADE EARLIER IN THIS CALL.  THAT I THINK

7   I CAN, IF YOUR HONOR WILL ENTERTAIN IT, EXPLAIN

8   EX PARTE TO YOUR HONOR WHY IT'S NOT GOING TO BE

9   RENDERED MOOT IN THE PERIOD OF TIME THAT YOUR HONOR IS

10  TALKING ABOUT OR ANY SUBSTANTIAL PERIOD OF TIME BEYOND

11  THAT.

12         I'M SIMPLY NOT AT LIBERTY -- BECAUSE OF THE

13  CONFIDENTIALITY ORDER THAT I UNDERSTAND IS PART OF THE

14  FLORIDA JUDGMENT -- TO SIMPLY DISCLOSE THE FACTS TO

15  ALL THE PARTIES ON THIS CALL, BUT I THINK I CAN GIVE

16  YOUR HONOR ASSURANCE THAT WITHOUT ANY RESTRAINT FROM

17  YOUR HONOR THE CONCERN THAT YOU HAVE WILL NOT BE

18  RENDERED MOOT.

19         I DID MENTION THAT I THINK THERE IS AN EFFORT

20  UNDERWAY TO PAY BACK PROPERTY TAXES IN FLORIDA ON

21  FLORIDA PROPERTY, BUT THAT IS, MY UNDERSTANDING, THE

22  ONLY THING THAT IS LIKELY TO HAPPEN IN THE NEAR TERM,

23  AND I CAN ELABORATE ON THAT TO THE POINT THAT I THINK

24  YOUR HONOR WILL BE SATISFIED IF YOUR HONOR WILL

25  ENTERTAIN THAT.

```
 1          THE COURT:  THE PROBLEM WITH TRUST ME ON AN
 2   EX PARTE BASIS, JUDGE -- YOU KNOW, I DON'T DOUBT YOUR
 3   CREDIBILITY, BUT WHAT YOU SAY TO ME DEPENDS UPON WHAT
 4   YOUR CLIENT DOES AND OTHER PEOPLE AND --
 5          MR. SCHWARTZ:  I DON'T THINK IT DOES IN THESE
 6   CIRCUMSTANCES, YOUR HONOR, AND AGAIN, I CAN EXPLAIN
 7   THAT SO THAT YOUR HONOR CAN ASSESS THAT FOR YOURSELF.
 8          THE COURT:  I'M REALLY NOT WILLING TO TAKE
 9   SOMETHING LIKE THAT ON AN EX PARTE BASIS.  IT REALLY
10   IS -- I'M NOT COMFORTABLE IN MAKING A DECISION TO ACT
11   OR NOT ACT ON THE BASIS OF THAT KIND OF INFORMATION.
12          MR. SCHWARTZ:  I UNDERSTAND, YOUR HONOR.
13   EXCEPT FOR THE ORDER OF THE FLORIDA COURT, WHICH I'VE
14   BEEN ADVISED OF BY MR. KOZLOWSKI'S DIVORCE COUNSEL, I
15   HAVE NO PROBLEMS SHARING THE FACTS WITH YOUR HONOR AND
16   TYCO'S COUNSEL.
17          PERHAPS AN APPLICATION CAN BE MADE WITH
18   NOTICE TO MRS. KOZLOWSKI AND THE COURT IN FLORIDA THAT
19   WILL PERMIT THAT INFORMATION TO BE SHARED
20   UNDER WHATEVER RESTRAINTS THE FLORIDA COURT DEEMS
21   APPROPRIATE, BUT I DON'T THINK I CAN SIMPLY LAY OUT
22   THE SUBSTANTIVE TERMS OF THAT DIVORCE DECREE WITHOUT
23   VIOLATING THAT FLORIDA COURT ORDER.
24          THE COURT:  ALL RIGHT.  WELL, HERE'S WHAT I'M
25   GOING TO DO -- AND I THINK, MR. SCHWARTZ, YOU'VE LAID
```

