**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 1-27-09

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
IN RE:                          *
                                *  No. C.02-MD-1335-B
TYCO INTERNATIONAL, LTD.        *  October 27, 2008
                                *  10:08 a.m.
Multidistrict Securities        *
Litigation                      *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:

| | |
|---|---|
| For Tyco: | Elizabeth F. Edwards, Esq. |
| | Brian E. Pumphrey, Esq. |
| | McGuire Woods |
| | |
| | Edward A. Haffer, Esq. |
| | Sheehan, Phinney, Bass & Green, PA |
| | |
| For Mr. Kozlowski: | Robert N. Shwartz, Esq. |
| | Jyotin Hamid, Esq. |
| | Philip Fortino, Esq. |
| | Debevoise & Plimpton |
| | |
| | Richard B. McNamara, Esq. |
| | Wiggin & Nourie |
| | |
| For NJ Plaintiffs: | Michael P. O'Mullan, Esq. |
| | Riker Danzig |
| | |
| For Karen Kozlowski: | Laura L. Carroll, Esq. |
| | Burns & Levinson |

```
For Angela Kozlowski:   R. James Steiner, Esq.
                        D'Amante, Couser, Steiner,
                        Pellerin, P.A.


For Texas Teachers
Retirement System:      Blair A. Nicholas, Esq.
                        Bernstein, Litowitz, Berger
                        & Grossmann, LLP


For Federated
Mutual Funds:           Thomas Skelton, Esq.
                        Lowey, Dannenberg


Court Reporter:         Susan M. Bateman, CSR, RPR, CRR
                        Official Court Reporter
                        U.S. District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1453
```

1                P R O C E E D I N G S

2            THE CLERK:  The Court has for consideration

3    this morning In Re:  Tyco, case number 02-MD-1335-PB,

4    for a preliminary injunction hearing.

5            THE COURT:  All right.  What's the status of

6    this matter?

7            MS. EDWARDS:  Good morning, your Honor.  We

8    have an agreed order that we would like to tender to the

9    Court.

10           THE COURT:  All right.  I'm happy to hear

11   that.  Hand it to the clerk, please.  Is everyone

12   joining in this proposed order?

13           MS. EDWARDS:  Your Honor, Tyco and Mr.

14   Kozlowski's counsel and -- New Jersey?

15           MR. O'MULLAN:  Your Honor, Michael O'Mullan

16   for the New Jersey plaintiffs.  I reviewed the order

17   this morning.  I haven't had an opportunity to discuss

18   it with my client.

19           THE COURT:  All right.

20           MR. NICHOLAS:  Your Honor, it's Blair Nicolas

21   on behalf of Texas Teachers in the opt-out case.  I

22   haven't had a chance to review the order so I would like

23   a chance to review it.

24           THE COURT:  All right.

25           MR. SKELTON:  This is Tom Skelton from Lowey,

1   Dannenberg on behalf of Federated.  I have not seen it,

2   either, and would like the opportunity to review it, as

3   well.

4            THE COURT:  All right.

5            MR. SHWARTZ:  Your Honor, on behalf of Mr.

6   Kozlowski, as Ms. Edwards said, we do have this

7   negotiated comprise order that we reached actually over

8   the weekend and into this morning hours.  I certainly

9   don't have a problem sharing it with counsel for any of

10  the opt-outs, but it does effect to basically dissolve

11  the TRO and the orders that your Honor issued

12  thereunder, vacate the findings of fact and rulings that

13  your Honor issued in connection with those orders and

14  replace those in their entirety with this preliminary

15  injunction, which is embodied in the document that Ms.

16  Edwards has handed out.

17            THE COURT:  All right.

18            MS. CARROLL:  Your Honor, Laura Carroll from

19  Burns & Levinson for Karen Kozlowski.  I just got a copy

20  of the proposed preliminary injunction a few minutes

21  ago.  I'm speed reading it.  I would want an opportunity

22  to discuss the particular paragraphs that impact Karen

23  Kozlowski with her divorce counsel in Florida because it

24  proposes to do a number of things with respect to

25  selling the Boca Raton and Nantucket properties.

