**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 7-30-2009

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
   IN RE:                       *
                                * No.
   TYCO INTERNATIONAL, LTD.     * C.02-MD-1335-PB
                                * April 15, 2009
   Multidistrict Securities     * 10:00 a.m.
   Litigation                   *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:

For ERISA:            Robert A. Izard, Jr., Esq.
                      Schatz & Nobel, P.C.


For Boggess:          Damion Stodola, Esq.
                      Morrison & Foerster, LLP

For Foley:            Anne E. Beaumont, Esq.
                      Friedman, Kaplan, Seiler
                      & Adelman, LLP

For Gutin:            Deborah Ringel, Esq.
                      Dickstein Shapiro, LLP

For Mattfolk:         Paul Wagner, Esq.
                      Shea, Stokes, Roberts & Wagner

For Meelia:           Michael T. Gass, Esq.
                      Edwards, Angell, Palmer & Dodge

For Prue:             James Walker, Esq.
                      Richards, Kibbe & Orbe, LLP

For Robinson:         Karen Won, Esq.
                      Cooley, Godward, Kronish, LLP

2

```
For Swartz:          Michael Grudberg, Esq.
                     Stillman & Friedman


For Kozlowski:       Jyotin Hamid, Esq.
                     Debevoise & Plimpton


For Tyco:            Elizabeth Edwards, Esq.
                     McGuire Woods, LLP



Court Reporter:      Susan M. Bateman, CSR, RPR, CRR
                     Official Court Reporter
                     U.S. District Court
                     55 Pleasant Street
                     Concord, NH 03301
                     (603) 225-1453
```

1                P R O C E E D I N G S

2          THE COURT:  All right.  Good morning.  This

3   is Judge Barbadoro.  I have a court reporter here.

4   Someone asked for a conference call?

5          MR. HAMID:  Yes, your Honor.  This is Joe

6   Hamid at Debevoise & Plimpton.  We requested the call,

7   and thank you very much for scheduling it.

8              We requested the call to seek leave to file a

9   summary judgment motion in the ERISA case.  We would

10   make a motion on two bases.  We had identified in a

11   filing to your Honor last summer -- a June 2nd

12   filing -- just briefly, a summary judgment motion that

13   the different parties contemplated with a brief

14   statement of the basis for those motions.

15             Our motion would raise two issues, both of

16   which are very discrete, and we think would be

17   dispositive of the case against Mr. Kozlowski and are

18   really separate from the issues that I understand

19   would be the focus of any trial between Tyco and the

20   plaintiffs.

21             The first ground that we move on is whether

22   or not Mr. Kozlowski is an ERISA fiduciary.  Just to

23   put that in context, Mr. Kozlowski is the only

24   individual defendant in this case who is not a member

25   of the Retirement Committee or a member of the Board

1   of Directors of Tyco U.S., and plaintiffs don't allege

2   that he exercised control over the decisions or

3   membership of the Retirement Committee.

4          Plaintiffs' allegations against Mr. Kozlowski

5   in this case are based on a handful of company-wide

6   communications about the financial condition of the

7   company, and the question is whether those give rise

8   to ERISA fiduciary status.

9          THE COURT:  All right.  I got that.  What's

10  the other one?

11         MR. HAMID:  And then the other one is that

12  the plaintiffs' damages theory expressed by their

13  expert is really on the imprudent investments claim,

14  which is a claim that your Honor dismissed as against

15  Mr. Kozlowski, and plaintiffs' damages expert conceded

16  that he's made no attempt to tie any damages to these

17  misstatements.

18         So even if those statements were a basis to

19  consider Mr. Kozlowski an ERISA fiduciary -- which I

20  don't think they are -- there's no damages -- there's

21  no evidence of any damages that plaintiffs have put

22  forward tied to those.

23         THE COURT:  All right.  Mr. Izard, what's

24  your response?

