**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 1/7/10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * *
                              *
IN RE:                        *
                              *
TYCO INTERNATIONAL, LTD.      * No. 02-md-1335-PB
                              * August 17, 2009
Multidistrict Securities      * 12:00 p.m.
Litigation                    *
                              *
* * * * * * * * * * * * * * * *
```

SPECIAL HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

| | |
|---|---|
| For ERISA Actions: | Robert A. Izard, Jr., Esq.<br>Shatz & Nobel, P.C. |
| | Kenneth G. Bouchard, Esq.<br>Bouchard, Kleinman & Wright, P.A. |
| Tyco International: | Elizabeth F. Edwards, Esq.<br>McGuire Woods, LLP |
| | Edward A. Haffer, Esq.<br>Sheehan, Phinney, Bass & Green |
| For Kozlowski: | Jyotin Hamid, Esq.<br>Debevoise & Plimpton, LLP |
| | Richard B. McNamara, Esq.<br>Wiggin & Nourie, P.A. |
| Court Reporter: | Sandra L. Bailey, CSR, CM, CRR<br>Official Court Reporter<br>U.S. District Court<br>55 Pleasant Street<br>Concord, NH  03301<br>603-225-1454 |

1                    BEFORE THE COURT

2          THE CLERK:  Court is now in session and has

3    for consideration today a motion hearing in case number

4    02-md-1335, Tyco Litigation in the ERISA matter.

5          THE COURT:  Good morning.  I've read the

6    pleadings and feel I have a reasonably good

7    understanding of the proposed settlement, but I do have

8    a few questions, and after you answer these questions,

9    if there's anything you feel you need to add, please let

10   me know.

11         Mr. Izard, one of the things I wanted to get

12   at least a preliminary understanding of is how this

13   proposed settlement fits under the damage models that

14   were prepared by your expert.  I know you referenced

15   that in a memorandum to some extent but, and

16   particularly how the the ADT/AMP merger affected, and

17   claims you have based on those matters, affect the

18   potential settlement.  So, can you give me a little bit

19   more information as to, say, what a full recovery would

20   have been using your damage models and segregate out

21   what the recovery would have been had you not succeeded

22   in persuading me that shares involved in the ADT and AMP

23   mergers were involved.

24         MR. IZARD:  There are a lot of variables in

25   the model, your Honor, so I apologize if this gets a

1   little complicated, but the bottom line is that the

2   court concluded that there was no duty to sell the ADT

3   and AMP shares, and there's another category of shares

4   from a company called Mallinckrodt which is in the same

5   boat.  If that were the case, damages would have been

6   zero to very little, and frankly --

7           THE COURT:  Well less than the 70 million

8   that's proposed.

9           MR. IZARD:  If it got to seven figures we

10  would have been happy, so no, the conversations we had

11  on that topic were quite significant in terms of the

12  analysis, and with our client, that was a big factor.

13          THE COURT:  Did I have, I can't recall, did I

14  have any of those discussions with you on a record that

15  was transcribed, do you remember?

16          MR. IZARD:  I believe that there were some --

17  the first conversation was after the summary judgment

18  hearing in October.  Then we had two conversations on

19  the record, telephone conversations, one I believe was

20  in December because I was -- I can't remember the date

21  because I was calling from home because there was a

22  blizzard, and we had another one, and I know the court

23  at one point made reference to guidance I've given in

24  the past.  Whether the guidance was actually laid out on

25  the transcript, I'm not a hundred percent.

1          THE COURT:  Do you remember, Maryanne, whether

2     that telephone call was recorded?

3          THE CLERK:  I think the one with the blizzard

4     was.

5          THE COURT:  I think there was.  We will have

6     to check and see.  I just want, so that anyone reviewing

7     this record understands, there was a summary judgment

8     motion litigated in this case.  During the course of the

9     oral argument on that motion an additional issue was

10    raised I think by Tyco's counsel concerning how loss

11    causation and how damages generally, depending upon how,

12    as to certain claims, how you would view the ADT and AMP

13    and Mallinckrodt shares in damage models, and I provided

14    some initial guidance during a post motion hearing

15    discussion with counsel, both counsel being present, and

16    it was something at the time that was not on the record.