1  OUT A CREDIBLE ARGUMENT AND I NEED TO HAVE A BETTER

2  UNDERSTANDING OF IT, BUT I'M IN A SITUATION WHERE I

3  HAVE TO ACT, AND BASED ON WHAT I KNOW SO FAR, I DO

4  BELIEVE THAT TYCO HAS SATISFIED THE REQUIREMENTS FOR A

5  TEMPORARY RESTRAINING ORDER, BUT HERE'S WHAT I'M GOING

6  TO DO BECAUSE I WANT TO GIVE YOU A CHANCE TO BRIEF

7  THIS ISSUE -- THESE ISSUES A LITTLE MORE FULLY AND

8  GIVE ME AN OPPORTUNITY TO CONSIDER YOUR ARGUMENTS,

9  WHICH ARE NOT FRIVOLOUS BY ANY MEANS, AND SO I'M GOING

10  TO ISSUE AN ORDER, BUT I'M GOING TO LEAVE IT IN PLACE

11  ONLY FOR SEVEN DAYS, AND I'M GOING TO DIRECT FIRST

12  TYCO BY 5:00 P.M. ON WEDNESDAY TO FILE A SUPPLEMENTAL

13  MEMORANDUM WITH SUPPORTING AFFIDAVITS AND EXHIBITS

14  THAT SUPPORTS ITS CONTENTION THAT A SUBSTANTIAL

15  PORTION OF THE $325 MILLION IN CLAIMED W-2

16  COMPENSATION WAS, IN FACT, PAID TO MR. KOZLOWSKI, AND

17  THAT MR. KOZLOWSKI'S CLAIM THAT THE MAJORITY OF THAT

18  OR ALL OF IT OR A SIGNIFICANT PART OF IT IS, IN FACT,

19  DEFERRED COMPENSATION IS NOT TRUE SO YOU'LL PROVIDE ME

20  WITH THE SUPPORTING INFORMATION BY 5:00 O'CLOCK ON

21  WEDNESDAY.

22        MR. SCHWARTZ, YOU FILE A SUPPLEMENTAL

23  MEMORANDUM BY 5:00 P.M. ON FRIDAY, AND I WILL CONSIDER

24  IT OVER THE WEEKEND AND DECIDE WHETHER TO LEAVE THE

25  TEMPORARY RESTRAINING ORDER IN PLACE UNTIL I CAN SET

1  UP A PRELIMINARY INJUNCTION HEARING.

2          I OBVIOUSLY DO NOT WANT TO LEAVE AN ORDER --

3  A TEMPORARY ORDER IN PLACE IF IT TURNS OUT THAT I

4  DON'T HAVE THE AUTHORITY TO ISSUE SUCH AN ORDER, BUT

5  BASED ON WHAT'S BEEN PRESENTED TO ME SO FAR UNDER THE

6  TIME CONSTRAINTS UNDER WHICH I'M OPERATING AND THE

7  FACT THAT MR. SCHWARTZ HAS NOT HAD AN OPPORTUNITY TO

8  SUBMIT A BRIEF ON THE SUBJECT, I BELIEVE THAT I DO

9  HAVE THE AUTHORITY TO ISSUE A RESTRAINING ORDER

10 HERE AT LEAST IN THE AMOUNT OF $325 MILLION AND SO I'M

11 GOING TO ISSUE IT IN THAT AMOUNT AND LEAVE IT IN PLACE

12 UNDER THESE TERMS.

13         I'LL HEAR FIRST FROM TYCO AND THEN FROM MR.

14 SCHWARTZ.  THAT'S WHAT I'M PROPOSING TO DO.  ANY

15 COMMENTS THAT YOU WANT TO MAKE?  ANYBODY FROM TYCO

16 WANT TO SAY ANYTHING?

17         MR. BEIL:  WE'RE PREPARED TO LIVE WITH THAT,

18 YOUR HONOR.  WE'VE ALSO ASKED FOR SOME EXPEDITED

19 DISCOVERY.