1          If one of the attorneys for either Mr.

2    Kozlowski or Tyco has it so it could be e-mailed, I

3    would be happy to send it to them immediately to look

4    over.  I just don't want to do anything that's going to,

5    you know, impact what's happening in the divorce case,

6    you know, without -- you know, innocently, of course,

7    but I don't want to mess that up.

8          THE COURT:  I understand the problem for

9    parties other than Mr. Kozlowski and Tyco.  They were

10   principally involved in the negotiations.  Other parties

11   only recently, if at all, have seen copies of the

12   proposed agreement so -- and I don't expect -- and I

13   don't think counsel can bind a client to agree to

14   something without having seen it or reviewed it so I

15   fully understand the positions that the other parties

16   are in.

17         Ms. Edwards, why don't you give me a summary

18   of the way you think this proposed order works, and then

19   we'll go from there.

20         MS. EDWARDS:  Certainly, your Honor.  What we

21   have agreed to is a general restraint on any sale,

22   encumbrance, transfer of any of Mr. Kozlowski's assets

23   with certain enumerated exceptions, which are set forth

24   in paragraph 5.  Those include, for example, the CODA

25   judgment, attorney's fees, any payments to his first

1   wife, and then a group of expenses with an annual cap

2   for the first year that include, for example, personal

3   expenses of Mr. Kozlowski for food and clothing that he

4   is permitted to receive in prison, repair, maintenance

5   and things that need to be done to the Boca Raton and

6   Nantucket properties to put them on the market,

7   maintenance of those properties.  Those sort of things

8   are set out in paragraph 5(e) subject to a cap of $2

9   million.

10          Then if either the Boca Raton or Nantucket

11  property is subject to a contract of sale, Tyco and the

12  other defendants -- or plaintiffs, I guess, would

13  receive notice and an opportunity to object to that

14  sale, should they choose to do so, and if the sale is

15  consummated, a renegotiation of the cap -- that

16  $2 million cap would occur.

17          For all of the other assets, we have

18  enumerated six of the largest assets that if Mr.

19  Kozlowski is going to sell over that asset, it requires

20  notice to Tyco and the other plaintiffs and an

21  opportunity to object.

22          For the rest of his assets, they remain

23  subject to the general restraint but he can, for

24  example, sell one asset to get cash to pay attorney's

25  fees without notice to us so he has some flexibility to

1    make the payments that are permitted under the order,

2    and any notice that is required of Tyco also is given to

3    the opt-out plaintiffs and the New Jersey plaintiffs,

4    and they have the same opportunity to object, although

5    this order and their objections would occur either in

6    this court or in the Southern District of New York when

7    the case is transferred back there so that Mr. Kozlowski

8    is not subject to objections to this order in a variety

9    of courts, and that, I believe, is, in essence, the

10   substance of the order.

11          If I've missed something, perhaps Mr.

12   Kozlowski's counsel could enhance what I've just said.

13          MR. SHWARTZ:  No.  Beyond what I've said

14   earlier, your Honor, and there are some other details

15   that Ms. Edwards I think understandably didn't dwell on.

16          THE COURT:  A couple of questions first.  Is

17   this -- are we in a trustee situation with Mr. Kozlowski

18   with respect to compliance, or is there any kind of

19   provision in there for ongoing monitoring of what is

20   actually occurring with respect to expenses?

21          MS. EDWARDS:  Actually, that's one provision,

22   your Honor, that I omitted.  Mr. Kozlowski will give us

23   updated financial information every six months so that

24   we will be able to, you know, see how things have moved.

25          THE COURT:  And I guess you can answer this on

1    behalf of Mr. Kozlowski.  How does this order affect Mr.

2    Kozlowski's obligations under the divorce agreement?

3    Are we in a situation where he's in some kind of

4    conflicted position with respect to his ability to

5    comply with both?

6            MR. SHWARTZ:  We don't believe so, your Honor.

7    As your Honor knows, there are three judgments

8    outstanding against him -- two of them held by CODA and

9    Mr. Kozlowski's first wife -- expressly authorized all

10   payments can be made without dollar limitations to

11   satisfy those obligations.