25         MR. IZARD:  Well, my response is twofold.

1   First, I disagree, but I think there's the larger

2   issue, which is Mr. Kozlowski's financial condition.

3   I spoke with both Mr. Hamid and Mr. Grudberg, who

4   represents Mr. Swartz, as to whether we should be

5   looking at a settlement based on the likely

6   collectability of any judgment if we were likely to

7   prevail, and I think that rather than, you know, all

8   of us -- you know, the Court, in particular, spending

9   a lot of time resolving what could be some complicated

10  ERISA issues which ultimately, you know, may not move

11  the ball forward, you know, we should be looking at

12  these settlement questions first.

13          MR. HAMID:  Your Honor, if I could briefly

14  respond to that?

15          THE COURT:  Just briefly.

16          MR. HAMID:  Sure.  Mr. Izard and I have been

17  talking.  We're certainly very happy to talk with him

18  about settlement.  I think, given the schedule here,

19  we really need to move on two fronts.

20          I would suggest that we have a schedule laid

21  out for summary judgment briefing, and in the meantime

22  Mr. Izard and I can continue our conversations, but if

23  those conversations don't go anywhere, we're running

24  out of time to brief this motion before we have to

25  start spending time preparing for trial that I don't

1  think is going to involve issues that are very

2  relevant to us, and I think that's just a waste of the

3  limited resources that Mr. Izard is talking about, and

4  that's going to be to the detriment of Mr. Kozlowski,

5  as well as all of the other potential creditors that

6  are in line here.

7         THE COURT:  Who, other than Kozlowski, is not

8  indemnified by Tyco in this ERISA action?

9         MR. GRUDBERG:  Mr. Swartz is one, your Honor.

10 This is Mike Grudberg for Mr. Swartz.

11        THE COURT:  But if a judgment is entered

12 against Mr. Swartz in his capacity as the chair of the

13 committee that administered the funds, Tyco is going

14 to be responsible for that.  You really don't think

15 there's an argument that Tyco isn't going to be

16 responsible for that damage award?

17        MR. GRUDBERG:  Well, I guess perhaps I should

18 ask Ms. Edwards to speak to that, your Honor.  In

19 terms of indemnification, as a contractual matter,

20 Tyco has disclaimed it as to Mr. Swartz.

21        THE COURT:  Okay.  I guess they are two

22 potentially distinct questions.  I just don't see how

23 Tyco escapes liability for a judgment entered against

24 Mr. Swartz in that capacity, but maybe Ms. Edwards has

25 an answer for me on that one.

1        MS. EDWARDS:  Well, your Honor, I think that
2   we would assert that Mr. Swartz was acting outside of
3   his capacity as a Tyco employee if we find -- you
4   know, in his criminal activities, and therefore, we
5   seek to distance ourselves from him on that basis.
6        THE COURT:  Anybody else other than that, Ms.
7   Edwards, that you have any kind of argument that Tyco
8   doesn't pay the tab for?  I mean all these related
9   entity defendants -- to me it just seems like kind of
10  a waste of time to fool around with questions of
11  whether so and so is liable or not.  If Tyco is
12  ultimately paying the tab, we ought to focus on the
13  real issue, which is does the plaintiff have a claim
14  against any of these entities.
15       Is there anybody else, other than Kozlowski
16  and Swartz, who might have some distinct argument for
17  getting out that is worth paying attention to before
18  the trial?
19       MR. IZARD:  Your Honor, this is Bob Izard.
20  There's one more piece of information.  We have a --
21  Tyco and the plaintiffs have a mediation scheduled for
22  May 14th.  To the extent that's successful, as a
23  practical matter, that could also change the dynamics
24  because, you know, to go forward with a full blown
25  proceeding against Kozlowski, for example, given his

1  financial condition, it's probably not the best use

2  for resources.

3          Frankly, it's my belief that we ought to, you

4  know, give these settlement options a little time to

5  play out to see if that changes the landscape or not.