17    I then asked for additional briefing, my recollection

18    is, as to what the parties' positions were.  I undertook

19    a very detailed analysis of the parties' respective

20    positions on that, did some substantial legal research,

21    thought about the issue for a great deal, and formed

22    some preliminary views about how that issue would be

23    resolved if it were to be raised with me, and I had at

24    least one telephone conference where I heard the parties

25    again on the issue and discussed the matter with them

1    and expressed my preliminary reviews concerning that

2    matter.  My recollection, and this is somewhat

3    superficial but, is that I expressed views that

4    suggested that the plaintiffs had some substantial

5    difficulty with respect to including shares from those

6    mergers in the recovery of the proposed class, and I

7    want to be clear, I undertook a very detailed assessment

8    of that issue because the parties had informed me that

9    it was very important to their ongoing settlement

10   discussions.

11          So, is that consistent with how you remember

12   our discussions on that point?

13          MR. IZARD:  Yes.  I think what I took from it

14   was you expressed great skepticism but said you'd listen

15   to our experts, but I was not filled with confidence,

16   I'll leave it at that.

17          THE COURT:  And I think the parties that asked

18   me for that kind of preliminary assessment, I was not

19   involved in ongoing settlement negotiations in this

20   case, but I think the parties were of the view that some

21   kind of preliminary view from the judge on that issue

22   might help the parties better evaluate their respective

23   positions for settlement, so at the request of the

24   parties I did provide that assessment and it was one

25   that I'm sure was concerning for the plaintiffs

1    especially in view of what you're telling me now.  Your

2    damage models would suggest that the recovery to the

3    class would be far less than $70 million but for the --

4    but for the inclusion of the ADT and AMP and

5    Mallinckrodt cases.

6         Now, what I'm not understanding fully from the

7    settlement documents is how does this money get

8    disbursed to class members.  What is the allocation

9    models that you're using to allocate money received in

10   settlement?

11        MR. IZARD:  Basically the plan of allocation

12   we have is the plan of allocation that's been used in

13   every other ERISA company comp case in which I have any

14   familiarity.  The bar that does this is pretty small and

15   basically we're using the model everybody uses, and

16   additionally there will be an independent fiduciary

17   here, I'm 99 percent sure, who is very familiar with

18   these models as well.  Basically you take the amount of

19   money in each participant's individual account on the

20   day of the class period.  You add to that any additions

21   to that account.  This is in the Tyco stock.  You add

22   additions to that during the class period.  You subtract

23   from that withdrawals from the Tyco stock during the

24   class period and then you subtract the amount left at

25   the end of the class period, so that's sort of a loss

1   number, if you will, and then the factors created based

2   on each individual participant's loss factor, if you

3   will, and then that factor is applied to the settlement

4   memo.  And here there is a de minimus amount which are

5   -- if in fact you're running the computer program you

6   would recover less than $10, then you don't recover

7   anything at all and that money goes back into the pool

8   and it's recalculated.

9          THE COURT:  What did the -- how does the plan

10  of allocation address its shares that are attributable

11  to ADT, AMP and Mallinckrodt?

12         MR. IZARD:  They are treated as -- they are

13  counted fully.

14         THE COURT:  Fully.

15         MR. IZARD:  Yes.

16         THE COURT:  And you think that's justifiable

17  despite my concern of about your possibility of a

18  successful recovery as to those matters because in fact

19  the risk associated with a different result is the risk

20  that is primarily driving Tyco's decision to pay what

21  it's willing to pay.

22         MR. IZARD:  I think so.  I also think that,

23  you know, everybody can make an argument that, gee, my

24  situation is a little bit different, and frankly in

25  these ERISA cases, the vast majority of the damages tend

1    to be what we call holder shares.  There really aren't

2    that many new purchases during the class period, not

3    just in this case, but generally speaking because the

4    class periods are relatively shorter than people who

5    have been employed --

6            THE COURT:  Well, to the extent the class

7    period overlapped with the Tyco Securities class period,

8    new purchasers would have already received partial

9    compensation as a result of participants in that

10   settlement.

11           MR. IZARD:  That is correct and they have.

12           THE COURT:  All right.  So, if we look at the

13   issue of potential intraclass conflict, your view is you

14   can continue to adequately represent the whole class,

15   the plan of allocation provides uniform benefits to

16   members of the whole class, you think that that can be

17   done in a principal way because it is the shares of

18   Mallinckrodt, ADT and AMP that are principally driving

19   the settlement amount.  Without those, other

20   shareholders might not have recovered anything

21   substantial at all, and given the risk of an adverse

22   result, it's appropriate to include them.