20         THE COURT:  I'M GOING TO WITHHOLD THAT UNTIL

21 AFTER I GET THE BRIEFING ON THIS ISSUE, AND WE ALSO

22 NEED TO TALK ON THE QUESTION OF BOND BEFORE I LET YOU

23 GO, BUT I DON'T WANT TO ORDER ANY EXPEDITED DISCOVERY

24 NOW.  IF I LEAVE THE RESTRAINING ORDER IN PLACE

25 PENDING A PRELIMINARY INJUNCTION HEARING, I WOULD

1  LIKELY ORDER THE EXPEDITED DISCOVERY.

2         MR. BEIL:  THAT'S FINE, YOUR HONOR.

3         MR. SCHWARTZ:  YOUR HONOR, WITH REGARDS TO

4  THE PROPOSED BRIEFING SCHEDULE, THE PERSONAL PROBLEM

5  THAT I HAVE IS THE JEWISH HOLIDAY BEGINS AT SUNDOWN ON

6  WEDNESDAY.  THAT ESSENTIALLY WILL HAVE ME OUT OF

7  POCKET FROM A LITTLE EARLIER WEDNESDAY AFTERNOON TILL

8  PROBABLY SOMETIME THURSDAY NIGHT.

9         THE COURT:  I RESPECT THAT, AND I'M WILLING

10  TO GIVE YOU MORE TIME, BUT THE INJUNCTION THEN WOULD

11  REMAIN IN PLACE FOR A LITTLE BIT LONGER.  IF YOU WOULD

12  PREFER THAT, I'LL GIVE YOU AN EXTRA WEEK IF YOU WANT

13  JUST SO YOU CAN REALLY TRY TO NAIL DOWN YOUR BRIEFING,

14  BUT YOU SEE MY PROBLEM.  IF I DON'T DO ANYTHING

15  PENDING THE BRIEFING THEN -- I KNOW YOU'LL TRY TO DO

16  THE RIGHT THING, BUT YOU CAN'T CONTROL WHAT YOUR

17  CLIENT AND OTHERS DO, AND I'VE HAD SITUATIONS LIKE

18  THIS WHERE THE MINUTE PEOPLE KNOW THERE'S GOING TO BE

19  AN ORDER, THEY START TRANSFERRING ASSETS, AND I DON'T

20  WANT THAT TO HAPPEN.

21         I'M CERTAINLY WILLING TO GIVE YOU ANOTHER

22  WEEK IF YOU WOULD LIKE THAT, BUT THE ORDER WOULD THEN

23  REMAIN IN PLACE FOR THAT ADDITIONAL WEEK.

24         MR. SCHWARTZ:  IF I CAN LEAVE IT THIS WAY,

25  YOUR HONOR, WE WILL DO OUR BEST TO GET THE BRIEF TO

1  YOUR HONOR AS YOU'VE ASKED FOR 5:00 P.M. ON FRIDAY,

2  BUT IF WE'RE UNABLE TO DO THAT, I UNDERSTAND YOUR

3  HONOR IS GIVING US LEAVE TO TAKE ADDITIONAL TIME WITH

4  THE CONSEQUENCE THAT THE TRO WOULD EXTEND?

5          THE COURT:  YEAH.  I'M FINE WITH THAT.  IF

6  YOU CAN GET YOUR BEST WORK IN BY FRIDAY AT 5:00 AND

7  YOU WANT IT TO STAND, THEN I'LL TAKE IT, AND IF YOU

8  DON'T GET IT IN BY FRIDAY AT 5:00, I'M GOING LEAVE THE

9  INJUNCTION IN PLACE UNTIL I'VE HAD SUCH TIME TO

10  CONSIDER ANY BRIEFING THAT YOU DO FILE.  DO YOU

11  UNDERSTAND WHAT I'M SAYING?

12          MR. SCHWARTZ:  I THINK I DO, YOUR HONOR, AND

13  WITH REGARDS TO --

14          THE COURT:  WHAT ABOUT BOND?  IT'S HARD FOR