12           With regards to his obligations under the more

13   recent divorce to Karen Kozlowski, this agreement

14   authorizes the expenditure of funds that Mr. Kozlowski

15   would be obligated to pay under that divorce decree to

16   fix up the properties to prepare them for sale, and he's

17   allowed under this agreement to market and sell those

18   properties subject to the notice when there's a sale of

19   contract to Tyco and the other plaintiffs to give them

20   an opportunity to object, if they find anything about

21   that contract objectionable or if they have a problem

22   with -- not the sale price but the disposition of the

23   proceeds, they could voice an objection there.  Mr.

24   Kozlowski would be free to oppose any such objections,

25   and with regards to those two properties, the Boca and

1    the Nantucket properties that are specifically the

2    subject of division in the marital settlement, Karen

3    Kozlowski receives notice of any objections that Tyco or

4    the other plaintiffs might have.

5         So at the moment, in terms of his current

6    obligations, we don't believe that this in any way

7    prevents him from meeting those obligations.  It leaves

8    open the possibility down the road -- when those

9    properties are actually under contract for sale -- that

10   conceivably Tyco or the other plaintiffs might resist or

11   oppose the disbursement of the proceeds from those sales

12   in keeping with the divorce decree.

13        THE COURT:  And I assume at that point all

14   parties rights would be preserved with respect to their

15   ability to assert whatever positions they want to assert

16   concerning a challenge.

17        MR. SHWARTZ:  That's right, your Honor.

18        THE COURT:  All right.  Counsel, you're

19   standing.

20        MS. CARROLL:  Yes, your Honor.  Again, for

21   Karen Kozlowski.  My concern with this -- I don't know

22   if we would be asked to join in it -- is that the -- is

23   only -- as far as I know, not having conferred with

24   Florida counsel for Mrs. Kozlowski -- only with respect

25   to paragraph 6, which is the provision that says when

```
 1   there's a purchase and basically a contract for sale
 2   signed -- so you already have a buyer.  You've already
 3   negotiated the terms.  You're already supposed to be
 4   selling them the property.  Then Tyco has an opportunity
 5   to come in and say either, you know, I want to object.
 6   I don't want the sale to go forward.
 7            My concern with that is it suggests -- one, I
 8   think that could seriously -- just from what I know of
 9   real estate -- seriously impair the ability to sell
10   either property if you have that looming over a buyer
11   that, you know -- not just that they're dealing with
12   disbursement of the proceeds, but that they could enjoin
13   the entire sale.
14            I think that would really have a negative drag
15   on the ability to sell the property.  You know, it's
16   like saying, I want to buy your house but this other
17   person has a right of first refusal.  We all know that
18   could be problematic.
19            Secondly, it also suggests -- and this is
20   where Karen Kozlowski would disagree -- that this Court
21   has the ability to come in and redo the terms of the
22   marital settlement agreement.
23            THE COURT:  I'm not seeking to redo the terms
24   of the marital settlement agreement.  I'm seeking to
25   protect the equitable claims that Tyco has asserted and
```

1    others have asserted on which I have made a preliminary

2    determination that has a likelihood of success.  I have

3    no interest in rewriting the terms of the divorce

4    decree, but your client has no right to assets that were

5    not Mr. Kozlowski's to begin with.  You have no right to

6    have those assigned to your client.

7            I don't want to interfere with the divorce

8    decree in any way.  To the contrary.  I would like to

9    see everybody's interests addressed here to the extent

10   they can be addressed.

11           As to your first point, I think I have some

12   sympathy with the problem.  I'm not sure -- the analogy

13   to a right of first refusal is perhaps a little strong.

14   I don't think it is as threatening to an ability to

15   affect the sale as a right of first refusal, but it is

16   certainly a drag on efforts to sell.

17           The problem is that I'm not sure what we could

18   do to adequately protect the plaintiffs that I have in

19   front of me short of doing something like that, and I do

20   think -- I mean you just disagree that I have the power

21   to do this.  I understand.  I think I do, and at least

22   until somebody -- another court overturns me, that's

23   pretty much the way it's going to be so I understand

24   that problem and I would certainly be willing to give

25   you some limited period of time to react to this, if you

1   feel you need to, and consider any objection you file,

2   but it would be something I would have to do on a

3   relatively expedited basis, and if you have those kinds

4   of concerns once you do have a chance to digest the

5   order and talk to your client, I think your first resort

6   ought to be to talk to Tyco and Kozlowski, and if you

7   can propose modest changes that they would agree to,

8   that's probably your greatest chance of succeeding.