6          THE COURT:  Well, it does seem to me that Mr.

7  Kozlowski has an argument that is unique to him that

8  is potentially dispositive as to the claims to him,

9  and that there is a burden in subjecting him to a

10  trial when he can with a 20 page summary judgment memo

11  potentially get out of the case entirely on.

12          The only thing I'm thinking about is letting

13  him file something, say, limited to 20, 25 pages.

14  Give him until, say -- what is it today, April 15th --

15  to May 15th to file it.  Give you until June 15th to

16  file a response.  If your mediation is successful, you

17  can move for an extension of the time.  If it's not

18  successful, then we'll be in a position to address

19  that one particular issue and at least get it out of

20  the way and either get Kozlowski out or keep him in.

21          I'm not interested in entertaining summary

22  judgment motions in this case unless they are either

23  likely to avoid a trial entirely or with respect to a

24  person like Kozlowski who has a unique argument as to

25  him that can be easily raised and easily resolved.

1   That's the only kind of summary judgment motion I

2   really think is worthwhile here.  I'm in a mind-set to

3   try this thing now and get it resolved through trial.

4          Mr. Izard, I understand your point.  You

5   think -- you're hoping you can settle with Tyco.  You

6   think it may be at that point not worth the effort to

7   try to go after Kozlowski for anything else, and

8   therefore, the whole thing might just go away.  I

9   understand that point, but if I let him file his

10  motion on that schedule, you will at least have a

11  chance to pursue mediation before you're in the

12  position of having to answer the summary judgment

13  motion.

14         MR. IZARD:  Yeah.  That's fine, your Honor.

15  My only request is -- you may recall from the prior

16  call -- I have a trial in the middle two weeks of

17  June --

18         THE COURT:  Oh, that's right.  Yeah.

19         MR. IZARD:  -- till June 30th.  I would

20  appreciate that.

21         THE COURT:  Yeah.  Okay.  I think that makes

22  sense.

23         On your argument about your damage theory,

24  I'm not sure that I understand that.  You say that of

25  the two counts the only damage theory that the

1  plaintiff has identified is an imprudent investment

2  damage theory, and therefore, it has effectively

3  abandoned any claim to damages under Count 1 of the

4  complaint?  Is that your argument?

5         MR. HAMID:  That's basically the argument,

6  your Honor.

7         THE COURT:  You've been dismissed for --

8         MR. HAMID:  I wouldn't take on all of Count

9  1, but it's to the extent Mr. Kozlowski is found to be

10 a fiduciary based on his statements -- the Count 1 as

11 to him, in other words.  There's no damages tied to

12 his fiduciary activity in that regard if you were to

13 find there was ERISA fiduciary activity.

14        THE COURT:  I'm not really understanding

15 that.  Count 1 is a misrepresentation count.  You say

16 that there's no evidence in the record that would

17 permit a conclusion that any damages were caused to

18 the plaintiff class by Mr. Kozlowski's

19 misrepresentations?

20        MR. HAMID:  The particular misrepresentations

21 that would give rise to his ERISA fiduciary status.

22 That's right, your Honor.

23        THE COURT:  I don't think that's likely to be

24 fruitful, and I don't want to spend the time getting

25 into it.  I'll give you permission to raise your

1   argument that he's not a fiduciary, summary judgment

2   motion limited to 25 pages, and file it by May 15th.

3   I'll give the ERISA until June 30th to respond.  I'll

4   give you ten days to file a reply limited to ten

5   pages.  I'll schedule it for oral argument in late

6   July or August, and I'll resolve it before my clerks

7   leave in September.  I grant your request in part and

8   deny it in part.

9          MR. HAMID:  Thank you, your Honor.

10         THE COURT:  Anybody else want to take

11  anything else up with me while we're on the phone?

12         MR. IZARD:  Your Honor, this is Bob Izard.

13  In our prior conference we talked about preparing a

14  list of issues to be briefed in connection with the

15  trial.