23           One of the things I'm going to have to look at

24   and you should give careful consideration to is whether

25   there are any potential intraclass conflicts and whether

1  there's a need for me to address it.  I don't at this

2  point see that they are problematic, but it is something

3  that I will be looking at when I get to the final

4  approval stage.

5         Having addressed those basic issues, the

6  amount of the settlement certainly strikes me as

7  reasonable given the representations that you've made at

8  least sufficiently to allow it to proceed to final

9  approval.  I don't have any reason to question the plan

10  of allocation that you're talking about at the present

11  time.

12         The other area that I wanted to address with

13  you briefly, or the two areas, are notice and your fees

14  and expenses.

15         It is not completely clear to me with respect

16  to fees whether you have taken a fixed position yet as

17  to what you're going to be seeking on a percentage basis

18  for fees.  I read your agreement as saying up to

19  33 percent, but that you do not otherwise specify what

20  your final proposal will be with respect to fees.  Is

21  that right?

22         MR. IZARD:  That's correct.  I can tell you,

23  judge, though, that it will essentially be lodestar.

24         THE COURT:  All right, I do think you should

25  pay careful attention to the order I issue with respect

1   to fees in the plaintiff's securities action in this

2   case where I undertook a very, I think, very detailed

3   analysis of what was a gigantic fee request.  On a

4   percentage of fund basis, it is less than 33 percent,

5   but I think, and I recognize this is a much smaller

6   settlement and so the arguments are different with

7   respect to super mega fund cases and cases in this

8   magnitude which are much smaller, but I want you to

9   understand you better be prepared to defend any fee

10  request that you make using the form of analysis that I

11  have suggested should be undertaken.  And my initial

12  reaction is that I do not see myself approving a

13  33 percent fee request very lightly in a case like this,

14  and I will be carefully scrutinizing your fee request.

15          Having said that, I think we have to bear in

16  mind that this result seems to me to be a very strong

17  positive result for the class, first.  Second, I know

18  from having endured the agony of working on this case

19  for so many years that even though you were a much

20  smaller player in the plaintiff's class, you were

21  involved from the beginning in a way that few people

22  were and required to undertake very substantial work on

23  behalf of the class and defer payment, any compensation

24  for many, many years, things that I don't take lightly.

25          So I don't want to be overly negative here.  I

1    just think that I would be skeptical at a request for a

2    third of the recovery, and I expect you to defend any

3    fee request that you make using the analysis that I

4    provided in the ruling I made in the claim securities

5    action, okay.

6              So let's just talk briefly about notice and

7    tell me what -- Maryanne, can you come here for a

8    second -- tell me what you're, where you are planning to

9    do notice, how you're planning to deal with former class

10   members who are -- class members who are no longer

11   active participants in the Tyco stock fund, what efforts

12   you're going to make to try to locate -- the people who

13   are active participants it's easy to get notice, but

14   people who are out of the system but are class members,

15   I want to be sure we're taking all reasonable means to

16   give them adequate notice.  You can go ahead.

17             MR. IZARD:  Your Honor, I need to also bring

18   up one wrinkle with respect to Mallinckrodt, so I want

19   to break it down to two groups.  One is 90 percent of

20   the people who are in the Tyco plans as well as ADT and

21   AMP, Fidelity was the trustee and record keeper

22   throughout the class period and is still the record

23   keeper and the trustee.  They have the name, address and

24   social security number of every class member.  They have

25   this past week updated all the addresses they have for

1   every class member that is currently in the system, and

2   they put in the last known address for all those who

3   have left the system.  What we propose to do to that

4   group is to mail notice, and to the extent there is

5   returns, by virtue of having the former addresses and

6   social security numbers, it's quite easy to locate their

7   current addresses, so we are confident that we can

8   provide actual notice by mail to virtually every class

9   member.

10          Mallinckrodt, there's a tiny window which

11   creates an issue.  American Express was the trustee and

12   record keeper for the Mallinckrodt plan up until

13   December of 2002.  They no longer have their records.

14   But also when the Mallinckrodt company was merged into

15   Tyco effective January 1, 2002, they set up a Tyco

16   client account as well.  So if you were an employee of

17   Mallinckrodt as of January 1 of 2002, you're already in

18   the Tyco system that would be covered in this Fidelity

19   database we have.