15  ME TO FIGURE OUT WHAT THE NEED FOR A BOND IS IN THIS

16  CASE, BUT IF YOU WANTED TO MAKE AN ARGUMENT ON IT,

17  I'LL HEAR YOU ON IT.

18          MR. SCHWARTZ:  WELL, EVEN DURING THE TIME

19  THAT MR. KOZLOWSKI WAS LIVING UNDER THE NEW YORK CIVIL

20  FORFEITURE FREEZE ORDER, NUMEROUS EXPENSES, INCLUDING

21  PAYMENTS TO HIS THEN WIFE, WERE AUTHORIZED AND MADE,

22  AND THERE ARE NO DOUBT ONGOING EXPENSES THAT MR.

23  KOZLOWSKI HAS TO MAINTAIN PROPERTIES THAT HE OWNS, TO

24  MEET CONTRACTUAL OBLIGATIONS AND PAY OTHER PEOPLE WHO

25  ARE PROVIDING SERVICES FOR HIM, AND I ALSO MENTIONED

1   EARLIER THAT I ANTICIPATE THAT A BACK PROPERTY TAX

2   WAS -- THE PARTIES IN FLORIDA WERE IN THE PROCESS OF

3   TRYING TO MAKE THAT PAYMENT.  OBVIOUSLY AS THOSE

4   PAYMENTS ARE DELAYED, THERE ARE COST CONSEQUENCES.

5   THERE MAY BE PENALTIES.  I DON'T REALLY KNOW.

6          THE COURT:  DOESN'T THE PROPOSED ORDER --

7   EXCEPT PAYMENTS TO MRS. KOZLOWSKI ON OR HER BEHALF --

8   AUTHORIZE THOSE KIND OF ROUTINE PAYMENTS?  LET ME ASK

9   TYCO'S COUNSEL.  YOU SUBMITTED A PROPOSED ORDER.

10  DIDN'T YOU CONTEMPLATE THAT THERE WOULD BE

11  DISBURSEMENTS ALLOWED FOR THOSE KINDS OF ROUTINE

12  MATTERS?

13         MR. BEIL:  YES, YOUR HONOR.  WE VERY MUCH

14  DID.  WE'RE FAMILIAR WITH HOW THE SITUATION WORKED IN

15  NEW YORK, AND WE'RE NOT CONCERNED ABOUT THE PAYMENT OF

16  BILLS IN THE ORDINARY COURSE, AND SO THAT THE ORDER

17  PROVIDES -- ALLOWS FOR THAT TO HAPPEN -- THE PROPOSED

18  ORDER.

19         MR. SCHWARTZ:  DO I UNDERSTAND THEN THAT THE

20  ORDER SIMPLY RESTRAINS MR. KOZLOWSKI FROM

21  TRANSFERRING --

22         THE COURT:  WELL, LET ME GET IT.  I'LL READ

23  THE LANGUAGE THAT TYCO WAS PROPOSING, AND WE CAN TALK

24  ABOUT WHETHER IT'S SENSIBLE OR NOT.  I CERTAINLY DON'T

25  WANT A ROUTINE PAYMENT TO BE STOPPED UNNECESSARILY

1  HERE.

2          HERE'S WHAT TYCO SAYS IN PERTINENT PART:

3  "PENDING THE DETERMINATION OF THE BRANCH OF THE MOTION

4  SEEKING A PRELIMINARY INJUNCTION, DEFENDANT L. DENNIS

5  KOZLOWSKI, HIS AGENT, SERVANTS, EMPLOYEES AND

6  ATTORNEYS, ALL PERSONS IN ACTIVE CONCERT OR

7  PARTICIPATION WITH SAID DEFENDANT, AND ALL OTHER

8  PERSONS WHO RECEIVE ACTUAL NOTICE OF THIS ORDER BY

9  PERSONAL SERVICE OR OTHERWISE, SHALL NOT TRANSFER,