9   Short of that, giving you some expedited period of time

10  in which to give me some kind of written submission

11  explaining specifically and narrowly what your concerns

12  are, I would certainly be willing to entertain that.

13              MS. CARROLL:  Okay.  I think that's what I

14  would like to do, your Honor, is for us to be able to

15  confer with Mrs. Kozlowski and her Florida divorce

16  attorneys, who I'm sure are much closer to the issue of

17  what's needed to do in terms of selling the Boca

18  property -- whether they think this would be a drag on

19  the proposed sale or not, and maybe there's -- if they

20  agree, maybe we can come up with an earlier mechanism

21  than having already signed -- a signed purchase and sale

22  agreement as the trigger, if nothing else, to figure out

23  some way if there's going to be a hold up of the sale

24  actually going through.

25              If I could confer with them today -- I will

1    certainly talk to counsel for Tyco and Mr. Kozlowski

2    today.

3              THE COURT:  I can't bind you to agree to

4    anything with such short notice.  I wouldn't try.  The

5    TRO remains in effect for how long?  I have another few

6    days.

7              MS. EDWARDS:  Until October 31st, your Honor.

8              THE COURT:  All right.  So if I can say -- any

9    submission you make by the end of the day tomorrow, that

10   would give me a chance and give you a chance -- what's

11   the date today?

12             MS. EDWARDS:  27th.

13             THE COURT:  The 27th.  So if you had a problem

14   that you can't work out with Tyco, file something by the

15   end of the day tomorrow.  Explain what it is.  I'll

16   review it and make a decision on whether to consider

17   taking any different action other than what's being

18   proposed.

19             MS. CARROLL:  Would it be possible, your

20   Honor, to have until Wednesday only because I know Jason

21   Marks, who is one of the lead divorce attorneys for Mrs.

22   Kozlowski, is out of town returning later today?

23             THE COURT:  Okay.  Just understand that the

24   shorter amount of time you give me to review whatever

25   you submit, the less likely I am to agree with your

1    position.  My default position would not be to change my

2    mind so you would have to persuade me to move off of my

3    default position.

4           MS. CARROLL:  If I could do that tomorrow?  I

5    just know I'm not going to be able to talk to Mr. Marks

6    until late this afternoon, your Honor, and obviously he

7    has to review this before I can talk to them.

8           THE COURT:  I understand.  The same goes for

9    any of the other parties who haven't had a chance to

10   review this for any extended period.  If you have some

11   problem that you haven't been able to work out, by the

12   end of the day on Wednesday file whatever.  Otherwise

13   I'll take whatever action I'm going to take before the

14   TRO expires.

15          Another question I have, Ms. Edwards -- I'm

16   obviously going to read the document carefully.  I won't

17   do it in your presence.  I'll take it upstairs and read

18   it, but as you know, I am contemplating, subject to what

19   I hear later on in the telephone conference today, in

20   the relatively near future to -- seeking to have this

21   case transferred back to the transferor district for

22   final resolution, and I want to be sure -- ordinarily --

23   I think a Court has a need to try to protect its

24   rulings.  I don't ordinarily agree with the idea of

25   vacating my own rulings to satisfy a proposed

1   settlement, but it's a very different matter when I rule

2   on something in a very preliminary way, as I have here.

3          I have no difficulty with the idea of vacating

4   earlier orders and substituting this.  I also think

5   there would be little purpose served, if I do make a

6   transfer, having any further matter, such as

7   modification of the injunction, heard by me.  It seems

8   to me appropriate, and I would have no objection to

9   whatever judge ended up handling the case to entertain

10  any further proposals to modify the injunction or to

11  respond to any requests for relief as a result of a

12  pending sale -- something like that.

13         So my view would be if I transferred this

14  thing, I should transfer everything and that the new

15  judge should have the power to make any modifications to

16  the order.  How do you propose to deal with that in this

17  proposed order?

18         MS. EDWARDS:  Your Honor, we have attempted in

19  paragraph 4 to provide that any objection would be filed

20  if the case was transferred back in the court to which

21  the case was transferred.