16         THE COURT:  Yes.

17         MR. IZARD:  We talked about doing so within

18  30 days, and then we talked about having a conference

19  in mid to late May.  So we just wanted to confirm the

20  schedule.  Do you want us to file something in advance

21  of the conference, and if so, is there a particular

22  date you want it by?

23         THE COURT:  Let me ask my clerk to refresh my

24  memory as to what the minutes reflect about deadlines

25  that I've established.  Have I established any -- do

1  the minutes of our conference call reflect any -- you

2  don't have them here?

3        THE CLERK:  I left them downstairs.  I know I

4  was supposed to schedule a status conference in person

5  in the middle of May -- middle to end of May.

6        THE COURT:  Mr. Izard, the problem you're

7  having with me now is you're saying -- I'm

8  anticipating what you're going to say to me is, Judge,

9  we're going to have a mediation in mid-May.  Can we

10  wait for the conference with you and file this list of

11  issues until some point after that.

12        MR. IZARD:  Well, not so much that, Judge.  I

13  looked at the transcript, and my recollection was the

14  clerk was going to set a specific day for a conference

15  in mid to late May, but it wasn't clear when in

16  relation to that conference you wanted this list of

17  issues presented -- whether you wanted it ahead of

18  time, and if so, how far in advance of the conference

19  you wanted it presented.

20        THE COURT:  Yeah.  I wanted it ahead of time

21  because I wanted to talk to you about how we were

22  going to prepare for the trial.  My approach in trying

23  bench trials is to front-load the work and do a lot of

24  very aggressive preparation pretrial and to require a

25  lot of specific briefing from the parties pretrial.

1          What I was looking for is -- I was looking to

2     use that document to help guide us in a conference

3     with the idea that we would come out of that

4     conference with a plan of how to get us to trial in

5     October in a position where we can use the trial time

6     efficiently and I can rule from the bench at the

7     conclusion of the trial.

8          What I'm looking to figure out is:  What are

9     the parties really going to be fighting about?  What

10    kinds of things do they not really disagree that much

11    about?  What kind of stipulations we can work out.

12    What kind of pretrial briefing we're going to need,

13    and what issues are the real factual issues in dispute

14    on which I need to be focusing my attention during the

15    trial.  I need to have that list of issues in advance

16    of our conference.

17          I guess my question for you and Ms. Edwards

18    is:  Given your scheduling of your mediation session,

19    how does what I have proposed fit within your schedule

20    with respect to mediation?  I don't want to get in the

21    way of mediation.  I don't want to do anything which

22    would complicate a potential resolution of the case

23    through mediation.

24          On the other hand, time is getting short, and

25    I want to be fully engaged with the legal and factual

1   issues I'm going to have to address in October over

2   the summer while I have time to work on them with a

3   clerk who is experienced with me in working on this

4   case.

5          My need is to have a good sense from you at

6   some point -- and I was hoping late May, but I perhaps

7   could extend it to early June -- have a good sense

8   from you as to what the issues are we're going to try,

9   and I want to be able to give you a plan that would

10  allow for doing all the pretrial preparation that

11  needs to be done.

12         Now, you say you've got a trial in the last

13  two weeks in June?

14         MR. IZARD:  The middle two.

15         THE COURT:  The middle two weeks in June?

16         MR. IZARD:  Yes.

17         THE COURT:  So you're going to be in

18  preparation from -- if you don't settle this case in

19  mediation, you're going to be in preparation for your

20  trial in June probably from the last week of May until

21  you finish the trial, right?

22         MR. IZARD:  Yeah.  Well, we've tried it

23  before.

24         THE COURT:  Okay.

25         MR. IZARD:  I'm happy to do the conference in

1   mid to late May.  My real only question was:  How far

2   in advance of the conference did you want --

3            THE COURT:  I could say -- Maryanne, you

4   haven't set a date yet for the --

5            THE CLERK:  I've talked to both Elizabeth

6   Edwards and Bob Izard, and we came up with either May

7   26th or May 27th.