20          For those employees at Mallinckrodt who left

21   the employment of Mallinckrodt between October 17, 2000

22   and January 1 of 2001, those people, and I don't know

23   how many there are, but those people would not be

24   included in the Fidelity database that we have.

25          A second sort of way to capture additional

1   people is regardless of whether they left the employ of

2   Mallinckrodt between October and January of --

3   October '00 and January of 2001, if they remained in the

4   Mallinckrodt plan, you know, often they stay as members

5   of the plan even though they're not employed, for

6   example, if they retire, the Mallinckrodt plan was

7   merged into the Tyco plan in December of 2002, so that

8   if you remained in the Mallinckrodt plan, you would have

9   been picked up by Fidelity in 2002.  So we're only

10  talking, I think, a very small number of people.  And

11  the way we would propose to capture that group would be

12  to publish notice in the St. Louis I believe Post

13  Dispatch.  Mallinckrodt was a St. Louis company and I've

14  been told that that's the main paper in St. Louis, and

15  obviously the web site and everything else.  So I think

16  by virtue of those means, practically that's pretty much

17  all we can think of to do, but we should capture almost

18  everybody by notice through that means.

19          There's a second wrinkle, getting back to the

20  Mallinckrodt issue on the plan of allocation that we

21  need to talk about, and we'd like to submit some

22  supplemental papers describing this because, well,

23  Fidelity has all the records of every purchase and every

24  sale of the Tyco stock from every account, and there's

25  computer programs that can run this plan of allocation,

1   and to the extent that Mallinckrodt employees started

2   buying Tyco stock in the Tyco stock fund through the

3   Tyco plans on January 1st, 2001 when the new account was

4   set up, we got all that data too, but we don't have any

5   transaction data for the old Mallinckrodt plan until we

6   get to December 2002, so there's a hole there, and we

7   had it at the plan line level because the plans have

8   audited financial statements, so we know how much the

9   Mallinckrodt plan as a whole bought and sold, just as we

10  know as the Tyco plan bought and sold, but we don't know

11  how it's unitized among each of the individual

12  participates.  Hopefully they have the records.  So what

13  we propose to do, if acceptable to the court is, we can,

14  using the formula, we can say how much is the

15  Mallinckrodt plan share, how much is the Tyco plan

16  share.  We can run a formula, and if the final approval

17  occurs, then the effect is it's distributed to the Tyco

18  people almost immediately.  With the Mallinckrodt people

19  we're going to have to do a proof of claim type process

20  where they need to submit their account statements.

21          THE COURT:  What percentage of the total award

22  would be subject to this proof of claim process?

23          MR. IZARD:  My assumption, and again, we just

24  found this out on Friday, but my assumption is that it's

25  in the ten percent realm.

1          THE COURT:  Okay, and what we would -- the

2     existing documents, are they going to need to be amended

3     to talk about proof of claim process?  You're going to

4     have to submit amended documents using the kind of proof

5     of claim the way we did in the securities class action,

6     right?

7          MR. IZARD:  Only with respect to the

8     Mallinckrodt.

9          THE COURT:  Only with respect to Mallinckrodt.

10          MR. IZARD:  Right.

11          THE COURT:  All right, well, you should -- can

12     you have any amendments done within -- when are we

13     talking about the final hearing?

14          MR. IZARD:  Well, I jotted down some dates

15     here if I may share those with the court.

16          THE COURT:  Yeah.

17          MR. IZARD:  I think our hope was that we could

18     have a final approval hearing sort of the second week of

19     November, third week of November, some time before

20     Thanksgiving.  Then we can basically send out in the

21     notice, say by September 21st, that will give everybody

22     time to submit a revision and for the court to look at

23     it.  We could publish in the St. Louis for a couple

24     weeks in a row starting in September as well.  We can

25     have the objection date by, say, Monday, November 2nd,

1   which would give essentially six weeks for people to

2   review and consider whether to object.  And then the

3   hearing would be, say, you know, again, later on

4   mid-November before Thanksgiving and then the hope would

5   be we could get it all wrapped up and distributed either

6   this year or earlier the next year.