10 ASSIGN, ENCUMBER, SELL OR DISPOSE OF ANY ASSETS OR

11 PROPERTY, REAL OR PERSONAL, TANGIBLE OR INTANGIBLE IN

12 WHICH SAID COURT HAS A LEGAL, EQUITABLE, CUSTODIAL OR

13 BENEFICIAL INTEREST, EXCEPT AS MAY BE REQUIRED TO PAY

14 BILLS OR EXPENSES OF SAID DEFENDANT IN THE ORDINARY

15 COURSE (OTHER THAN ANY PAYMENTS IN CONNECTION WITH ANY

16 AGREEMENT WITH OR DIVORCE JUDGMENT GRANTED TO KAREN

17 KOZLOWSKI)."

18         SO I THINK THEY CREATED AN EXCEPTION AND AN

19 EXCEPTION TO THE EXCEPTION, AND IT SEEMS LIKE, MR.

20 SCHWARTZ, IT WOULD ADDRESS YOUR PRINCIPAL CONCERNS.

21         MR. SCHWARTZ:  WELL, YOUR HONOR, I DON'T KNOW

22 HOW THE EXCEPTION TO THE EXCEPTION APPLIES BECAUSE THE

23 FUNDS, AS I UNDERSTAND IT, THAT WOULD BE USED TO PAY

24 THIS PROPERTY TAX BILL WERE ONLY BEING RELEASED AND

25 MADE AVAILABLE FOR THAT PURPOSE AS A RESULT OF THE

1  DIVORCE JUDGMENT.

2       THE COURT:  WHY DON'T -- AFTER THIS CALL IS

3  OVER -- YOU CONSULT WITH TYCO'S COUNSEL AND, IF

4  NECESSARY, MRS. KOZLOWSKI'S COUNSEL AND DRAFT PROPOSED

5  LANGUAGE.  IF YOU'VE GOT CERTAIN BILLS THAT YOU KNOW

6  NEED TO BE PAID WITHIN THE NEXT TEN DAYS OR SO AND YOU

7  CAN GET AGREEMENT, WE'LL BUILD THEM RIGHT INTO THE

8  ORDER SO THAT IT'S CLEAR THAT SHE CAN HAVE THOSE

9  MONIES USED FOR HER BENEFIT OR TO PAY THOSE BILLS.

10       MR. SCHWARTZ:  I WILL TRY TO DO THAT, YOUR

11  HONOR.  THERE'S ANOTHER LAW FIRM THAT ADVISES MR.

12  KOZLOWSKI AND IS FAMILIAR WITH ALL OF THAT.  WE'RE

13  NOT.

14       AM I LEAST CORRECT IN UNDERSTANDING THAT

15  PAYING BACK PROPERTY TAX IS CONSISTENT WITH THE ORDER

16  YOUR HONOR IS CONTEMPLATING ENTERING?

17       THE COURT:  HOW DOES TYCO FEEL ABOUT THAT?

18       MR. BEIL:  I'M NOT SURE, YOUR HONOR.  WHAT'S

19  THE MAGNITUDE OF THE PAYMENTS THAT ARE BEING MADE?  DO

20  WE KNOW?

21       MR. SCHWARTZ:  I BELIEVE -- AND I DON'T HAVE

22  THE EXACT AMOUNT, BUT I BELIEVE IT'S IN THE ORDER OF

23  ABOUT A HALF A MILLION DOLLARS OF BACK PROPERTY TAXES.

24  THERE MAY BE SOME INTEREST AND PENALTY ON THAT.  I

25  DON'T KNOW.

1          THE COURT:  THIS IS ON FLORIDA PROPERTY?

2          MR. SCHWARTZ:  YES, YOUR HONOR.

3          THE COURT:  THAT'S SUBJECT TO A HOMESTEAD?

4          MR. SCHWARTZ:  YES, YOUR HONOR.

5          THE COURT:  IT SOUNDS LIKE THAT KIND OF