22         THE COURT:  All right.  Does anybody have any

23  problem with that concept?  I just think whatever judge

24  ends up with it ought to have the full power to do

25  whatever is necessary to address any problems that may

1    arise, and there's no point in me trying to meddle in

2    something that I've agreed should be sent back to

3    another judge.  Does anybody have any problem with that?

4              MR. O'MULLAN:  Your Honor, Michael O'Mullan,

5    the New Jersey plaintiffs' attorney.  I just wanted --

6    as I advised your Honor before, I haven't had a chance

7    to review this with my client.  I did have a concern

8    about the possibility of the action being remanded to

9    the Southern District of New York.  I wanted to make

10   sure that our rights would be protected in that, as

11   well, and in paragraph 11 you've added a procedure that

12   would give us and the other opt-out plaintiffs the

13   ability to have standing in that action and the right to

14   raise the same objection that Tyco has raised and we see

15   that as a --

16             THE COURT:  Oh, I see the problem.  You're

17   saying to the extent that I keep your case and send this

18   one back, that you need an opportunity to be heard in

19   that matter.

20             I assume no one would have any objection to

21   those rights being preserved, and I have no objection

22   to the judge with the primary control over what I've

23   been calling the Tyco plaintiff cases -- that that judge

24   should resolve any disputes that arise under the

25   preliminary injunction even if I did retain your case

1    while sending the Tyco case back.  Does anybody have any

2    difficulty with that?

3         MR. SHWARTZ:  No, your Honor, and we have

4    attempted, with input from Mr. O'Mullan this morning, to

5    capture that in the language of the proposed order

6    before your Honor.

7         The goal is that any issues related to this

8    preliminary injunction will stay with your Honor, or if

9    your Honor remands the individual actions back to the

10   transferor court, that court and the opt-outs in New

11   Jersey's interests in this preliminary injunction would

12   also be addressed by that court.  We don't want to have

13   it scattered to multiple courts.

14        THE COURT:  Exactly, and I think that's an

15   entirely sensible approach.  As long as they have an

16   opportunity to be heard in that court, there's no reason

17   why they should bring it back to somewhere else or even

18   if I transferred your case back to New Jersey -- is that

19   where you filed it originally?

20        MR. O'MULLAN:  That's right, and we're hopeful

21   that would happen soon, as well, your Honor.

22        THE COURT:  We're going to talk about that

23   this afternoon.  Okay.  All right.  I will review the

24   matter carefully.  I will not act until after 5:00

25   o'clock on Wednesday, but I will have -- I have to say,

1    this is precisely what I was hoping the parties would

2    do, and it's why I really have such a high regard for

3    the lawyers in these cases because you're able to do

4    things that are sensible when you're pressed to do them,

5    and I really appreciate that.

6            I think what I like about this case -- as

7    difficult as it is -- is when I give you some suggestion

8    as to how I think the matter should proceed and it's

9    reasonable, you seem to be very good about taking a

10   practical approach to these problems, and that's what

11   they cry out for so I appreciate your efforts.  I know

12   everybody did a lot of work and spent a lot of the

13   weekend working on it, and I appreciate that.

14           This is precisely what I had in mind, subject

15   to hearing any objections that I receive on Wednesday or

16   seeing something in the document that is not yet

17   apparent to me.  I commend the parties, and I see no

18   reason why I wouldn't enter the proposed preliminary

19   injunction as the parties have suggested.

20           MR. NICHOLAS:  Your Honor.

21           THE COURT:  Yes.

22           MR. NICHOLAS:  It's Blair Nicholas on behalf

23   of Texas Teachers -- I don't mean to interrupt you --

24   and we will review this and digest it quickly once we

25   receive the proposed order.

1           One thing we did not receive that I think

2     would be helpful with my clients digesting this is we

3     did not receive a proffer of Kozlowski's assets that

4     were provided to Tyco, and if we could have that

5     provided to us as part of the process, that would be

6     very helpful.  I assume there's no objection to that.