8            THE COURT:  All right.  Well, Maryanne tells

9   me we're talking about May 26th or May 27th.  Why

10  don't we say seven days in advance of whenever that

11  conference call is I'll look for the statement of

12  issues to be tried with you -- or status conference,

13  rather.  Excuse me.  Seven days in advance of that

14  status conference I'll look for a statement of issues

15  to be tried, and then we'll have the status

16  conference, and hopefully I can formulate a plan of

17  what we need to do between late May and October.

18           MR. IZARD:  That's fine with us, your Honor.

19           THE COURT:  Okay.  Anything else anyone needs

20  to take up with me?

21           MR. WALKER:  Your Honor, this is Jim Walker.

22  I represent Patricia Prue, one of the individual

23  defendants.

24           With respect to that list of issues, it would

25  be our plan -- and I think this is true, I think, for

1  the group of individual defendants -- to coordinate

2  with Tyco counsel to the extent that there are

3  specific issues that are unique to the individual

4  defendants; just as plaintiffs experts outlined issues

5  that are specific as to each individual defendant.  We

6  would coordinate with Tyco counsel to just bear those

7  out in the list of issues.

8          THE COURT:  Yeah.  I think with respect to

9  everybody, except Swartz and Kozlowski, I'm going to

10 deal with Ms. Edwards.  She can deal with you, and you

11 come up with a joint position, and she'll be the point

12 of contact.  So work things out with her.

13         MR. WALKER:  Okay.

14         MR. GASS:  Your Honor, this is Mike Gass.  I

15 represent individual defendant Rich Meelia.

16         A couple of points with respect to what's

17 just been discussed.  Mr. Kozlowski is not alone among

18 the individual defendants in having not been on the

19 Retirement Committee.  My client, Rich Meelia, and

20 Jerry Boggess, as well.

21         With respect to summary judgment, to the

22 extent you were to find there was no fiduciary duty by

23 virtue of them not being on the committee, your ruling

24 would apply to those individuals, as well.

25         THE COURT:  Not necessarily.  It depends

1  on -- you could be a fiduciary without being on the

2  committee, and it depends on the facts of the case.

3        The issue is it's just not worth spending a

4  lot of time pretrial with those issues with your

5  client.  Tyco is going to pay the tab on your client,

6  and we ought to focus on where the liability really

7  is.

8        MR. GASS:  I understand, but I just wanted to

9  point out with respect to the list of issues that

10  there will be individuals who -- like my client, who

11  have issues that are different and unique relative to

12  the other individuals and do share some commonality

13  with issues that you'll be looking at in summary

14  judgment.

15        THE COURT:  That's fine, but I mean I really

16  will be looking at Kozlowski as a distinct figure.  As

17  I understand, Kozlowski's argument is:  I had nothing

18  to do with the Tyco Stock Fund.  I've been dragged in

19  here because I made fraudulent misstatements in my

20  capacity as a CEO of the company, and therefore, I'm

21  not a fiduciary.  And that argument is one that I can

22  understand.

23        Your guys have all been sued -- to the extent

24  they've been sued -- for things they allegedly did

25  with respect to the Tyco Stock Fund.  They may not be

1    fiduciaries based on what they did, but it's distinct

2    from what the theory is -- again, as I understand

3    it -- that Kozlowski wants to advance, and a ruling

4    that he isn't a fiduciary doesn't necessarily say much

5    about whether your client is or is not, and I'm

6    certainly open to the possibility that they're not a

7    fiduciary.  I just think that those issues can be

8    sorted out most economically at the trial.

9           I mean this is -- ultimately, despite all of

10   the issues about it, this is a case against, in

11   effect, Tyco because Tyco is going to pay whatever the

12   judgment is here, and I want to keep the focus on what

13   the case is about.