7          THE COURT:  Yeah, I mean, I like to distribute

8   to the extent we can this year --

9          MR. IZARD:  Yes.

10          THE COURT:   -- but we can do the final

11   approval hearing in November.  Those dates sound fine.

12   You will give them to the clerk.  Will you be able to

13   get amended documents filed, say, within the next two

14   weeks so that we can get out at least to the people who

15   are affected, the Mallinckrodt section of the class

16   should see how the proof of claim process works so if

17   they have an objection in the proof of claim process,

18   they can raise it.

19          MR. IZARD:  Absolutely, your Honor.

20          THE COURT:  Okay.  All right, that makes

21   sense.  I have one more thing on my list and that was

22   the amount of the Swartz/Kozlowski settlements here

23   which on the surface seem low, but at least in my

24   understanding, you can respond to this.  Kozlowski, I

25   think the claims against Kozlowski are far more

1   difficult in this action than they are against Swartz

2   because of his not being involved directly on the plan

3   committee that was responsible for overseeing the plans

4   at issue here, not that the claims were impossible, but

5   they're much less likely.  The Swartz settlement you

6   suggest may be driven by ability to pay concerns to some

7   extent?

8          MR. IZARD:  Yes.

9          THE COURT:  Now, I thought Tyco has an

10   indemnification obligation as to Swartz in his capacity

11   as the chair of the committee and would ultimately be

12   there to satisfy judgments against him in any event.

13          MR. IZARD:  Well, that's sort of an issue

14   that's somewhat in dispute.  It hasn't really come up

15   before the court as much, but the plans say that the

16   indemnification does not apply in the event of willful

17   misconduct, and so we were kind of skirting a fine line

18   here because we had to show a breach of fiduciary duty

19   on one hand, but no willful misconduct on the other hand

20   and, you know, part of our case is that Swartz was

21   really a problem.  So that would have been a vigorously

22   contested issue, your Honor, and I think that the Tyco

23   settlement reflected Swartz's --

24          THE COURT:  That's the point I was going to

25   make.  It seems to me, and maybe Ms. Edwards and your

1   representative can confirm this, but to the extent Tyco

2   ultimately settled here, it was encompassing any risk it

3   foresaw of it being held responsible for indemnification

4   for any judgment against Swartz, and of course you're

5   not agreeing that you have any indemnification

6   obligation and you dispute that, but that to the extent

7   you agreed to a settlement, it's part of a package in

8   which you try to assess risk associated with the

9   potential that even if you were to escape liability,

10  that liability could be against Swartz and against your

11  own contention, you might be held to have some

12  indemnification obligation.  Am I seeing that correctly?

13          MS. EDWARDS:  That is absolutely correct, your

14  Honor.

15          THE COURT:  All right.  So I think that helps

16  to explain that issue.  Now, finally on the ability to

17  pay, in the course of settlement negotiations did you

18  receive sufficient cooperation from Mr. Swartz so that

19  you were able to assure yourself as a representative of

20  the class that you're not being conned, that he doesn't

21  have a hundred million hidden away somewhere else that

22  would have been available to satisfy potential judgment?

23          MR. IZARD:  Well, I discussed in detail Mr.

24  Swartz's economic circumstances with his counsel, Mr.

25  Grudberg, and a condition of the settlement agreement is

1    that we received a sworn declaration demonstrating that

2    the asset line structured is confirmed by or as

3    represented by counsel.

4            THE COURT:   I think that's important because

5    you may get class members who will look at this, those

6    that actually read the agreements carefully, you may

7    have people saying why are they letting what they see as

8    the principal bad guys out so lightly, and I think you

9    have legitimate explanations, but you need to be sure

10   you've done your due diligence and the fact that you can

11   support that and represent to the court that you have

12   satisfied yourself that indeed there are a lack of

13   sufficient assets to justify a higher individual

14   settlement against Mr. Swartz who I, personally in this

15   case, in this case, the claims are probably strongest

16   against him, stronger perhaps even than Tyco who cast

17   some arguments about why it shouldn't have to pay, even

18   if I bought your arguments on damages.   So I think the

19   strongest possible claims are probably against Swartz,

20   but there are good reasons why the structure is such

21   that Tyco pays the bulk of it and Swartz pays a

22   relatively small amount.

23           MR. IZARD:   And one other wrinkle as well is

24   that there are significant tax claims against Mr.