6   PAYMENT WOULD BE ONE THAT WOULD BE ORDINARILY

7   CONTEMPLATED, BUT IF TYCO HAS SOME REASON WHY IT

8   SHOULDN'T BE PAID, I WOULD CERTAINLY BE HAPPY TO HEAR

9   IT.

10          MR. BEIL:  I'M PREPARED TO DISCUSS THIS WITH

11   MR. SCHWARTZ OR FLORIDA COUNSEL OFF-LINE, BUT I'M SURE

12   AN ACCOMODATION CAN BE REACHED HERE ON THAT, YOUR

13   HONOR.

14          THE COURT:  ALL RIGHT.  WHY DON'T YOU TALK

15   ABOUT IT AND SOMETIME BEFORE THE END OF THE DAY GET

16   BACK TO MY DOCKETING CLERK WITH SOME PROPOSED

17   LANGUAGE, AND I'LL GIVE IT SERIOUS CONSIDERATION,

18   ESPECIALLY IF YOU CAN AGREE TO IT, WHEN ENTERING THE

19   RESTRAINING ORDER.

20          I'VE ALSO BEEN ADVISED THAT MONDAY IS A

21   FEDERAL HOLIDAY SO REALISTICALLY, MR. SCHWARTZ, TO

22   REGARDING YOUR CONCERN, WHY DON'T I GIVE YOU UNTIL

23   5:00 P.M. NEXT TUESDAY TO FILE YOUR BRIEF.  THAT WILL

24   GIVE YOU ONE BUSINESS DAY AFTER THE HOLIDAY AND SOME

25   TIME ON THE WEEKEND TO WORK ON IT.

1           MR. SCHWARTZ:  THAT'S FINE, YOUR HONOR.

2           THE COURT:  AND THEN I WILL LEAVE THE ORDER

3   IN PLACE UNTIL 5:00 P.M. ON FRIDAY OF THAT FOLLOWING

4   WEEK UNLESS AND UNTIL IT'S EXTENDED OR OTHERWISE

5   MODIFIED BY ORDER OF THE COURT SO WHAT WE'RE PROPOSING

6   TO DO IS LEAVE IT IN PLACE UNTIL A WEEK FROM FRIDAY

7   UNLESS -- IF I CAN GET TO THE POINT WHERE --

8   MR. SCHWARTZ, IF YOUR BRIEF PERSUADES ME, I'LL JUST

9   DISSOLVE THE ORDER RIGHT AWAY AND ISSUE AN EXPLANATION

10  AS SOON AS I CAN.

11          IF YOUR BRIEF DOESN'T PERSUADE ME, IT WILL

12  STAY IN PLACE UNTIL 5:00 A WEEK FROM FRIDAY, AND THEN

13  I'LL ISSUE A FURTHER ORDER EXTENDING IT UNTIL THE

14  PRELIMINARY INJUNCTION HEARING.

15          I STILL WOULD LIKE BY THE END OF THE DAY ON

16  WEDNESDAY TYCO'S FACTUAL SUPPORT FOR ITS ASSERTION

17  THAT SOME SIGNIFICANT PORTION OF THE $325 MILLION IS,

18  IN FACT, MONEY THAT WAS PAID AND IF -- WELL, IF TYCO

19  HAS A RESPONSE -- A BRIEF REPLY TO MR. SCHWARTZ'S

20  BRIEF, IT SHOULD BE -- HE'S GOING TO FILE HIS AT 2:00

21  P.M. ON -- EXCUSE ME -- 5:00 P.M. ON TUESDAY.  LET'S

22  HAVE TYCO'S BY 5:00 P.M. ON THURSDAY IF THERE'S ANY

23  KIND OF A REPLY.  I CAN JUST LOOK IT OVER.

24          MR. BEIL:  THAT'S FINE, YOUR HONOR.

25          THE COURT:  ALL RIGHT.  UNFORTUNATELY ALMOST