7           THE COURT:  Let me hear from the parties here.

8     Yes, Ms. Edwards.

9           MS. EDWARDS:  Your Honor, I believe that those

10    interrogatories -- or those discovery responses were

11    attached as Exhibit 79 to my affidavit that we filed on

12    Friday.

13          MR. NICHOLAS:  Was that filed under seal,

14    Elizabeth?

15          MS. EDWARDS:  I believe it was, but I believe

16    it was also e-mailed to you, and if it was not, we

17    certainly can take care of that.

18          MR. NICHOLAS:  Yes.  Unfortunately, we didn't

19    get an e-mail, but if you could forward that to us, that

20    would be helpful.

21          MR. SKELTON:  Tom Skelton on behalf of

22    Federated.  We did not receive it, either.

23          THE COURT:  All right.  It was filed under

24    seal, apparently, and if you do get copies of it, you

25    should treat it like any other sealed document.

1          MR. SKELTON:  Of course.

2          MR. NICHOLAS:  Of course, and we're parties to

3     the confidentiality agreement.

4          THE COURT:  All right.

5          MS. EDWARDS:  We'll review that as soon as we

6     get Internet access and can do so.

7          MR. SHWARTZ:  Your Honor, we have no objection

8     to any opt-out who has served a summons and complaint

9     and is bound by the confidentiality agreements in this

10    case, but I think in one instance among the seven

11    opt-outs, that may not be the case.  If they are not a

12    party because they haven't commenced a lawsuit, that

13    puts them in a different posture.

14         THE COURT:  Well, I certainly think that

15    anyone who is given access to a sealed document in this

16    case should be bound by whatever confidentiality

17    agreement the parties have negotiated.

18         With that caveat, Ms. Edwards will arrange to

19    have copies of it e-mailed to those who have signed the

20    confidentiality agreement.

21         MR. SKELTON:  Thank you, your Honor.

22         MR. NICHOLAS:  Thank you, your Honor.

23         THE COURT:  All right.  Anything else?  All

24    right.  Thank you very much, and I anticipated this

25    would be a longer hearing so you're going to probably

1    have to hang around to do the telephone conference.   I

2    don't know.   When is the telephone conference, 2:00?

3              MS. EDWARDS:   2:00 o'clock.

4              THE COURT:   You probably can't get back to

5    wherever you're going.   I apologize for that, but I

6    thought we might end up needing more time.

7              MR. SHWARTZ:   We understand that your Honor

8    wants all parties to participate by phone at 2:00

9    o'clock.

10             THE COURT:   Yes.   I am going to -- at

11   least -- I haven't checked with my Clerk's Office.

12   There was a request from the media to participate in the

13   telephone conference, and that's not something that I

14   do, but since it is something -- I did it as a telephone

15   conference simply as a matter of convenience for the

16   parties so what I'm arranging to do is I will have a

17   speakerphone hook-up in the courtroom here for the

18   telephone conference, and I'll announce that at the

19   beginning of the telephone conference, but I'm not going

20   to be taking any communications from the courtroom.

21   It's simply to try to fulfill a demand for public access

22   to a proceeding, and there may be certain things that

23   people aren't going to be willing to say under those

24   circumstances.   I fully understand that, and if we need

25   to have subsequent communications with various parties,

1    I can arrange for those to occur in a way that's not in

2    the public record, but I felt that at least for many of

3    the issues that I want to cover -- what's the status of

4    discovery; what's the status of motion practice; some

5    basics on what's happening with respect to settlement --

6    that there isn't any reason why that couldn't be in the

7    public record so I will have a speakerphone hook-up in

8    the courtroom, but you can go back to Mr. McNamara's

9    office and call in from there, or I mean you can try to

10   do it by cell phone if you're willing to take the risk

11   that you might get dropped or cut out or whatever you

12   want to do.

13          MR. SHWARTZ:  We're going to see what the

14   airline schedules permit, but we're going to participate

15   by phone one way or the other.

16          THE COURT:  Okay, and I'm sorry for the

17   inconvenience about that.  I didn't see any other

18   practical way to resolve it.  Yes.

19          MR. STEINER:  Your Honor, Attorney Jim

20   Steiner.  We had filed on Friday a partially assented to

21   motion to intervene on behalf of Angie Kozlowski, Mr.

22   Kozlowski's former spouse dating back to a divorce in

23   2000.