14          All right.  Any --

15          MS. BEAUMONT:  Your Honor, this is Anne

16   Beaumont.  I represent Mark Foley, and just to add a

17   little perspective to the role of the individual

18   defendants here, understanding that Tyco is

19   indemnifying many of us, my client -- and I'm sure I

20   speak for the other individual defendants -- takes the

21   allegations of breach of fiduciary duty very

22   seriously, and to the extent -- regardless of who pays

23   any judgment here, we take those allegations very

24   seriously, and there are personal reputational issues

25   at stake here quite apart from who writes the checks.

1           THE COURT:  Yeah.  My view is it's all about

2    the money, but of course you will have a full and fair

3    opportunity to try the issues that need to be tried

4    with respect to your client at the appropriate time.

5           Anything else?  Okay.  Let's see if we can --

6    Ms. Edwards, you're going to coordinate with all these

7    other people and give the defendants' side of it.

8    Obviously Swartz and Kozlowski are in an adversary

9    position with respect to Tyco on these matters, and

10   you should consult with them, as well, but they

11   have -- to the extent they have special issues, it's

12   important that their views be represented in this

13   document, as well.  Although my plan is to have a

14   conference with just Tyco and Mr. Izard, and then Tyco

15   can represent to the other parties what's happening.

16          Okay.  Here's where we are.  We're going to

17   get a summary judgment motion filed within the next 30

18   days by Mr. Swartz.  We're going to have a statement

19   of issues to be tried to be filed jointly by Ms.

20   Edwards and Mr. Izard.  Ms. Edwards is going to

21   consult with the other defendants and make sure their

22   concerns are adequately represented.  I'll have a

23   conference call with them, and I'll issue a

24   proposed -- a status conference -- excuse me -- with

25   them on a date to be set on one of the two dates we're

1   talking about, and I'll issue a pretrial order

2   following that conference call.

3          Tyco and the plaintiffs will have a mediation

4   in mid-May, and I would encourage the parties to let

5   the clerk know as to what the progress, if any, is

6   with respect to settlement so that when I do meet with

7   you, I'll have at least some sense as to where things

8   stand with respect to mediation.

9          Is there anything else we need to cover?

10         MS. RINGEL:  Yes.  I'm sorry.  This is

11  Deborah Ringel for Irving Gutin.

12         I understand Ms. Edwards speaks for all of us

13  at the next conference, but it would be very helpful

14  if we could set up another call like this so we could

15  listen in, even if we're all on mute.  Would that be

16  possible when you discuss the list of issues?

17         THE COURT:  No.  What I'll do is I'll meet

18  with them and I'll issue a pre-hearing order and say:

19  This is the order I propose to issue.  If anybody has

20  a reason to discuss it before I enter it, I'll set up

21  a telephone conference.  So I'll give you a full and

22  fair opportunity to be heard, but I really have to

23  keep the focus on the people who are really going to

24  be trying the case, and I'll give you a chance to be

25  heard, but I think that's a more efficient way of

1  dealing with it.

2          All right.  So you'll get -- I'll issue the

3  order as a proposed order, and then anybody that needs

4  to discuss any proposed modifications to it can

5  request a conference call and I'll give you a

6  conference call like this then.

7          Okay.  Thank you very much, and let's all

8  hope that there's good progress on the mediation

9  effort, and perhaps we won't need to follow the path

10  that I've laid out here, but I'm fully prepared to

11  resolve the case if that's what is necessary to do.

12  All right.  Thank you.

13   (Conclusion of Telephone Conference at 10:28 a.m.)

14

15                C E R T I F I C A T E

16

17          I, Susan M. Bateman, do hereby certify

18  that the foregoing transcript is a true and accurate

19  transcription of the within proceedings, to the best

20  of my knowledge, skill, ability and belief.

21

22
    Submitted: 5-1-09    /s/   Susan M. Bateman
23                       SUSAN M. BATEMAN, CSR, RPR, CRR

24

25