25   Swartz, and were we to get a judgment --

1          THE COURT:  You'd be behind.

2          MR. IZARD:  Yes.  We may be behind general

3    creditors as the Touch America case we cited in the

4    papers.  So this was a hundred percent driven by our

5    perception of collectability and, you know, Swartz is in

6    a situation where, you know, we're not the only case

7    against him, so it's sort of an overall balancing risk

8    reward and frankly this -- and we negotiated long and

9    hard with Mr. Swartz and this is where we ended up and

10   we think it's fair in the grand scheme of things.

11         THE COURT:  All right, anything else you want

12   to say?  I'm going to give Ms. Edwards and the other

13   individual defendants opportunity to speak.  I do want

14   to underscore the -- I take -- pay attention on this

15   attorney's fee request and amply justify it, and I do

16   think, I'm not requiring you to do this, but I do think

17   it was somewhat helpful that Tyco brought -- excuse me,

18   the plaintiffs' class brought in independent --

19   commissioned an independent assessment of the proposed

20   fee request to determine its reasonableness.  It wasn't

21   the only thing that I relied on, but it was significant

22   here.  I want to be sure that, and I have nothing but

23   respect for you in the way of the work that you've done,

24   I'm not in any way calling into question, I just think I

25   want to be sure that the deal that is struck on fees is

1    in the best interest of the class as well as fairly and

2    appropriately compensating you for the work that you've

3    done, so --

4              MR. IZARD:  I understand that, your Honor.

5              THE COURT:  I take that very seriously.

6              MR. IZARD:  Yes, and just from our

7    perspective, your Honor, you know, we're happy with

8    whatever the court deems is fair.  It's been a long

9    road.  This is basically our lodestar.  So if the court

10   thinks that that's too high, then we're --

11             THE COURT:  I'm not saying in any way that it

12   is.  I'm just saying pay attention to it, look it over

13   carefully, because I'll be looking at it carefully.  But

14   I say that with nothing -- I have nothing but respect

15   for you and the hard work you've done here and the

16   quality of the result, you deserve to be compensated

17   fairly and you will be compensated fairly.

18             MR. IZARD:  Thank you.

19             THE COURT:  All right, Ms. Edwards, did you

20   want to say anything on behalf of Tyco?

21             MS. EDWARDS:  No, your Honor.  We're pleased

22   that we have been able to March these cases to

23   resolution.

24             THE COURT:  You fought very hard in these

25   cases and defended your client, you and your colleagues.

1   I've been very hard on Tyco from time to time and I know

2   you must have been frustrated with me, but I appreciate

3   your and the company's willingness, and I recognize

4   settlement these days are particularly hard with

5   financial difficulties the companies face and the fact

6   that we actually have three companies that have to

7   participate in settlement here, so in some ways it's

8   quite impressive that you were able to get to the point

9   of bringing everybody together that needed to be brought

10   together to settle, so I appreciate your good work in

11   this matter.

12          MS. EDWARDS:  Thank you, your Honor.

13          THE COURT:  Did any of the defendants, other

14   defendants want to say anything at all at this time?

15   No?  All right, thank you, I think that concludes the

16   hearing then.  We will use the schedule that you

17   suggested.  And the sooner you can get the revised

18   papers in on the Mallinckrodt issue the better, and get

19   them up on the web site so that people can see them and

20   study them, and then I'll look forward to receiving your

21   papers and holding a final approval hearing at some

22   point in November.

23          MR. IZARD:  And should we contact the clerk

24   about a firm date?

25          THE COURT:  Yes, yes, she will have -- she has

1    my authority to agree to whatever dates that work for

2    you folks.  If you can satisfy her, it satisfies me.  So

3    after the hearing, work out the details of the dates

4    with her so that she can have a record of them.

5            MR. IZARD:  Thank you, your Honor.

6            THE COURT:  Thank you.

7            (Adjourned at 12:30 p.m.)

8

9

10                    C E R T I F I C A T E

11

12            I, Sandra L. Bailey, do hereby certify that

13    the foregoing transcript is a true and accurate

14    transcription of the within proceedings, to the best of

15    my knowledge, skill, ability and belief.

16

17

18    Submitted: 10/9/09        /s/ Sandra L. Bailey
                                SANDRA L. BAILEY, LCR, CM, CRR
19

20

21

22

23

24

25