1   EVERYTHING IN TYCO IS VERY DIFFICULT TO DEAL WITH, AND

2   SO I'M SORRY THAT I CAN'T GIVE YOU A MORE DEFINITIVE

3   ANSWER TO THE PROBLEM, BUT MR. SCHWARTZ DOES RAISE

4   SOME INTERESTING ISSUES THAT I WANT A CHANCE TO THINK

5   ABOUT BEFORE I LEAVE THIS ORDER IN PLACE.

6        I'M NOT PROPOSING TO SET A BOND BECAUSE FOR

7   THE VERY BRIEF TIME THAT THIS ORDER WOULD BE IN PLACE

8   IT DOESN'T SEEM TO ME THAT THERE'S ANY SIGNIFICANT

9   RISK TO MR. KOZLOWSKI THAT TYCO COULDN'T SATISFY

10  PURSUANT TO ANY ORDER OR JUDGMENT THAT'S ENTERED GIVEN

11  ITS FINANCIAL SITUATION, WHICH APPEARS TO BE MORE THAN

12  ADEQUATE TO ALLOW IT TO PAY ANY JUDGMENT OR TO SATISFY

13  ANY ORDER THAT THE COURT ISSUES IN THE EVENT THAT THE

14  COURT DETERMINES THAT THE RESTRAINING ORDER WAS NOT

15  PROPERLY ISSUED.

16        DOES ANYBODY WANT TO SAY ANYTHING MORE ABOUT

17  THE BOND ISSUE?  I DON'T HEAR ANYBODY.

18        MR. SCHWARTZ:  YOUR HONOR, I WILL JUST SPEAK

19  TO THAT IN OUR PAPERS.

20        THE COURT:  SURE.  IF I'M GOING TO EXTEND IT

21  AND YOU WANT TO MAKE AN ARGUMENT FOR BONDING, TELL ME

22  WHAT THE ARGUMENT IS AND WHAT THE BOND SHOULD BE, AND

23  IF I EXTEND IT AND YOU PERSUADE ME THAT THERE'S A

24  REQUIREMENT FOR SOME BOND, I'LL ORDER IT TO BE POSTED.

25  I'M SURE TYCO CAN SATISFY ANY REASONABLE BOND

1   REQUIREMENT THAT IS IMPOSED.  IT JUST COSTS MONEY TO

2   BUY A BOND.  YOU CAN INCLUDE THAT IN YOUR BRIEFING IF

3   YOU WANT.

4          IF WE SET A -- AS I SAID, I'M INCLINED TO

5   GRANT SOME EXPEDITED DISCOVERY IF I ALLOW THE ORDER TO

6   REMAIN IN PLACE BEYOND FRIDAY.  THAT DISCOVERY SHOULD

7   BE LIMITED AND FOCUSED ALONG THE LINES THAT TYCO HAS

8   PROPOSED.  IF I ALLOW IT, WHEN WOULD THE PARTIES WANT

9   TO HAVE A PRELIMINARY INJUNCTION HEARING?  HOW SOON

10  WOULD YOU WANT IT?  DO YOU KNOW NOW, OR WOULD YOU

11  RATHER WAIT AND CONFER AFTER I MAKE A DECISION ABOUT

12  LEAVING THE TEMPORARY RESTRAINING ORDER IN PLACE AND

13  THEN MAYBE PROPOSE A DATE TO ME?

14          MR. SCHWARTZ:  I THINK THAT MAKES MORE SENSE,

15  YOUR HONOR, THAN TRYING TO FIGURE OUT A DATE NOW SINCE

16  WE WON'T KNOW YOUR HONOR'S DECISION UNTIL PERHAPS A

17  WEEK FROM FRIDAY.

18          THE COURT:  IS THAT OKAY WITH TYCO?

19          MR. BEIL:  YES, SIR.

20          THE COURT:  ALL RIGHT.  WHAT WE'LL DO THEN IS