24          I just wanted to confirm, given the filing on

25   Friday -- and I apologize for my arrival a little later

1    this morning because of a conflict -- that counsel for

2    Angie Kozlowski will be participating in the telephone

3    conference.  I'm not sure that there would have been any

4    objection to her intervention but --

5              THE COURT:  I don't know.  It might be kind of

6    boring for you.  I'm not sure there's going to be much

7    in there that's really going to be of interest to your

8    client, particularly as proposed here.  The parties are

9    agreeing that any obligations that are owed to your

10   client can be fully satisfied pursuant to the

11   preliminary injunction, but the clerk can give you the

12   call-in number and you can call in and participate but

13   I -- just giving -- the reality of the way these

14   conferences work, it's going to be -- Ms. Edwards knows

15   who is on the hot seat at these conferences, and it's

16   her and she's going to be doing most of the talking, and

17   to a lesser extent, some of the other players, but the

18   principal players will be really participating, and

19   everybody else is going to be listening in.  I expect

20   that would be the case with your client.  Any issue that

21   your client had we really ought to take up at this

22   proceeding because I want to be focusing on the main

23   cases.

24             I mean so there's no surprise about this, I

25   have scheduled oral argument on the remaining summary

1   judgment motions that I have pending in front of me.   I

2   have tried to address this issue of the request for

3   preliminary injunction in the Tyco case, and what I want

4   to talk to people about is I want to confirm what I

5   believe to be the case, which is discovery is

6   substantially completed.   I want to throw out my

7   proposal, which is going to be that these cases and the

8   Tycom case be sent back almost immediately, and that I

9   proceed with the remaining cases, try to get the opt-out

10  cases settled, try to deal with the New Jersey

11  plaintiffs' action against PricewaterhouseCoopers, try

12  to deal with the ERISA summary judgment motion and get

13  the rest of the cases out of here and get them working

14  in courts where judges are going to be giving a lot of

15  attention to them and getting them moving quickly

16  because I've taken as much time as I feel I could

17  reasonably take to encourage an active path to

18  settlement and it hasn't been moving as quickly as I

19  feel it needs to be moving, and so the next logical step

20  for me is to try to get the focus down to a few cases

21  where I think I could still get them resolved and get

22  the other ones back to districts where judges can

23  schedule summary judgment and trial in those cases

24  because it may be that only the scheduling of

25  dispositive motion dates and trial dates will get them

1   settled.

2           MR. STEINER:  I'll be happy to take a look at

3   the proposed order and speak to Attorney Lenz in New

4   York.

5           THE COURT:  And you're welcome to get a

6   dial-in number from the clerk.

7           MR. STEINER:  I'll do that, your Honor.  Thank

8   you.

9           MR. SHWARTZ:  Your Honor, with regards to Mr.

10  Steiner's question, I think the applications to

11  intervene on behalf of both of the former Mrs.

12  Kozlowskis was with regards to the pending motion for a

13  TRO and preliminary injunction.  Not with regards to the

14  overall pendency of the --

15          THE COURT:  They are limited interventions --

16  limited to the purpose for which they are seeking

17  intervention, and there really isn't any need for them

18  to be actively involved in all phases of the case, but

19  I'll let them listen in if they want.

20          MR. SHWARTZ:  I'll be happy to show Mr.

21  Steiner the proposed order that we handed up to your

22  Honor because I think that really fully addresses his

23  client's interests.  Certainly that was the intent.

24          THE COURT:  It sounds like it.  If it's been

25  described correctly, she should not have any need to be

1    involved in the case further unless there's some

2    modification of the order that impairs any rights that

3    she has to assets of Mr. Kozlowski.

4              All right.  Anything else?  Okay.  Then I will

5    conclude this conference, and I'll talk to everybody by

6    telephone again this afternoon.

7              (Conclusion of hearing at 10:40 a.m.)

8

9

10

11

12                    C E R T I F I C A T E

13

14              I, Susan M. Bateman, do hereby certify that

15    the foregoing transcript is a true and accurate

16    transcription of the within proceedings, to the best of

17    my knowledge, skill, ability and belief.

18

19

20

21    Submitted: 10-29-08        /s/   Susan M. Bateman
                                 SUSAN M. BATEMAN, CSR, RPR, CRR
22

23

24

25