21  AFTER GETTING BRIEFING I'LL DECIDE WHETHER THE ORDER

22  SHOULD REMAIN IN PLACE BEYOND A WEEK FROM FRIDAY.

23  I'LL RULE ON THE ISSUE OF WHETHER A BOND IS REQUIRED,

24  AND IF I LEAVE THE ORDER IN PLACE, I'LL PROBABLY ORDER

25  THE EXPEDITED DISCOVERY AND DIRECT THE PARTIES TO MEET

1   AND CONFER AND PROPOSE A DATE FOR A PRELIMINARY

2   INJUNCTION HEARING.

3           ALL RIGHT.  IS THERE ANYTHING ELSE THAT

4   PEOPLE NEED TO TAKE UP WITH ME TODAY?

5           MR. BEIL:  NO, YOUR HONOR.

6           MR. SCHWARTZ:  NO, YOUR HONOR.

7           THE COURT:  ALL RIGHT.  THANK YOU, AND I DO

8   APPRECIATE YOUR COMING TO THE TABLE WITH SOME

9   INTERESTING ARGUMENTS.  IT HAS GIVEN ME SOMETHING TO

10  THINK ABOUT, AND I'LL CAREFULLY CONSIDER THEM BEFORE I

11  DECIDE WHETHER TO LEAVE THE ORDER IN PLACE.

12          I WILL WAIT TO HEAR FROM YOU REGARDING THAT

13  LANGUAGE THAT YOU HAD ASKED ME TO SUBMIT.  IF I DON'T

14  HEAR FROM YOU BY THE END OF THE DAY, I'LL ISSUE THE

15  ORDER PRETTY MUCH AS IT'S BEEN PROPOSED BY TYCO, BUT I

16  WANT TYCO TO MAKE A GOOD FAITH EFFORT TO TRY TO REACH

17  SOME AGREEMENT ON SPECIFIC LANGUAGE HERE.

18          IF THERE IS A PROPERTY TAX PAYMENT OR

19  SOMETHING ELSE THAT'S GOING TO OCCUR IN THE NEXT TEN

20  DAYS THAT ISN'T REALLY IN THE NATURE OF A FRAUDULENT

21  TRANSFER BUT REALLY IS DESIGNED TO PAY SOME KIND OF

22  BILL LIKE A PROPERTY TAX BILL, I WOULD EXPECT TYCO

23  WOULD BE REASONABLE ABOUT TRYING TO AGREE ON LANGUAGE

24  TO ALLOW THAT TO OCCUR.

25          MR. BEIL:  WE WILL, YOUR HONOR.

```
 1            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

 2   I'LL WAIT FOR YOUR LANGUAGE ON THAT, AND I'LL GET THAT

 3   ORDER OUT AT THE END OF TODAY.  THANK YOU.

 4            MS. EDWARDS:  THANK YOU.

 5            MR. SCHWARTZ:  THANK YOU.

 6            (CONCLUSION OF HEARING AT 11:45 A.M.)

 7

 8

 9              C E R T I F I C A T E

10

11            I, SUSAN M. BATEMAN, DO HEREBY CERTIFY

12   THAT THE FOREGOING TRANSCRIPT IS A TRUE AND ACCURATE

13   TRANSCRIPTION OF THE WITHIN PROCEEDINGS, TO THE BEST

14   OF MY KNOWLEDGE, SKILL, ABILITY AND BELIEF.

15

16   SUBMITTED: 10-8-08     /S/   SUSAN M. BATEMAN
                            SUSAN M. BATEMAN, CSR, RPR, CRR
17

18

19

20

21

22

23

24

25
```